NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| : | | |
| : | | |
| VINCENT LUPPINO, CLIFF STERN, | : | |
| and JOHN CASIERO, individually and | : | |
| on behalf of others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **Hon. Dennis M. Cavanaugh** |
| v. | : | |
| | : | **OPINION** |
| MERCEDES-BENZ USA, LLC, | : | |
| | : | Civ. No. 09-5582 (DMC) (JAD) |
| Defendant. | : | |
| | : | |
| : | | |

DENNIS M. CAVANAUGH, U.S.D.J.:

        This matter comes before the Court upon motion of Defendant Mercedes-Benz USA, LLC

("Mercedes").  Mercedes moves to dismiss the Amended Complaint of Plaintiffs Vincent Luppino,

Cliff Stern and John Casiero (collectively, "Plaintiffs"), who assert claims for breach of express

warranty, breach of written warranty pursuant to the Magnuson-Moss Warranty Act, and violation

of the New Jersey Consumer Fraud Act.

        No oral argument was heard pursuant to FED. R. CIV. P. 78.  Upon consideration of the

parties' submissions, and for the reasons stated below, Defendant's motion to dismiss is **granted in

part** and **denied in part**.  To the extent that Defendant's motion to dismiss has been granted,

dismissal is without prejudice, and Plaintiffs will be permitted to amend their pleadings.

## I. <u>BACKGROUND</u>

The facts in the Background section have been taken from the parties' submissions.  For the purposes of this motion, the Court accepts Plaintiffs' allegations as true.

### A.   PARTIES

Plaintiffs Vincent Luppino, Cliff Stern and John Casiero, by and through their attorneys, bring this First Amended Complaint on behalf of all persons and entities in the United States who purchased or leased a Mercedes vehicle in any state (or, in the alternative, any person or entity who purchased or leased a Mercedes in the State of New Jersey) with 17-inch, 18-inch or 19-inch AMG or non-AMG wheels (the "Rims") from 2006 to present.  Complaint ("Comp."), ¶1.

Plaintiff Luppino ("Luppino") is a New Jersey resident.  Luppino leases a 2007 Mercedes Benz CLS 63 AMG with 19-inch AMG factory rims from an authorized Mercedes Benz dealership in Bergen County, New Jersey.  <u>Id.</u> ¶15.  Plaintiff Stern ("Stern") is a New Jersey resident. Stern purchased a 2006 Mercedes Benz SL 500 with 18-inch AMG factory Rims from an authorized Mercedes Benz dealership in Bergen County, New Jersey.  <u>Id.</u> ¶16.  Plaintiff Casiero ("Casiero") is a New Jersey resident. Casiero purchased a 2006 Mercedes Benz E500 4Matic Sedan with 17-inch 5-Spoke Light Alloy Rims from an authorized dealer's auction in Somerset County, New Jersey. <u>Id.</u> ¶17.

Plaintiffs allege that Mercedes designed, manufactured, distributed, advertised, marketed, promoted, warranted and sold the Rims, and/or vehicles equipped with the Rims (the "Vehicles"), to consumers throughout the United States.  <u>Id.</u> ¶2.  Plaintiffs allege that Mercedes did so without disclosing that the Rims were defective, as they would fail (i.e., bend, deform, dent, warp or fracture) under normal driving conditions.  <u>Id.</u>

For example, in its promotional literature and print advertisements, Mercedes portrayed the Rims as if they were of a design and utility typically found in the automotive industry. Id. ¶3. Plaintiff asserts that such representations were disingenuous, and that Mercedes knowingly misrepresented in print advertisements and on various video and television commercials that the Rims would withstand and operate effectively under normal driving conditions. Id. Specifically, Plaintiffs take issue with Mercedes' representation that the Rims are crafted of an alloy designed to meet exceedingly high requirements for strength and durability. Id. ¶4. Further, Mercedes' promotional literature and advertisements suggest that the Vehicles, and the Rims, are capable of operating in various difficult on and off-road terrains, including mountain and dessert topographies. Id. Plaintiffs claim that they relied upon these various representations in deciding to purchase/lease the Vehicles.

