NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| VINCENT LUPPINO, CLIFF STERN, | : | |
| and JOHN CASIERO, individually and | : | |
| on behalf of others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| | : | **Hon. Dennis M. Cavanaugh** |
| v. | : | |
| | : | **OPINION** |
| MERCEDES-BENZ USA, LLC, | : | |
| | : | Civ. No. 09-5582 (DMC) (JAD) |
| Defendant. | : | |
| | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

       This matter comes before the Court upon motion of Defendant Mercedes-Benz USA, LLC ("Defendant") to dismiss portions of the Second Amended Complaint of Plaintiffs Vincent Luppino ("Luppino"), Cliff Stern ("Stern") and John Casiero ("Casiero") (collectively, "Plaintiffs"), who assert claims for breach of express warranty, breach of written warranty pursuant to the Magnuson-Moss Warranty Act, and violation of the New Jersey Consumer Fraud Act ("CFA"). No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. Upon consideration of the parties' submissions, and for the reasons stated below, Defendant's motion to dismiss is **granted in part**.

# I.  **BACKGROUND**[1]

On August 13, 2010, this Court issued an Opinion dismissing, without prejudice, (1) the warranty counts in the Amended Complaint on the grounds that "the facts alleged do not fully state claims as to each of the named Plaintiffs," and (2) the consumer fraud claims that were based upon affirmative misrepresentations.  Luppino v. Mercedes-Benz USA, LLC, No. 09-5582 (DMC) (JAD), 2010 U.S. Dist. LEXIS 83584, *15 (D.N.J. Aug. 13, 2010).  Plaintiffs were permitted to amend their pleadings in order to cure these defects.

In the Second Amended Complaint ("SAC"), Plaintiffs specifically address the claims of each of the named plaintiffs:[2]

Stern purchased a 2005 Mercedes-Benz SL 500 on or about December 31, 2005.  After an electrical defect was discovered, Defendant replaced that vehicle in March 2006 with a 2006 Mercedes-Benz SL 500 with 18-inch AMG factory Rims.  SAC ¶¶ 103, 104.  Within the first few months of owning the 2006 Mercedes, Stern had to repair a failed Rim.  SAC ¶ 119.  The Rim was repaired at a parts distribution center which sells and distributes genuine Mercedes-Benz Rims.  SAC ¶ 120.  Stern paid out-of-pocket for the failed Rim instead of asking Defendant to repair or replace the RIM pursuant to the Warranty because he "became generally aware, from information readily accessible in the public domain, that Mercedes-Benz routinely refused to repair or replace Rims that have failed under normal driving conditions, and that Mercedes-Benz would claim the repair would not be covered under his Warranty."  SAC ¶ 121.  Stern's vehicle was covered by the standard

---

[1]        The facts in the Background section have been taken from the parties' submissions.  For the purposes of this motion, the Court accepts Plaintiffs' allegations as true.

[2]As Defendant only seeks to dismiss the warranty claims of Stern and Casiero, only facts regarding their warranty claims will be addressed.

Mercedes-Benz Warranty at the time that he repaired the failed Rim.  SAC ¶ 122.

Casiero purchased a 2006 Mercedes-Benz E500 4Matic Sedan with 17-inch 5-Spoke Light Alloy Rims from an authorized dealer's auction on May 7, 2008.  SAC ¶ 123.  Within one month of owning his vehicle, Casiero had to replace a failed Rim.  SAC ¶ 138.  The Rim was replaced at a parts distribution center which sells and distributes genuine Mercedes-Benz Rims.  SAC ¶ 139. Like Stern, Casiero did not seek repair or replacement directly from Defendant because he too became "generally aware . . . that Mercedes-Benz would claim the replacement would not be covered under his warranty."  SAC ¶ 140.  Casiero's vehicle was covered by the standard Warranty at the time he incurred the out-of-pocket costs to repair the failed Rim.  SAC ¶ 142.

All three named plaintiffs assert that they were "repeatedly exposed to advertisements and other representations that Mercedes-Benz publicly disseminates" through a variety of media.  SAC ¶¶ 90, 117, 136.  Accordingly, at the time they purchased their vehicles, Plaintiffs were exposed to the following representations: (1) "Mercedes-Benz are high-quality, high-performance Vehicles;" (2) "Mercedes-Benz Rims are durable, without defect, and suitable for the purposes for which they are intended;" and (3) "Mercedes-Benz Vehicles are tested by Mercedes-Benz to ensure that they maintain the highest standards of safety, innovation, performance, durability and strength in the automotive industry."  SAC ¶ 118.

## II.  <u>STANDARD OF REVIEW</u>

In deciding a motion under Rule 12(b)(6), the district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.  To survive a motion to dismiss, the complaint must state a plausible claim.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  Thus, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Bell Atl. Corp., 550 U.S. at 555.

