## CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

**COUNSELLORS AT LAW**

| | | | |
|---|---|---|---|
| CHARLES C. CARELLA | JAMES T. BYERS | RICHARD K. MATANLE, II | RAYMOND J. LILLIE |
| BRENDAN T. BYRNE | DONALD F. MICELI | FRANCIS C. HAND | WILLIAM SQUIRE |
| PETER G. STEWART | A. RICHARD ROSS | AVRAM S. EULE | ALAN J. GRANT° |
| ELLIOT M. OLSTEIN | CARL R. WOODWARD, III | RAYMOND W. FISHER | STEPHEN R. DANEK |
| JAN ALAN BRODY | MELISSA E. FLAX | | DONALD A. ECKLUND |
| JOHN M. AGNELLO | DAVID G. GILFILLAN | OF COUNSEL | MEGAN A. NATALE |
| CHARLES M. CARELLA | G. GLENNON TROUBLEFIELD | | AMANDA J. BARISICH |
| JAMES E. CECCHI | BRIAN H. FENLON | | ZACHARY S. BOWER+ |
| | LINDSEY H. TAYLOR | | MICHAEL CROSS |
| | CAROLINE F. BARTLETT | | °MEMBER NY BAR ONLY |
| JAMES D. CECCHI (1933-1995) | | | +MEMBER FL BAR ONLY |
| JOHN G. GILFILLAN III (1936-2008) | | | |

5 BECKER FARM ROAD
ROSELAND, N.J.  07068-1739
PHONE (973) 994-1700
FAX (973) 994-1744
www.carellabyrne.com

July 17, 2013

**VIA ECF**

The Honorable Dennis M. Cavanaugh
United States District Judge
United States Post Office and Courthouse Building
Newark, New Jersey 07101

The Honorable Joseph A. Dickson
United States Magistrate Judge
Martin Luther King Jr. United States Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re: *Luppino, et al. v. Mercedes-Benz USA, LLC, et al.*
           **Civil Action Entry 09-05582 (DMC) (JAD)**

Dear Judge Cavanaugh and Judge Dickson:

      We are co-counsel for Plaintiffs in the above matter.  Please accept this letter as a response to Defendants' objection to the appointment of a special master for discovery.  For the reasons set forth below, Plaintiffs believe that a special master is appropriate and should be appointed.

**I.      Appointment of a Special Master Is Justified**

      Rule 53(a)(1) provides that the Court may appoint a special master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."  It is appropriate to appoint a special master to perform some "time consuming or detailed tasks that the district judge or magistrate judge would be less efficient in accomplishing."  *Agostino v. Quest Diagnostics, Inc.*, 2012 WL 2344865, at *1 (D.N.J. June 20, 2012) (citing *Prudential Insurance Co. of America v. U.S. Gypsum Co.*, 991 F.2d 1080, 1085 (3d Cir. 1993),[1] and *Beazer East, Inc. v. Mead Corp.*, 412 F.3d 429, 441 (3d Cir. 2005)).

---

[1]     *Prudential* was decided prior to the 2003 amendments to Rule 53.  Prior to the 2003 amendments, "a reference to the master shall be the exception and not the rule."  The Advisory

The Honorable Dennis M. Cavanaugh
The Honorable Joseph A. Dickson
July 17, 2013
Page 2

> The function of a pretrial master may include discovery related matters that under normal circumstances could be addressed by a judge. Although discovery disputes usually should not require the supervision of a master, the appointment of a master may be necessary at times to resolve *protracted disagreements between counsel* and to alleviate the burdens on the district judge.

9C Wright & Miller Federal Practice and Procedure, Civil 3d § 2602.1, at 546-7 (citing, *inter alia*, *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 112 (D.N.J. 2006)) (emphasis added). The decision to appoint a special master is left to the sound discretion of the District Court. *See Hook v. State of Arizona*, 120 F.3d 921, 926 (9th Cir. 1997).