## B.   THE ALLEGED DEFECTS

Plaintiffs assert that the Rims bend, deform, dent, warp or fracture in ordinary, on-road driving conditions, in the complete absence of driving-related trauma, or when traversing even extraordinarily slight road irregularities common in normal driving conditions on roadways maintained by state and local governments. Id. ¶36. The Rim failures purportedly result from the defective design and/or manufacture of the Rims alone, and/or a defect resulting from combining the Rims with other components of the Vehicles. Id. ¶37. In particular, Plaintiffs assert that the Rims suffer from a manufacturing defect in that they lack sufficient hardness or uniformity of hardness to withstand the pressures associated with ordinary, on-road driving conditions. Id. ¶38. Plaintiff note that processes related to surface ornamentation and resistance such as alodining, raise the temperature of the Rims to levels that materially alter and weaken their physical composition. Id.

¶42.

In addition to the foregoing defects, Plaintiffs contend that, in or around 2006, Mercedes began installing larger Rims on its Vehicles as original manufacturer's equipment, which includes Rims that are offered either as standard equipment or as part of a package upgrade customers can purchase at the time they buy or lease a Mercedes Vehicle. Id. ¶44. On information and belief the defect in the geometric structure of the Rims alone, or when combined with the "low profile" tires with which Defendant pairs them on the Vehicles, renders them incapable of withstanding the shock and pressure associated with ordinary operation on state and municipal roadways. Id. ¶46.

Plaintiff asserts that the federal government's National Highway Transportation Safety Administration ("NHTSA") complaint database reveals that the Rims easily fail under normal driving conditions and that Mercedes will not replace the failed Rims under its Warranty program. Id. ¶61. It is alleged that the NHTSA database illustrates the type of bending, warping, cracking and fracturing to which the Rims are prone, and shows Mercedes' blatant disregard for the Warranty and potential safety hazards presented by the defective Rims. Id. Plaintiff cites anecdotal evidence of various complaints filed with the NHTSA regarding the Rims' performance. Id. ¶64. Plaintiff asserts that this evidence—in addition to information Mercedes has exclusive access to—demonstrates that the Rims fail regularly, under normal driving conditions and that Mercedes has long known that the Rims are defective. Id. ¶¶65-66.

C.    THE WARRANTY

Plaintiffs allege that despite these defects, and resulting Rim failures, Mercedes has refused to repair or replace the Rims under its Warranty. Id. ¶49.

The Vehicles were sold pursuant to a warranty in which Mercedes warranted and represented

-4-

that Mercedes would make any repairs or replacements necessary to correct defects in material or workmanship in the Vehicles for four years or 50,000 miles (the "Warranty"). Id. ¶5. The Warranty provides as follows:

> Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz passenger car that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period.

Id. ¶50. The Warranty documentation specifically states that Mercedes' "intention is to repair under warranty, without charge to you, anything that goes wrong with your car during the warranty period which is our fault." Id. ¶51.

The Rims are not excluded from protection under the terms of the Warranty. Id. Mercedes has, as a matter of practice and policy, failed to honor the terms of the Warranty as it applies to the Rims, forcing consumers to pay out-of-pocket to replace defective Rims that have failed under normal driving conditions. Id. ¶6. In addition, many of the affirmative representations Mercedes made about the Warranty were deceptive, that is, Mercedes portrayed the Warranty as if it covered all parts equally, including the Rims, when in fact the Rims were defective and Mercedes intended to exclude the Rims from Warranty coverage. Id. ¶7.

Moreover, rather than provide the remedy prescribed by the Warranty, Mercedes has actively concealed the defect present in the Rims from consumers. Mercedes has also engaged in a campaign of piecemeal correction, refunding all or a portion of the cost of replacement Rims only where convenient or where customer relationships perceived by Mercedes to be essential so demand, in an attempt to further cover up the fact that the Rims are defective. Id. ¶¶8; 56. In some cases, where a customer has complained loudly enough, Mercedes has offered to cover some or all of the cost of

replacing the Rims, but it is only on the condition that Mercedes is allowed to maintain possession of the defective Rims. This practice has further concealed both the existence and causes of the defect from Plaintiffs and the Class.  Id. ¶57.[1]

Plaintiffs allege that as a result of its affirmative misrepresentations, concealment of material information, deceptive conduct, and refusal to honor the Warranty, Mercedes has damaged Plaintiffs and the Class, and has unjustly profited from its wrongdoing.  Id. ¶10.