### III.  DISCUSSION

Defendant argues that the SAC does not succeed in remedying any of the defects in the Amended Complaint and should be dismissed with prejudice.  Namely, Defendant asserts that (1) the Counts for breach of express warranty should be dismissed as to Plaintiffs Stern and Casiero because neither of those parties presented their vehicles to Defendant for repair and never actually submitted a warranty claim that was considered and denied; and (2) Plaintiffs provide no support for an affirmative misrepresentation claim because they fail to cite any specific documents or allege that those documents were read by each Plaintiff prior to the purchase of his vehicle.[3]

### A.   BREACH OF EXPRESS WARRANTY & BREACH OF WARRANTY PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT

In it's previous Opinion, the Court noted that "the facts alleged do not fully state claims as to each of the named Plaintiffs.  For instance, Plaintiff Luppino does not specifically allege that he

---

[3] Defendant has not challenged: (1) Plaintiffs' omissions claim pursuant to the New Jersey Consumer Fraud Act ("NJCFA"), which the Court upheld in its August 13 Opinion; (2) Luppino's New Jersey Breach of Warranty claim; or (3) Luppino's Magnunson Moss Warranty Improvement Act claim.  Defendant has responded to these claims by Answer filed October 26, 2010.

experienced problems during the period covered by warranty, and Plaintiff Casiero does not allege that he presented his vehicle to Mercedes-Benz for repair—both facts must ultimately be demonstrated to prevail on a claim for express warranty." Luppino, 2010 U.S. Dist. LEXIS 83584, at *14. Though Plaintiffs have added more specific allegations regarding each named plaintiff in the SAC, both Stern and Casiero concede that they never presented the failed Rims to Defendant for repair or replacement.

New Jersey has adopted the Uniform Commercial Code's ("UCC") notice requirement for an express warranty claim. It provides: "Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.J. Stat. Ann. § 12A:2-607(3)(a). Thus, "if an individual failed to seek a repair . . . [from the seller], he or she could not maintain a suit for breach of express warranty." Strzakowlski v. Gen. Motors Corp., No. Civ.A. 04-4740, 2005 WL 2001912, at *9 (D.N.J. Aug. 16, 2005); see also Coyle v. Hornell Brewing Co., No. 08-02797, 2010 U.S. Dist. LEXIS 59467, at *21 (D.N.J. Jun. 15, 2010) (noting that pre-suit notice only not required in action against remote manufacturer).

Despite the clear statutory language, Plaintiffs argue that "the fact that Stern and Casiero did not complain directly to a Mercedes-Benz dealership prior to filing this lawsuit . . . is a distinction without a difference." Pls.' Br. 11. Yet, they offer no support from this jurisdiction to support their proposition. At no time has any court in this district or in the state of New Jersey found that a buyer is not required to provide a direct seller with pre-suit notice in an action for express breach of warranty. Thus, Stern and Casiero's admission that they have failed to provide notice to Defendant

proves fatal to their breach of express warranty claims.[4]

### B.   VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

As stated in the Court's earlier Opinion, "a plaintiff bringing a CFA claim must plead 'a causal nexus between defendants' allegedly unlawful behavior . . . and the plaintiff's ascertainable loss.'" Luppino, 2010 U.S. Dist. LEXIS 83484, at *19 (quoting Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 526 (D.N.J. 2008). Thus, it is critical that a plaintiff allege when misstatements were made and at what point a plaintiff was exposed to one or more of those statements.

This Court directed Plaintiffs to "inject precision or some measure of substantiation into their fraud claims." Id. at *20 (citation and internal quotation marks omitted). Thus, Plaintiffs allege in the SAC that Luppino, Cassiero, and Stern were each:

> [E]xposed to the following Mercedes-Benz representations at the time [they] leased [their] Vehicle[s], which were widely disseminated in a variety of Mercedes-Benz commercials and print advertisements:
> a. Mercedes-Benz Vehicles are high-quality, high-performance Vehicles;
> b. Mercedes-Benz Rims are durable, without defect, and suitable for the purposes for which they are intended;
> c. Mercedes-Benz Vehicles are tested by Mercedes-Benz to ensure that they maintain the highest standards of safety, innovation, performance, durability and strength in the automotive industry.

Compl. ¶¶ 91, 118, 134. These allegations establish that Plaintiffs were exposed to the purported fraudulent misstatements, "which were widely disseminated in a variety of Mercedes-Benz commercials and print advertisements," at the time that each of them leased or purchased their vehicles. Accordingly, the Court finds that Plaintiffs have provided sufficient information in their

---

[4]As "[t]he requirements for a claim under the Magnuson-Moss Warranty Improvement Act ("MMWA") are substantially the same" as for a breach of express warranty claim, Count II of the SAC must also be dismissed as to Casiero and Stern. See Luppino, 2010 U.S. Dist. LEXIS 83584, at *13 n.3.

pleadings to proceed on their CFA claims.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, Defendant's partial motion to dismiss Counts I and II against

Plaintiffs Stern and Casiero is GRANTED and Defendant's motion to dismiss the Count III is

DENIED.

 S/ Dennis M. Cavanaugh          
Dennis M. Cavanaugh, U.S.D.J.

Date:          June  20 ,  2011
Original:      Clerk's Office
cc:            All Counsel of Record
               Hon. Joseph A. Dickson, U.S.M.J.
               File