Defendants' objection to the appointment of a special master is primarily based upon their position that no further discovery should be allowed, so a special master is unnecessary.[2] The Court has already decided that Plaintiffs are entitled to further discovery. The whole point of appointing a special master is to address the minutia of what discovery is really necessary at this stage in the case in order for Plaintiffs to file a motion for class certification. Contrary to Defendants' assertion that the circumstances of this case do not justify a special master, this case has been marred by "protracted disagreements" caused by Defendants' dilatory conduct and failure to negotiate in good faith. That fact is demonstrated by a review of the docket. Indeed, Defendants have devoted nearly all their efforts since the February 21, 2013 status conference to repeating their argument that Plaintiffs should not be permitted to take further discovery, rather than addressing Plaintiffs' actual requests. In fact, they are largely responsible for the lack of progress in discovery, as explained in more detail below.

As an initial matter, Defendants refused to negotiate in good faith regarding the custodians whose documents they would produce. [Dkt. Entry 178 at 8]. Time and again, MBUSA refused even to produce relevant organizational charts, which corporate defendants routinely produce at the outset of similar cases. *Id.* at 8-9; *see also* 2/13/2013 Hr'g Tr. at 42:6-16 (Judge Dickson questioning why no organizational chart have been produced). MBUSA first identified only a handful of relevant custodians, necessitating an independent investigation by

---

Committee Notes to the 2003 amendments revised Rule 53 "extensively to reflect changing practices in using masters." Unlike version of Rule 53 in effect when *Prudential* was decided, the 2003 amendments were intended to neither encourage nor discourage the use of special masters. 9C Wright & Miller Federal Practice and Procedure, Civil 3d § 2602.1, at 541. Most notably, the requirement of former Rule 53(a)(1)(B)(i), that a special master could be appointed only where there was some "exceptional condition," was eliminated.

[2]  Defendants carry this argument one step further by arguing that Plaintiffs have waived any right to further discovery by failing to appeal any of Judge Dickson's discovery rulings. They ignore Rule 54(b), which provides that any interlocutory order that does not adjudicate all claims of all parties may be revised at any time.

The Honorable Dennis M. Cavanaugh
The Honorable Joseph A. Dickson
July 17, 2013
Page 3

Plaintiffs, and forcing the parties to waste time and effort as Plaintiffs attempted to divine who the key witnesses are.[3]

Similarly, Plaintiffs timely asked Daimler – several times – to meet and confer about its objections to Plaintiffs' document requests. Daimler ignored these requests, before finally responding to Plaintiffs with a refusal to do so, noting that "[it] served its discovery responses long ago and has obviously nearly completed its document production…." [Dkt. Entry 199] at 1-2. Soon thereafter, Plaintiffs sought permission to file a motion to compel against Daimler [Dkt. Entry 185], and this Court's April 8, 2013 Order indicated that additional discovery from Daimler would be addressed after the pending motion to dismiss is decided. [Dkt. Entry 242]. Yet Defendants inexplicably maintain that discovery with Daimler is closed. *See* 7/3/2013 letter from M. McDonald to Judge Dickson [Dkt. Entry 275] at 4 ("No discovery remains to be done under the Court's Letter Order and PTSO."); 5/31/2013 letter from M. McDonald to Judge Dickson [Dkt. Entry 265 at 2] ("… well after the discovery cut-off, Plaintiffs cannot … propound[ ] new discovery … on Daimler AG.").