### D.   THIS ACTION

Plaintiffs bring this action to obtain damages, costs of suit, and attorneys' fees from Defendant.  Plaintiffs' Amended Complaint asserts three causes of action:  (A) breach of express warranty; (B) breach of written warranty pursuant to the Magnuson-Moss Warranty Act; and (C) violation of the New Jersey Consumer Fraud Act.  On February 16, 2010, Defendant moved to dismiss Plaintiffs' Complaint, or alternatively, for a more definite statement of facts.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of

---

[1] The Mercedes Benz Operators Manual specifically warns of the detrimental effects and dangers to personal safety associated with use of tires and Rims that are not "Mercedes Benz Original equipment."  Id. ¶58.  As such, Plaintiffs assert that the Class cannot substitute the Mercedes Benz Rims with rims from another manufacturer in order to alleviate the problems or potential dangers posed by their defects.  Id.

facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In Bell Atlantic Corp. v. Twombly the Supreme Court clarified the Rule 12(b)(6) standard. 550 U.S. 544 (2007).  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Twombly, at 1968 (citing Conley, 355 U.S. at 45-46).  Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965. Ultimately, the question is whether the claimant can prove a set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

### III.  DISCUSSION

Defendants move to dismiss, or alternatively, for a more definite statement of facts with respect to Plaintiffs' claims:  breach of express warranty; breach of written warranty pursuant to the Magnuson-Moss Warranty Act; violation of the New Jersey Consumer Fraud Act.  The Court will consider Defendant's motion with respect to both warranty claims (Counts I/II) together.[2]

---

[2] Defendants also move to strike paragraphs 62-64 of the Complaint, which consist of complaints taken from the National Highway Transportation Safety Administration's ("NHTSA") website, a class action forum on a website called "World Law Direct," and an unauthorized online forum purportedly for Mercedes-Benz owners.  Defendant argues that these excerpts constitute "hearsay submissions" that have no "indicia of reliability" and do not "pertain[] to Plaintiffs' claims in this action."  Doc. No. 18-1, at 1.  Plaintiffs respond that they have included this information, such the 23 consumer complaints, to illustrate that "not only [do] the Rims repeatedly fail under normal driving conditions, but that Mercedes-Benz, as a matter of practice, has failed to honor the Warranty and repair the defective Rims."  Doc. No. 21, at 3.

## A.    BREACH OF EXPRESS WARRANTY & BREACH OF WARRANTY PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT

Defendant moves to dismiss Plaintiffs' warranty-based claims, asserting that such claims have not been adequately plead.

### 1. Applicable Law

Express warranties in New Jersey are governed by Article 2 of the State's Uniform Commercial Code. N.J.S.A. 12A:2-101 *et seq*. Section 2-313(1) of the Code recognizes express warranties that arise from, among other things:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Generally, warranties limited by time or mileage "do[] not cover repairs made after the applicable time . . . ha[s] elapsed." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 616 (3rd Cir. 1995) (citing Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986) (collecting cases)); see Dewey v. Volkswagon, 558 F. Supp. 2d 505, 519 (D.N.J. 2008). Accordingly, to prevail on a warranty claim, a plaintiff must demonstrate allege the existence of an express warranty, and

---

The Court will not strike paragraphs 62-64 from Plaintiffs' Amended Complaint at this time. Although this Court has reservations about relying too heavily on such information, there is no need at this stage to determine how much weight should be given to such evidence, or whether such information is unduly prejudicial. See Ratner v. General Motors Corp., 241 N.J. Super. 197, 574 A.2d 541, 546 (App.Div. 1990) (finding that a trial court's exclusion of "a report of the National Highway Transportation Safety Administration of consumer complaints regarding sudden self-acceleration by vehicles like plaintiff's . . . was premature"; noting that "[i]f, as the case unfolded, notice became an issue, for example, the trial judge would be faced with entirely different considerations.")