Defendants' gamesmanship is exemplified by their handling of the MRA database, which was identified by MBUSA as *the* database containing information on the sales of wheels – information that Plaintiffs' experts view as highly relevant. *See* 5/30/2012 letter from M. McDonald to K. Noto, attached as Ex. A. In its April 8 Order, the Court granted Plaintiffs' request for access to information in the "VMI database" (to be produced at Plaintiffs' expense), but inadvertently conflated the MRA database and MBUSA's VMI application, which draws information from the MRA database.[4] At the May 17, 2013 hearing, after clearing up the

---

[3]   Defendants' bad faith is further exemplified by an exchange that took place during the May 17, 2013 hearing. In explaining why Plaintiffs had yet to depose Drew Slaven, MBUSA's head of marketing, Plaintiffs' counsel stated that she had not heard of Slaven until Defendants had identified him in February. Defendants' counsel responded that "[Plaintiffs] have known about Mr. Slaven for years…. [T]hey've had the opportunity to take his deposition." Tr. at 49:8-13. Another attorney for MBUSA represented that "[Mr. Slaven] was listed in [Plaintiffs'] motion to compel in November." Tr. at 50:3-4. This is false, *see* [Dkt. No. 178], and indeed, Slaven's name only appears in seven documents (none of which even show his job title). Accordingly, before February, Plaintiffs had no way to know that he is a significant witness and have *never* had the opportunity to depose him. Defendants similarly take the position that Plaintiffs cannot depose the other six individuals for whom it just produced documents, as required by the Court in response to Plaintiffs' motion to compel. [Dkt. No. 242]. Defendants have blurred their objection to taking these depositions *in advance of class certification* with an overall objection to taking them *at all*. [Dkt. No. 266 at 1]. The parties' inability to agree on something as simple as Plaintiffs' right to depose key witnesses further justifies the appointment of a special master.

[4]   Thus, when Plaintiffs asked MBUSA for the cost of producing MRA data, MBUSA stated that a search and production of relevant information from the *VMI application* would be

The Honorable Dennis M. Cavanaugh
The Honorable Joseph A. Dickson
July 17, 2013
Page 4

apparent confusion regarding the VMI application versus the MRA data, the Court instructed the parties to discuss production of the MRA data. On May 22, 2013, MBUSA wrote to Plaintiffs, describing various alleged limitations of the MRA data, including its lack of reliability due to duplicate entries that purportedly cannot be corrected.[5] [Dkt. Entry 265, Ex. D]. On June 17, 2013, Plaintiffs responded to this letter and asked for a meet-and-confer call. *See* attached Exhibit B. On June 19, 2013, MBUSA responded to Plaintiffs, reiterating its doubts as to the discoverability of the MRA data and complaining that Plaintiffs did not respond soon enough. *See* attached Exhibit C. In their latest letter to the Court, Defendants inexplicably – and falsely – claim that Plaintiffs *never responded* to their May 22, 2013 letter, and ask that the Court find that Plaintiffs have waived their right to pursue production of the MRA database. [Dkt. Entry 275 at 7].

Defendants have also insisted on wasteful discovery, *i.e.*, the depositions of (1) Dr. Tom Read, the consultant[6] Plaintiffs retained for their pre-filing investigation; (2) the consultants Dr. Read engaged for certain outsourced testing; and (3) former plaintiff John Casiero, who has dismissed his claims with prejudice but whose deposition Defendants insisted on taking before they would agree to this dismissal. These depositions have wasted the resources of Plaintiffs and the Court, and have caused further delays.

In sum, to avoid further delays and induce Defendants to negotiate in good faith, Plaintiffs support the Court's appointment of a Special Master. *See* 1/2/2013 letter from K. Noto to Judge Dickson [Dkt. Entry 199 at 4]; *see also* 2/28/2013 letter from K. Noto to Judge Dickson [Dkt. Entry 230].

---

prohibitively expensive, and that Plaintiffs' pressing for production from the *MRA database* is "in violation of the Court's order and is sanctionable conduct." [Dkt. No. 245-1 at 10-11 n.16].

[5] Perhaps more disturbing is that the MRA database may not in fact contain the relevant data. It is clear that MBUSA has *some reliable source* for information on parts sales, since it routinely produces such data to NHTSA upon request, and even uses this information for its own internal analyses. *See* 6/17/2013 letter from S. Friedland to M. McDonald, attached as Ex. B. *See also* Request No. 11, 4/25/07 NHTSA letter to MBUSA at 8, attached as Ex. D; 6/21/07 MBUSA response to NHTSA and associated data, attached as Exs. E, F. Thus, it appears that either the MRA data is in fact reliable (contrary to MBUSA's representations) or there is some *other* database in which reliable information is maintained, which MBUSA has thus far failed to disclose.