the warrantor's failure to fulfill a promise under the warranty.[3]

    2. <u>Analysis</u>

First, Defendant asserts that Plaintiffs have not sufficiently pled the existence of unexpired, enforceable warranties. Plaintiffs respond that allegations contained in several paragraphs of their Complaint (<u>see, e.g.</u>, ¶¶ 15, 53-55, 83 and 90) are sufficient to withstand a motion to dismiss their warranty-based claims. <u>See</u> Doc. No. 22, at 17.

As an initial matter, this Court notes that Plaintiffs' allegations regarding the experience of members of the putative class, in general, cannot fulfill the requirement of pleading with adequate specificity. <u>Rolo v. City Investing Co. v. Liquidating Trust</u>, 155 F.3d 644, 659 (3d Cir. 1998) (stating that "[u]ntil the putative class is certified, the action is one between the Rolos, the Tenerellis and the defendants. Accordingly, the First Amended Complaint must be evaluated as to **these particular plaintiffs**."); <u>see also</u> <u>In re Schering-Plough Corp. Intron</u>, 2009 U.S. Dist. LEXIS 58900, at *70 (D.N.J. July 10, 2009). For example, a broad statement that "[b]ecause the defective Rims [i.e., the rims belonging to all class individuals] fail within the time period and mileage covered by the Warranty, the Warranty obligates Mercedes Benz to provide replacement parts or repairs necessary to correct the defective parts," Comp. ¶53; <u>see also</u> ¶¶ 53-55, 83 and 90, is insufficient to adequately plead warranty claims. Accordingly, to determine whether Plaintiffs have adequately

--------

[3] The requirements for a claim under the Magnuson-Moss Warranty Improvement Act ("MMWA") are substantially the same. Under the MMWA, a "written warranty" is a "written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time ... which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer ... " 15 U.S.C. § 2301(6).

stated their claims, the Court will, at this time, focus primarily on the allegations pertaining to the claims of Plaintiffs Luppino, Casiero and Stern.

In addition to class-wide allegations set forth by Plaintiffs, several portions of the Amended Complaint refer to the named Plaintiffs' particular experiences with Defendant's warranty and alleged breaches of thereof.  See id. ¶¶ 15-17.  That said, the facts alleged do not fully state claims as to each of the named Plaintiffs.  For instance, Plaintiff Luppino does not specifically allege that he experienced problems during the period covered by warranty, and Plaintiff Casiero does not allege that he presented his vehicle to Mercedes-Benz for repair—both facts must ultimately be demonstrated to prevail on a claim for express warranty.[4]

As certain areas of the Complaint are sparse with respect to the particular experiences of the named Plaintiffs, the Court will dismiss Plaintiffs' claims without prejudice, and permit Plaintiffs to amend their pleadings.

**B.    VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**

Defendant moves to dismiss Plaintiffs' claims for violation of the New Jersey Consumer Fraud Act.  This Court agrees that Plaintiffs' claims are not adequately plead, and will permit Plaintiff to amend their Complaint.

1.    Applicable Law

Fraud-based claims are subject to FED. R. CIV. P. 9(b).  Dewey v. Volkswagon, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) ("[New Jersey Consumer Fraud Act] claims 'sounding in fraud' are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b).").  Under Rule 9(b),

---

[4] The Court makes these observations to illustrate the type of facts that are necessary to state warranty-based claims under New Jersey law.

"[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake."  A plaintiff must state the circumstances of the alleged fraud "with sufficient

particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'"

Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citing Lum v. Bank of America, 361

F.3d 217, 223-224 (3d Cir. 2004).  To satisfy this standard, the plaintiff must plead or allege the date,

time and place of the alleged fraud or otherwise inject precision or some measure of substantiation

into a fraud allegation."  Id.