[6] Despite knowledge of Dr. Read's role as a *consultant*, not a testifying expert, and despite Dr. Read's clear testimony that he had no opinion regarding the existence of a defect in the wheels he tested, Defendants' misleadingly quoted his testimony out of context in their pending Omnibus Motion to Dismiss. *See* Pls. Opp. Br. [Dkt. Entry 232, at 11-14] (describing the mischaracterizations of Dr. Read's testimony in Defendants' opening brief).

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

The Honorable Dennis M. Cavanaugh
The Honorable Joseph A. Dickson
July 17, 2013
Page 5

## II.     Scope of the Appointment

Rule 53(b)(2) sets forth the necessary contents of any order appointing a special master, among them the special master's duties. Fed.R.Civ.P. 53(b)(2)(A). Defendant requests that the scope of the special master's authority be limited to deciding issues relating to the MRA database and inspection and testing of dealer wheels. Plaintiffs need substantially more discovery than those discrete points in order to go forward with class certification. Plaintiffs understand that the Court is not going to allow *all* of the discovery that Plaintiffs have requested, at least at this point in the litigation. However, the primary purpose of appointing a special master is to determine what information Plaintiffs need for filing their class certification motion and how to go about getting that information, not to referee two discreet issues that plainly do not provide Plaintiffs with the additional information they need to proceed with class certification. Plaintiffs respectfully suggest that the appropriate scope of the special master's authority be the dispute that is presently before the Court: in light of the discovery Plaintiffs have requested and Defendants' unwillingness to provide further discovery, what is the appropriate and necessary discovery that will provide Plaintiffs with sufficient information to proceed with a motion for class certification.[7] Further, Plaintiffs have made clear that there is certain *additional* discovery that is required to prove their case on the merits. *See* 5/22/13 letter from S. Friedland to Judge Dickson [Dkt. Entry 260]. Plaintiffs suggest that the special master oversee the scope of this discovery as well.

## III.    Costs of the Special Master Need Not Be Determined Now

At the June 20 conference, the Court indicated that, rather than having the cost of the special master split evenly between the parties, it would empower the special master to impose his or her costs on a party who was being unreasonably obstructive. Defendants insist that the Court should preemptively impose the costs of the special master on Plaintiffs because they have been the sole cause of delays in the case. Plaintiffs disagree. Indeed, one of the ongoing disputes between the parties is who, in fact, has caused the delays in discovery. Plaintiffs believe that, if it is appropriate to deviate from the traditional even sharing of expenses, the special master should recommend an appropriate cost split to the Court, based on his or her own observations as to who has been or is obstructing the discovery process, rather than that issue being decided in advance, based solely on Defendants' say-so.

---

[7]     Defendants also wish to preserve their right to *de novo* review of the special master's rulings under Rule 53(f)(3). That is, of course, their prerogative, but it is a further indication of Defendants' wish take advantage of procedural obstacles in providing discovery that Plaintiffs are entitled to rather than wanting an expeditious resolution of the issues before the Court.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

The Honorable Dennis M. Cavanaugh
The Honorable Joseph A. Dickson
July 17, 2013
Page 6

### IV. Plaintiffs Do Not Oppose the Proposed Master

At the June 20, 2013 conference, Your Honor stated that the Court proposes appointing the Honorable William Wertheimer as the Special Master. Plaintiffs do not oppose this suggestion.[8]

Respectfully submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO

/s/ James E. Cecchi

JAMES E. CECCHI

cc: Counsel of Record (by ECF)

---

[8] To the extent that the Court wishes to consider any of Defendants' suggested masters, which Plaintiffs believe is unnecessary, Plaintiffs would have no objection to the appointment of Judge Hughes.