        2.  <u>Analysis</u>

The Court will consider Defendant's motion to dismiss Plaintiffs' claims, which are based

upon both (a) affirmative misrepresentations and (b) omissions.

        (a)  *Affirmative Misrepresentations*

With respect to Plaintiffs' CFA claims based upon affirmative misstatements, Plaintiffs point

to the 2006 Accessory and Wheel Catalog and the 2007 AMG Accessories brochure.  The 2006

Accessory and Wheel Catalog states that

> In technical terms, every Genuine Mercedes-Benz and AMG wheel is state-of-the-art.
> Each is crafted of a proprietary aluminum alloy formula that meets our exceedingly high
> original equipment requirements for strength and durability with minimal weight. That's
> crucial, because wheels are a significant part of your vehicle's unsprung mass, where
> every pound saved con-tributes directly to more dynamic and comfortable performance.
> After all, it's the wheels of your vehicle that transfer power to the road; mile after mile,
> bend after bend.
>
>          [ . . . ]
>
> A wheel only earns the name Genuine Mercedes-Benz when we are convinced that it
> will meet our high standards for safety, dependability and performance – not to mention
> aesthetics – and make your vehicle even more special. In short, Genuine means
> premium quality.

Comp. ¶33.  Additionally, the 2007 AMG Accessories brochure states that "light-alloy wheels have

their origins in the motor racing world" and explains that the materials used in the Rims are "light, strong and totally reliable." Id. ¶32.

Plaintiffs' assertions that Defendant's advertisements stressed the quality of a product that ultimately failed is insufficient to state a consumer fraud claim. Additional facts must be alleged. For example, this Court does not know when, and to whom, such statements were made. This information is significant for reasons that the Court in Dewey v. Volkswagen AG explained. 558 F. Supp. 2d at 526.

In Dewey, like here, the plaintiffs brought CFA claims based upon statements made in a car's product literature. The plaintiffs contended that based on the manufacturer's "representations [i.e., statements on Volkswagen's website and in the car owner's manual], upon which Plaintiffs relied, . . . Plaintiffs and other members of the Class leased and/or owned a Class Vehicle" Id. The plaintiffs then summarily asserted that "[t]hese material misstatements . . . had the cause and effect of inducing cautious consumers into leasing and/or purchasing the Class Vehicles" to their detriment. Id. The Dewey Court dismissed the affirmative misrepresentation claims, noting that "[w]ith regard to the statements on Volkswagen's website and in the 2002 Passat owner's manual, the Dewey Plaintiffs do not allege when the statements were made or at what point—if ever—each Plaintiff was exposed to one or more of the statements." Id.; see also In re GMC Anti-Lock Brake Prods. Liab. Litig., 966 F. Supp. 1525, 1531, 1535. These facts are critical, as a plaintiff bringing a CFA claim must plead "a causal nexus between . . . defendants' allegedly unlawful behavior [here, misstatements] and the plaintiff's ascertainable loss." Dewey, 558 F. Supp. 2d at 526 (citing Parker v. Howmedica Osteonics Corp., 2008 U.S. Dist. LEXIS 25702 (D.N.J. Jan. 14, 2008); see also New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 842 A.2d 174, 176 (N.J. Super.

-12-

Ct. App. Div. 2003).  This Court finds the pleadings here to be substantially similar to those in Dewey, and a similar result is warranted.

Although this Court agrees with Plaintiffs that they need not formulaically "allege the date, time and place of the alleged fraud" Plaintiffs must "inject precision or some measure of substantiation into" their fraud claims.  Frederico, 507 F.3d at 200 (citing Lum, 361 F.3d at 223-24); see also Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984)).  This includes alleging facts to form the basis for a causal nexus between Defendant's conduct and the alleged harm.  Without additional information, Plaintiffs have not adequately stated a claim under the CFA.

### (b)  *Omissions*

Defendant also argues that Plaintiffs' omission-based claims are insufficient under FED. R. CIV. P. 9(b).  This Court cannot agree, and finds that Plaintiffs have adequately plead their fraud claims premised upon alleged omissions.

A plaintiff who asserts a fraud claim based on omissions should "allege what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud."  GMC Anti-Lock Brake Prods., 966 F.Supp at 1536;  Weaver v. Chrysler Corp., 1997 U.S. Dist. LEXIS 3769, *10, (S.D.N.Y. 1997); see Snyder v. Ford Motor Co., 2006 U.S. Dist. LEXIS 63646 (N.D. Cal. Aug. 24, 2006) (citing Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001)).  Although the Court agrees with Defendant that certain aspects of Plaintiffs' pleadings are sparse—for example, they do not allege what party should have disclosed the defect (e.g., Volvo or a dealer), how the

disclosures should have been made, and to what types of consumers (e.g., new or used purchasers) must the disclosures be made—the claims here are sufficient to withstand dismissal at this early stage.

Another Court in this District, in <u>Maniscalco v. Brother Int'l Corp.</u>, 627 F. Supp. 2d 494, 500 (D.N.J. 2009), considered a motion to dismiss in analogous circumstances.  There, the plaintiff brought a New Jersey Consumer Fraud Act claim alleging that the defendant, a manufacturer of multi-function printers, defrauded its customers by marketing a product it knew to be defective.  <u>See id.</u> at 497.  To proceed on its CFA claim, the plaintiff was required to show that the defendant knowingly omitted a material fact in advertising or selling the product.  <u>See id.</u> at 500.  There, the plaintiff generally alleged that the defendant violated the CFA by:

> [m]arketing, advertising, and selling machines that they know are likely to fail due to the ME41 defect before their expected useful life of five years or 50,000 pages of printed material, while intentionally concealing and failing to disclose information to prospective purchasers; and
>
> Unconscionably limiting warranty coverage for a print-head failure caused by the ME41 defect, despite [Defendant]'s knowledge that the ME41 defect would cause print heads in MFC machines to fail after the warranty period expired, but before the projected useful life of the MFC machines . . . ."  <u>Id.</u> (emphasis in original).  The plaintiffs also alleged, however, that "internal documents reveal that [the defendant] has known, since at least 2001, that the ME41 defect was causing premature print-head failure in MFC machines."  <u>See id.</u> The Court found that such allegations were sufficient to plead that the defendant had knowledge.

<u>Id.</u>  Moreover, the plaintiff alleged that "internal documents reveal that [the defendant] has known, since at least 2001, that the ME41 defect was causing premature print-head failure in MFC machines."  <u>See id.</u>  In view of these allegations, the Court found that the plaintiff's pleadings were sufficient to withstand a motion to dismiss.

Similarly, in <u>Dewey</u> (discussed <u>supra</u>), the plaintiff asserted CFA/common law fraud claims.

-14-

See 558 F. Supp. 2d at 527-28.  The Court determined that, with respect to plaintiffs' omission-based claims, the pleadings satisfied the Rule 9(b) standard, as the plaintiffs alleged that

> Volkswagen did not fully and truthfully disclose to its customers the true nature of the inherent design defects, which were not readily discoverable until years later, often after the warranty has expired. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and or purchase the Class Vehicles with the said design defects and all of the resultant problems . . . .

Id.   Although the Dewey Court dismissed the plaintiffs' claims based on affirmative misrepresentations, it determined that the plaintiff's omission-based claims could proceed.

Here, Plaintiffs' allegations as to their fraudulent omission claims are substantially similar to those asserted by plaintiffs in Maniscalco and Dewey, and this Court finds a similar result to be appropriate.  Accordingly, Plaintiffs' omission-based fraud claims brought pursuant to the CFA will not be dismissed at this time.

## IV. CONCLUSION

Defendant's motion to dismiss Plaintiffs' Amended Complaint is **granted in part** and **denied in part**.  To the extent that Defendants' motion to dismiss has been granted, dismissal is without prejudice, and Plaintiffs may amend their Complaint.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:     August ___13___, 2010
Original:   Clerk's Office
cc:       All Counsel of Record
          Hon. Joseph A. Dickson, U.S.M.J.
          File