# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

VINCENT LUPPINO, CLIFF STERN, and NOEL J. SPIEGEL, individually and on behalf of all others similarly situated,

        Plaintiffs,

v.

MERCEDES-BENZ USA, LLC,

        Defendant.

Civil Action No: 09-5582 (JLL)(JAD)

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION

---

James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Mark C. Gardy
James S. Notis
James H. Gianninoto
**GARDY & NOTIS, LLP**
560 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
(201) 567-7377

James J. Sabella
Adam J. Levitt
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, New York 10017
(646) 722-8500

Antonio Vozzolo
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Floor
New York, New York 10016
(212) 983-9330

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 1

    A.    The Vehicles And The Wheels ................................................................. 1

    B.    MBUSA's Material Omissions ................................................................. 2

    C.    All Of The Vehicles Are Sold With The Same Warranty ....................... 6

    D.    The Wheels Suffer From A Common Defect ........................................... 7

LEGAL ARGUMENT ................................................................................................... 8

I.      THE PROPOSED CLASS SATISFIES THE RULE 23(a) REQUIRMENTS .................. 8

    A.    The Numerosity Requirement Is Satisfied ............................................... 8

    B.    The Commonality Requirement Is Satisfied ............................................ 9

    C.    Plaintiffs Satisfy The Typicality Requirement ........................................ 9

    D.    Plaintiffs Will Adequately Represent The Class .................................... 10

II.    THE PROPOSED CLASS SATISFIES THE RULE 23(b) REQUIRMENTS ................. 11

    A.    Common Questions Of Law And Fact Concerning Liability
            Predominate Questions Affecting Only Individual Class Members ........ 12

            1.    Because Plaintiffs' Case Is Based On The Existence Of A
                 Design Defect Common To All Of The Vehicles, Individual Issues
                 As To Why Particular Wheels Failed Will Not Predominate ................. 13

                 (a)    A Design Defect Is An Issue Common To All Class
                       Members That Can Be Proven By Common Evidence ................. 13

                 (b)    The Case Will Not Present Individual Issues
                       As To The Reasons Why Particular Wheels Failed ..................... 15

2.     Common Questions Of Law And Fact Predominate
The Breach Of Express Warranty Claim ....................................................17

3.     Common Questions Of Law And Fact Predominate The Claim
For Breach Of The Magnuson-Moss Warranty Act ("MMWA") .............18

4.     Common Questions Of Law And Fact Predominate Plaintiffs'
Claim For Breach Of The Implied Warranty Of Merchantability .............18

5.     Common Questions Of Law And Fact Predominate Plaintiffs'
Claim Pursuant To The New Jersey Consumer Fraud Act ("NJCFA")......20

B.     A Class Action Is A Superior Method For Litigating Plaintiffs'
Design Defect Claims Rather Than Individual Actions ........................................24

1.     The Interest Of Individual Class Members In Controlling The
Litigation...................................................................................................24

2.     The Extent Of Any Litigation Already Commenced By The Class ..........25

3.     The Desirability Of Concentrating The Litigation In A Single Forum .....25

4.     The Proposed Class Is Manageable ..........................................................25

5.     The Proposed Class Is Readily Ascertainable ..........................................26

III.     ISSUE CERTIFICATION IS APPROPRIATE UNDER RULE 23(c)(4) ........................27

IV.     PROPOSED CLASS COUNSEL SATISFY RULE 23(g)................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allapattah Servs., Inc. v. Exxon Corp.,*
  157 F. Supp. 2d 1291 (S.D. Fla. 2001) ...................................................................................29

*Altronics of Bethlehem, Inc. v. Repco, Inc.,*
  957 F.2d 1102 (3d Cir. 1992)................................................................................................18

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)...............................................................................................................12

*Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds,*
  133 S. Ct. 1184 (2013)...........................................................................................................14

*Assocs. Home Equity Servs. Inc. v. Troup,*
  343 N.J. Super. 254 (App. Div. 2001) ..................................................................................22

*Baby Neal ex rel. Kanter v. Casey,*
  43 F.3d 48 (3d Cir. 1994) .....................................................................................................10

*Baker v. Microsoft Corp.,*
  785 F.3d 315 (9th Cir. 2015) ................................................................................................14

*Barr v. Harrah's Entm't, Inc.,*
  242 F.R.D. 287 (D.N.J. 2007), *aff'd*, 335 Fed. Appx. 177 (3d Cir. 2009)................................9

*Brandon Banks v. Nissan North Am., Inc.,*
  2013 WL 6700299 (N.D. Cal. Dec. 19, 2013).......................................................................27

*Butler v. Sears, Roebuck & Co.,*
  727 F.3d 796 (7th Cir. 2013) .......................................................................................... passim

*Byrd v. Aaron's Inc.,*
  784 F.3d 154 (3d Cir. 2015)............................................................................................26, 27

*Comcast v. Behrend,*
  133 S. Ct. 1426 (2013)...........................................................................................................29

*Cox v. Sears Roebuck & Co.,*
  138 N.J. 2 (1994) .............................................................................................................20, 21

*Dal Ponte v. Am. Mortg. Exp. Corp.,*
  2006 WL 2403982 (D.N.J. Aug. 17, 2006) .....................................................................22, 26

*Danvers Motor Co., Inc. v. Ford Motor Co., Inc.,*
  543 F.3d 141 (3d Cir. 2008)............................................................................................10, 24

iii

*Dupler v. Costco Wholesale Corp.*,
    249 F.R.D. 29 (E.D.N.Y. 2008) ..........................................................................................18

*Elias v. Ungar's Food Prods., Inc.*,
    252 F.R.D. 233 (D.N.J. 2008) .......................................................................................17, 22

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ..............................................................................................30

*Gates v. Rohm & Haas Co.*,
    655 F.3d 255 (3d Cir. 2011)................................................................................................28

*Gennari v. Weichert Co. Realtors*,
    148 N.J. 582 (1997) ............................................................................................................21

*Helmer v. Goodyear Tire & Rubber Co.*,
    2014 WL 1133299 (D. Colo. Mar. 21, 2014) ...............................................................15, 16

*In re Air Cargo Shipping Servs. Antitrust Litig*,
    240 F.R.D. 56 (E.D.N.Y. 2006)..........................................................................................30

*In re Cadillac V8-6-4 Class Action*,
    93 N.J. 412 (1983) ..................................................................................................17, 18, 19

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
    2008 WL 4126264 (D.N.J. Sept. 2, 2008) ..........................................................................19

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008)................................................................................................12

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    257 F.R.D. 46 (D.N.J. 2009)...............................................................................................21

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    2007 WL 4150666 (M.D. Pa. Nov. 19, 2007) .....................................................................30

*In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
    148 F.3d 283 (3d Cir. 1998)................................................................................................12

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009)................................................................................................10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Prac. & Prod Liab.
    Litig.*,
    2012 WL 7802852 (C.D. Cal. Dec. 28, 2012) ....................................................................27

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)................................................................................................29

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)...........................................................................24, 25

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) .......................................................................... passim

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
    192 N.J. 372 (2007) .....................................................................................................21

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012).......................................................................13, 27

*Kuzian v. Electrolux Home Prods., Inc.*,
    937 F. Supp. 2d 599 (D.N.J. 2013).........................................................................18

*Leonard v. Sears, Roebuck & Co.*,
    2015 WL 4430429 (N.D. Ill. July 20, 2015)...........................................................10

*Little-King v. Hayt Hayt & Landau*,
    2013 WL 4874349, at *7 (D.N.J. Sept. 10, 2013) ..................................................11

*Marcus v. BMW of N. Am.*,
    687 F.3d 583 (3d Cir. 2012)............................................................................. passim

*N.J. Thoroughbred Horsemen's Ass'n, Inc. v. Alpen House U.L.C.*,
    2012 WL 893092 (D.N.J. Mar. 14, 2012)...................................................................9

*Neale v. Volvo Cars of N. Am., LLC,*
    2015 WL 4466919 (3d Cir. July 22, 2105)..............................................................27

*New Directions Treatment Serv. v. City of Reading*,
    490 F.3d 293 (3d Cir. 2007)......................................................................................30

*Nowak v. Ford Motor Co.*,
    240 F.R.D. 355 (E.D. Mich. 2006) ...........................................................................30

*Pac. Emplrs. Ins. Co. v. Global Reinsurance Corp. of Am.*,
    693 F.3d 417 (3d Cir. 2012).......................................................................................21

*Pella Corp. v. Saltzman*,
    606 F.3d 391 (7th Cir. 2010) ...............................................................................29, 30

*Realmuto v. Straub Motors, Inc.*,
    65 N.J. 336 (1974) .......................................................................................................17

*State v. Hudson Furniture Co.*,
    165 N.J. Super. 516 (App. Div. 1979) .....................................................................22

*Stewart v. Abraham,*
  275 F.3d 220 (3d Cir. 2001)..........................................................................................8

*Strzakowlski v. General Motors Corp.,*
  2005 WL 2001912 (D.N.J. Aug. 16, 2005) .......................................................20, 21

*Sullivan v. DB Investments, Inc.,*
  667 F.3d 273 (3d Cir. 2011)....................................................................................12, 15

*Summerfield v. Equifax Info. Servs. LLC,*
  264 F.R.D. 133 (D.N.J. 2009)........................................................................................12

*Terrill v. Electrolux Home Prods.,*
  295 F.R.D. 671 (S.D. Ga. 2013) ...................................................................13, 19, 20

*Varacallo v. Mass. Mut. Life Ins. Co.,*
  332 N.J. Super. 31 (App. Div. 2000) .........................................................................20

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011)..................................................................................................28

*Waudby v. Verizon Wireless Servs., LLC,*
  248 F.R.D. 173 (D.N.J. 2008).......................................................................................30

**STATUTES AND RULES**

15 U.S.C. § 2310.................................................................................................................18

Fed. R. Civ. P. 23 ...................................................................................................... passim

N.J.S.A. § 56:8-1................................................................................................................20

UCC 2-314 ...........................................................................................................................19

**OTHER AUTHORITIES**

1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 3.05 at 247 (4th
  ed. 2002) ........................................................................................................................8

## PRELIMINARY STATEMENT

This is a nationwide class action against MBUSA[1] on behalf of all persons and entities[2] in the U.S. who purchased or leased a Mercedes-Benz passenger vehicle,[3] Model Year 2006 to present, in any state (or, in the alternative, a statewide class of persons or entities who purchased or leased a Mercedes-Benz passenger vehicle, Model Year 2006 to present, in the State of New Jersey), equipped with 17, 18, or 19-inch aluminum, cast-alloy Wheels. The Wheels suffer from a uniform design defect rendering them unduly susceptible to failure. MBUSA has failed to disclose to purchasers this design flaw and has improperly refused to cover replacement costs under the warranty. Plaintiffs seek certification under Fed. R. Civ. P. 23(c)(4) with respect to the issue of Mercedes' liability, so that damages can later be calculated through an appropriate Special Master or other claims process that the Court determines is best suited for this case.

## STATEMENT OF FACTS

### A.    The Vehicles And The Wheels

Throughout the Class Period, Mercedes-Benz sold passenger vehicles comprising the following classes: C, CL, E, S, CLK, CLS, SLK, SL, SLS, and SLR. The Vehicles are manufactured by MBUSA's parent company, Daimler. Around 2006, MBUSA began selling Vehicles with larger Wheels than in previous years. These 17, 18, and 19-inch Wheels have a sportier, flashier look than smaller wheels. They are manufactured for Daimler in numerous countries but all are manufactured to identical specifications using a substantially similar casting

---

[1] Capitalized terms have the same meaning as in Plaintiffs' Corrected Sixth Amended Complaint (Exh. 1). (All Exhibits referred to herein are attached to the Declaration of James E. Cecchi.)

[2] The class excludes MBUSA, its parent, subsidiaries, and affiliated entities, including franchised dealers, and any person who has experienced physical injury as a result of the defects at issue.

[3] The class excludes Mercedes-Benz SUV models, comprising the following classes: G, GL, GLK, M, and R.

process, resulting in a much less durable wheel than forged wheels or wheels made from a different alloy.[4]

**B.    MBUSA's Material Omissions**

MBUSA has been aware since as early as 2006 – shortly after the Wheels were added to the Vehicles – that the Wheels are defective and fail when subjected to ordinary, on-road driving conditions.  Nonetheless, MBUSA failed to disclose the defects to Plaintiffs and the other Class members.[5]

---

[4] *See* Expert Report of Dr. David Duquette (Exh. 2) at 23-25.

[5] *See* accompanying Certifications of Plaintiffs Luppino, Stern, and Spiegel (Exhs. 32-34).

---

[6] The QEC is the Quality Evaluation Center, an MBUSA facility in Florida to which dealers ship all Wheels that were replaced under warranty or goodwill.



Moreover, MBUSA spent millions of dollars to publicly disseminate print advertisements, television commercials, website graphics, press releases, and videos extolling the virtues and strength of the Vehicles, and specifically the Wheels, but failed to disclose the defect or the lack of warranty coverage for the defect. To the contrary, MBUSA actively concealed the true facts. MBUSA directed its promotional literature and advertisements to all Class members and included extensive representations about the quality, strength, and durability of the Wheels, but, remarkably, made no mention of the wheel failures or complaints. For example, MBUSA's 2007 AMG Accessories brochure states that "light-alloy wheels have their origins in the motor racing world" and explains that the materials used in the Wheels are "light, strong and totally reliable."[7] Similarly, MBUSA's 2006 Accessory and Wheel catalog claims:

> [E]very Genuine Mercedes-Benz and AMG wheel is *state-of-the-art*. Each is crafted of a proprietary aluminum alloy formula that *meets our exceedingly high original equipment requirements for strength and durability* with minimal weight….
>
> Besides the material used to manufacture the wheel, and its weight, dimensions such as rim diameter, rim width, offset, backspacing and bolt circle are critical

---

[7] Plaintiff Vincent Luppino's Responses and Objections to Defendant MBUSA's First Interrogatories to Plaintiffs (Exh. 20) ¶7.

factors that must be considered when matching any custom wheel to your vehicle. We have developed each and every one of our wheels to preserve or to optimize the driving characteristics of a specific Mercedes-Benz model. Further, our wheels are subjected to load tests which exceed statutory requirements. Considering the importance and complexity of wheels, it's no wonder that Mercedes-Benz engineers devote so much attention and scrutiny to them.

A wheel only earns the name Genuine Mercedes-Benz when we are convinced that it will meet *our high standards for safety, dependability and performance* – not to mention aesthetics – and make your vehicle even more special. In short, Genuine means premium quality.[8]

## C.    All Of The Vehicles Are Sold With The Same Warranty

As discussed below, MBUSA has a uniform policy of denying warranty coverage when its Wheels fail despite its knowledge that the Wheels are defective, and despite the fact that the Warranty *does not* disclaim the types of damage suffered by many Class members. All of the Vehicles are sold with the same Warranty, which states (Exh. 21 at 00005665):

Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz [passenger car] that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period.

The Warranty further states: "*[MBUSA's] intention is to repair under warranty, without charge to you, anything that goes wrong with your [car] during the warranty period which is our fault.*" (Exh. 21 at 00005669 (emphasis added)). Despite a slew of disclaimers in the Warranty (*id.* at 00005667-68), the Warranty does not disclaim defects in the materials or workmanship of the Wheels; nor does it disclaim damage to the Wheels caused by impact, including impact from road hazards or road conditions such as potholes, uneven pavement, bumps, railroad tracks, or road debris. Clearly, MBUSA is capable of disclaiming precisely this type of damage—the Warranty disclaims road hazard damage for *tires*, *but not for Wheels*. (*Id.* at 00005667).

███████████████████████████████████████████████████████

---

[8] Exh. 20 ¶7.

6

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ MBUSA frequently failed to replace the Wheels within the four year/50,000 mile Warranty period.  (Exh. 21 at 00005665).

### D.     The Wheels Suffer From A Common Defect

Plaintiffs' experts, David Duquette and Robert Russell, who performed in-depth analyses of a representative sample of wheels, have concluded that the Wheels suffer from a uniform design defect:  the alloy used to manufacture *all* the Wheels—A356-T6—cannot handle the loads placed on them.  In addition, the Wheels' design contributes to their inability to survive normal driving.

Russell shows that the Wheels have a uniform defect; specifically, that they are overly susceptible to fail particularly when paired with low-profile tires that leave little cushion between the Wheels and the road.  As a result, the "reduction in clearance between the wheel rim and the road surface requires necessarily stiffer tires, and results in substantially increased vulnerability of the" Wheels.  (Exh. 22 at 8).  According to Russell, the thinner tire "transform[s] normal road irregularities into damaging driving events."  (*Id.* at 22).

Dr. Duquette, a metallurgist, analyzed the metallurgy of the Wheels, including through stereo, reflected light, and electron optical scanning microscopy.  He states that *all* of the Wheels were manufactured using the same process (die casting) and the same alloy (ASTM A356 in T6 heat treatment condition).  (Exh. 2 at 4-5).  According to Dr. Duquette, these Wheels were designated for installation "on virtually every model of Mercedes-Benz passenger vehicles, including the C, E, S, SL, CLK, and CL classes although the preponderance of failed wheels have been associated with the C, E, and S classes."  (*Id.*).

Approximately 30% of the 50 Wheels that Dr. Duquette examined had cracks "visible to

7

the unaided eye." (*Id.* at 5). In particular, he observed radial cracks in wheels that were in good to excellent condition and did not appear to have been abused in any way. (*Id.* at 10). He concludes that radial cracking is observed in virtually all of the wheel configurations and for virtually every model of Mercedes vehicle, and is clearly induced by cyclic deformation (high-cycle fatigue) during normal operation of the Vehicles. "There is no evidence whatsoever that any of the radial cracking that is observed can be attributed to misuse of the vehicles, or to impact or other damage created by either sudden or repetitive extraordinary forces applied to the wheel." (*Id.* at 26). "[T]he cracking that is observed results from the normal loading of the wheels." (*Id.*).

Because the same alloy, manufacturing process, and design geometry is used for all Wheels, all of the Wheels suffer from the same defect. Indeed, Dr. Duquette concludes that "[v]isual cracking is observed in 16", 17", 18", 19", and 20" wheels designated for used on C, E, S, and SL class vehicles." (Exh. 2 at 19). This visual cracking is "independent of wheel design or country of manufacture," and "cracks were observed in wheels manufactured in Austria, Belgium, Germany, and Poland." (*Id.* at 19-20).

## LEGAL ARGUMENT

## I.    THE PROPOSED CLASS SATISFIES THE RULE 23(a) REQUIRMENTS

### A.    The Numerosity Requirement Is Satisfied

Courts generally presume that the numerosity requirement of Rule 23(a)(1) is satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40...." *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001); *see also* 1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 3.05 at 247 (4th ed. 2002). The proposed Class easily meets this threshold. During the Class Period, MBUSA sold or leased approximately 1.6 million Class

Vehicles in the United States.[9]                                                   ████████████████████

████████████████████████████████████████   Of the 1.6 million Class Vehicles sold in the

United States, approximately 155,000 – or nearly 9.5% - were sold in the State of New Jersey.[10]

### B.    The Commonality Requirement Is Satisfied

Rule 23(a)(2) requires only that there be at least one question of law or fact common to

the class, *N.J. Thoroughbred Horsemen's Ass'n, Inc. v. Alpen House U.L.C.*, 2012 WL 893092,

at *2 (D.N.J. Mar. 14, 2012).  This requirement "is easily met…."  *Id*. (quoting *Baby Neal ex rel.*

*Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994)).

Here, there are numerous common issues of fact and law, including (i) whether the

Wheels are uniformly defective so that they fail under normal driving conditions; (ii) whether

MBUSA breached the applicable express and implied warranties; and (iii) whether MBUSA

misrepresented and/or failed to disclose the true quality of the Wheels.  Further, the terms of

MBUSA's written warranty, as well as MBUSA's misrepresentations and omissions, are

substantially identical among Class members.  The legal theories supporting recovery on behalf

of the Class are the same as those supporting recovery of the named Plaintiffs.

### C.    Plaintiffs Satisfy The Typicality Requirement

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

of the claims or defenses of the class."  "The threshold for satisfying the typicality prong is a low

one."  *Barr v. Harrah's Entm't, Inc.*, 242 F.R.D. 287, 292 (D.N.J. 2007) (internal quotations and

---

[9] *See* MBUSA's Second Supplemental Response and Objections to Plaintiffs' First Set of Interrogatories ¶1 (Exh. 23).  Because MBUSA served these discovery responses in December 2012, the numbers through the present have obviously increased.

[10] *See* MBUSA's 2d Supp. Inter. Resp. ¶2 (Exh. 23).  In addition, Plaintiffs issued subpoenas seeking wheels returned to dealers for replacement from vehicles of model years 2006 to the present.  More than 700 wheels were collected from just three MBUSA dealerships in New Jersey pursuant to Plaintiffs' subpoenas.  (*See*, *e.g.*, Exh. 24).

citations omitted), *aff'd*, 335 Fed. Appx. 177 (3d Cir. 2009). "Factual differences will not defeat typicality if the named plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of class members and are based on the same legal theory." *Danvers Motor Co., Inc. v. Ford Motor Co., Inc.*, 543 F.3d 141, 150 (3d Cir. 2008).[11]

The named Plaintiffs' claims are typical of the other Class members' claims. First, the defect alleged by the named Plaintiffs is common to all Wheels on Class members' vehicles. Second, the terms of MBUSA's warranty are substantially identical across all MBUSA models sold throughout the proposed Class Period. Third, MBUSA knew of and concealed the common defect in the Wheels from all Class members. MBUSA's conduct provides the common basis for Plaintiffs' New Jersey Consumer Fraud Act claims. There are no claims or defenses unique to any of the Plaintiffs that would not be equally applicable to any other Class member.[12]

### D.    Plaintiffs Will Adequately Represent The Class

To satisfy the adequacy requirement of Rule 23(a)(4), a representative plaintiff must demonstrate that:  (1) the representative plaintiff's attorneys are qualified, experienced, and

---

[11] "The similarity between claims or defenses of the representative and those of the class does not have to be perfect." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) (citations omitted). "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 58.

[12] While not all named Plaintiffs advance each and every claim advanced on behalf of the Class, this does not defeat typicality. *See In re Schering Plough*, 589 F.3d at 598. Additionally, the fact that each named Plaintiff did not purchase each and every wheel that is the subject of this action does not defeat typicality because the defect uniformly exists in all Wheels; MBUSA's misrepresentations with respect to the wheels were uniform across all of the different types of wheels; and MBUSA's treatment of the wheels under warranty was uniform across all types of wheels. *See Marcus v. BMW of N. Am.,* 687 F.3d 583, 599 (3d Cir. 2012); *see also Leonard v. Sears, Roebuck & Co.*, 2015 WL 4430429, at *7 (N.D. Ill. July 20, 2015) ("[E]ven though plaintiffs may have suffered or noticed mold problems to different degrees, their claims are all based upon the same course of conduct:  the sale of a washer type that is alleged to be unduly prone to the problem.").

generally able to conduct the proposed litigation,[13] and (2) he/she does not have interests antagonistic to those of the class.  *See, e.g., Little-King v. Hayt Hayt & Landau*, 2013 WL 4874349, at *7 (D.N.J. Sept. 10, 2013).  Both of these factors are met here.

Neither Plaintiffs nor their counsel has any interest antagonistic to the other Class members.  Plaintiffs, like each Class member, have a strong interest in proving MBUSA's common course of conduct, establishing its unlawfulness, demonstrating the impact of the unlawful conduct, and obtaining redress.  As Plaintiffs prove their own claims, they will also prove the other Class members' claims.

The proposed Class representatives – Luppino, Stern, and Spiegel – have each demonstrated their commitment to pursue these claims on behalf of the other Class members. They understand the subject matter of the litigation, have devoted time to the case, have met with their counsel on numerous occasions, have complied with their written discovery obligations, and have sat for their depositions.  *See* Luppino Dep. (Exh. 25) at 34-38; Stern Dep. (Exh. 26) at 307; Spiegel Dep. (Exh. 27) at 52-54.  There are no conditions under which the named Plaintiffs would have any different recovery than other Class members.

## II.   THE PROPOSED CLASS SATISFIES THE RULE 23(b) REQUIREMENTS

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Both requirements are met here with respect to the issue of liability.

---

[13] The adequacy of Plaintiffs' counsel is addressed under Rule 23(g), *see infra* Point IV.

A.    **Common Questions Of Law And Fact Concerning Liability Predominate Questions Affecting Only Individual Class Members**

"The predominance requirement of Rule 23(b)(3) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). "The inquiry focuses on whether the efficiencies gained in resolving these common issues together are outweighed by the individual issues presented for adjudication. That common issues must be shown to predominate does not mean that individual issue[s] need be non-existent. All class members need not be identically situated upon all issues, so long as their claims are not in conflict with each other." *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 142 (D.N.J. 2009) (internal citations and quotations omitted).

Under Rule 23(b)(3), to determine whether common issues predominate, the Court must look at "the nature of the evidence" that will be presented so that the court can "formulate some prediction as to how specific issues will play out." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) (internal citations and quotations omitted). Certification is generally appropriate where a defendant engaged in a pattern of uniform activity challenged by the complaint. *Sullivan*, 667 F.3d at 298; *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624-25 (1997) (predominance requirement readily established in cases alleging consumer fraud); *In re Prudential Ins. Co. of Am. Sales Prac. Litig.,* 148 F.3d 283, 314-15 (3d Cir. 1998) (predominance requirement satisfied where class members' claims arise from common scheme by defendant); *see also Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013).

Here, MBUSA's liability will turn on questions that equally apply to the claims of each Class Member; namely, does a uniform defect exist in Mercedes-Benz Wheels; has MBUSA misrepresented or failed to adequately disclose the susceptibility of its Wheels to fail at a high rate; does MBUSA's policy of routinely denying warranty coverage for replacement of failed,

12

defective Wheels constitute a breach of warranty; and does MBUSA's sale of passenger vehicles with the uniform defect in the Wheels breach the implied warranty of merchantability?

> **1.     Because Plaintiffs' Case Is Based On The Existence Of A Design Defect Common To All Of The Vehicles, Individual Issues As To Why Particular Wheels Failed Will Not Predominate**

The Complaint is predicated on the position that the Wheels suffer from a fundamental design defect, affecting all Wheels, that renders them susceptible to failure over time. This design defect is common to all Class members and can be proven by common evidence. If, however, Plaintiffs fail to prove that a design defect exists, this will not give rise to individual questions of why particular Class members' Wheels may have failed, such as whether they hit a pothole, ran over a curb, or whatever. If there is no design defect, the case is over, and individual questions as to each Class member's Wheels will not arise.

> **(a)     A Design Defect Is An Issue Common To All Class Members That Can Be Proven By Common Evidence**

The existence of a design defect is an issue common to all Class members that can be proven by common evidence. *See Marcus*, 687 F.3d at 603 (accepting the District Court's finding that "should a defect exist at all in Bridgestone RFT's that makes them more susceptible to road hazard damage, Marcus will be capable of proving that defect at trial through evidence that is common to the class rather than individual to its members"); *see also Butler*, 727 F.3d at 801-02; *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 854 (6th Cir. 2013); *Terrill v. Electrolux Home Prods.*, 295 F.R.D. 671, 690 (S.D. Ga. 2013); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 534 (C.D. Cal. 2012). All of these design defect cases support certification here.

In a comprehensive opinion issued March 18, 2015 involving Microsoft's Xbox product, the Ninth Circuit held that class certification is appropriate in a case alleging design defects,

13

notwithstanding the defendant's arguments that there were individual issues as to whether the design defect caused the products purchased by particular class members to fail. *See Baker v. Microsoft Corp.*, 785 F.3d 315 (9th Cir. 2015). As the court explained, "although individual factors may affect the timing and extent of the disc scratching, they do not affect whether the Xboxes were sold with a defective disc system." *Id.* at 321. "[P]roof that the allegedly defective disc system caused the individual damages is not necessary to determine whether the existence of the alleged design defect breaches Microsoft's express warranty." *Id.* at 321-22.

Here, Plaintiffs' experts have conducted tests on the Wheels and have issued reports demonstrating how the existence of design defects in the Wheels can be proven through common evidence and concluding that such defects have left all of the Wheels at issue in this litigation susceptible to failure under normal driving conditions. Specifically, Dr. Duquette has concluded that "radial cracking [ ] is observed in virtually all of the wheel configurations and for virtually every model of automobile manufactured by Mercedes-Benz" and that it "is clearly induced by cyclic deformation (high cycle fatigue) during normal operation of the vehicles." (Exh. 2 at 26.) He also observes that this cracking "invariably occurs on the inboard flanges where significant amounts of displacement or deflection (bending) are experienced because the inboard flanges are relatively unsupported compared to the outboard flanges." (*Id.* at 21). Similarly, Mr. Russell concluded: "The radial rim cracking was observed in wheels of various sizes and styles of wheels. It was not limited to a single design or manufacturing source." (Exh. 22 at 6).

Whether or not MBUSA agrees with the conclusions of Plaintiffs' experts is irrelevant. "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (emphasis in original).

"[T]he focus is on whether the defendant's conduct was common to all of the class members, not on whether each plaintiff has a 'colorable' claim." *Sullivan*, 667 F.3d at 299. "[C]ommonality is satisfied where common questions generate common answers 'apt to drive the resolution of the litigation.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). Thus, the issue before the Court is not whether the Wheels are, in fact, defective, but whether the issue of whether the Wheels are defective can be established by common proof. That issue can be proven by evidence common to all Class members and will drive resolution of the case.

### (b) The Case Will Not Present Individual Issues As To The Reasons Why Particular Wheels Failed

Plaintiffs claim that the Wheels have a uniform defect in that they were not designed to stand up to ordinary driving conditions. As the case is premised on the existence of a common defect, it is unnecessary to delve into individual issues as to why particular Wheels may have failed. Indeed, if the jury agrees with Plaintiffs that the Wheels were uniformly defective, there would be no occasion to probe what happened to any particular Wheel. On the other hand, if Plaintiffs fail to prove a design defect, the case is over, and any individual questions as to each Class member's Wheels would be moot.

This precise issue was recently addressed in *Helmer v. Goodyear Tire & Rubber Co.*, 2014 WL 1133299 (D. Colo. Mar. 21, 2014), which involved defective rubber hoses used in home radiant heating systems. In that case, the plaintiffs argued that the hose itself was defectively designed, so that it would inevitably degrade and fail over time. The defendant argued, on the other hand, that any problems with the hose were the result of improper installation, not a problem with the hose itself, and thus, individual issues as to why particular heating systems failed would predominate. Rejecting that argument, the court stated:

> [P]roof of a design defect and causation will be objective. If the plaintiffs cannot prove these elements, the class will lose. The presence of various factors

15

defeating the defect or proof of causation would end the case, not cause individual questions to predominate over common ones.

*Id.* at *7.

Similarly in *Whirlpool*, which involved defective washing machines, Whirlpool argued that there were individual issues because 21 models of washing machines were involved. The Sixth Circuit rejected this argument, noting that the evidence demonstrated that the design of all of the machines were nearly identical. *Whirlpool*, 722 F.3d at 854. Next, Whirlpool argued that the growth of mold in the machines was due to consumers' individual use habits, not any defects in the machine. That contention was also contradicted by the evidence that the mold problem developed regardless of consumers' washing habits and any remedial action they might have taken. *Id.* at 854-55.

Just as in *Helmer* and *Whirlpool*, if the Wheels here are uniformly defective, the Class members would have been damaged because they purchased Vehicles equipped with Wheels that rendered the Vehicles less valuable than they would have been absent the defect. *See Whirlpool*, 722 F.3d at 855-57 (washing machine owners who had not experienced mold problems were properly included within class because they had been damaged by purchasing a less valuable, defective washing machine). Moreover, both Dr. Duquette and Mr. Russell have concluded that the Wheels are unduly susceptible to radial cracking even in the absence of any driver error or misuse. Because this uniform design flaw makes the Wheels susceptible to failure over time, individual issues of causation are irrelevant. Dr. Duquette's observations of fracture surfaces of radial cracks under a scanning electron microscope indisputably demonstrate that the cracks are fatigue cracks, meaning that they initiated as microscopic cracks under normal driving conditions and grew over time. (Duquette Report (Exh. 2) at 19-22). Similarly, Mr. Russell has concluded that "[t]he nearly straight and consistent radial direction of the cracks and lack of evidence of

16

stretching or bending at the fracture indicate fatigue failure." (Russell Report (Exh. 22) at 6). If the jury does not find that the Wheels suffer from a design defect, then Plaintiffs and the other Class members lose, and what other event may have caused the Wheels to fail is irrelevant.[14]

### 2.    Common Questions Of Law And Fact Predominate The Breach Of Express Warranty Claim

Warranty claims are tailor-made for certification because they require only proof of warranty and a breach, such as delivering defective goods. *See Realmuto v. Straub Motors, Inc.*, 65 N.J. 336, 343 (1974). The only proof of the buyer's reliance on the warranty that is necessary is that the seller's statements were of a kind that naturally would induce the purchase. *See Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 239 (D.N.J. 2008).

The facts at bar are even more amenable to certification than was the class that was certified in *Elias*, where plaintiffs had alleged that the defendant sold food products that were marketed as nutritious when, in fact, they were not. *See id.* at 238; *see also In re Cadillac V8-6-4 Class Action*, 93 N.J. 412, 434-35 (1983) (since "the core of the case concerns common issues of fact and law" for the express and implied warranty claims – *i.e.*, "[e]ach of the plaintiffs' claims addresses the existence and nature of the defect in the V8-6-4 engine and GM's knowledge and intent in selling the Cadillacs" – predominance was satisfied).

Claims arising from the breach of standard-form contracts "present the classic case for

---

[14] The fact that some Class members may not have experienced damaged wheels is a reason *in favor* of certifying the Class, not for rejecting certification. As the Seventh Circuit explained in a similar case involving defective washing machines:

> Sears argued that most members of the plaintiff class had not experienced any mold problem. But if so, we pointed out, that was an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate Sears—a course it should welcome, as all class members who did not opt out of the class action would be bound by the judgment.

*Butler*, 727 F.3d at 799.

treatment as a class, and breach of contract cases are routinely certified as such." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 46 (E.D.N.Y. 2008). As in *Dupler*, "[a]ll members of the [proposed breach of warranty] Class are bound by the same [MBUSA warranties]." *Id.*

### 3. Common Questions Of Law And Fact Predominate The Claim For Breach Of The Magnuson-Moss Warranty Act ("MMWA")

The MMWA, 15 U.S.C. § 2310(d), "gives consumers a federal cause of action for breach of an express and implied warranty, allows for the award of damages, costs (including attorneys' fees), and other legal and equitable relied." *Cadillac V8-6-4*, 93 N.J. at 429. As with Plaintiffs' express warranty claims, the MMWA claims involve common questions as to the meaning of the warranty terms and whether MBUSA violated those terms, which will "predominate over any individual questions that may present themselves with regard to the breach of contract class claims." *Id.* In addition, as discussed above, MBUSA instituted a uniform policy of refusing to honor warranty claims for Wheel failures even though the Warranty did not disclaim damage to Wheels caused even by road hazards, as it explicitly did with respect to tires.

### 4. Common Questions Of Law And Fact Predominate Plaintiffs' Claim For Breach Of The Implied Warranty Of Merchantability

"New Jersey law provides that merchantable goods must be fit for the ordinary purposes for which such goods are used." *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 612 (D.N.J. 2013) (citing N.J.S.A. 12A:2-314). Along with the implied warranty of fitness for a particular purpose, "[t]hese two warranties 'protect buyers from loss where goods purchased are below commercial standards or are unfit for the buyer's purpose." *Id.* (quoting *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992)). To establish a breach of the implied warranty of merchantability, a plaintiff must demonstrate "the product's functionality" and "that the equipment they purchased from [the] defendant was defective." *Altronics*, 957 F.2d at 1105.

Pursuant to UCC 2-314, which New Jersey has adopted, *see In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2008 WL 4126264, at \*19 (D.N.J. Sept. 2, 2008), to state a claim for breach of the implied warranty of merchantability, a plaintiff must allege "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of sale, (3) injury and damages to the plaintiff or its property, (4) which were was [sic] caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of injury." *Id.* (citing 1 James J. White & Robert S. Summers, UNIFORM COMMERCIAL CODE § 9-7, at 510-11 (4th ed. 1995)).

In *Cadillac*, the New Jersey Supreme Court affirmed class certification, describing how common evidence as to "proof of engine failure" could be used to establish liability for a breach of the implied warranty of merchantability. *Cadillac V8-6-4*, 93 N.J. at 426-27. The Court noted that "[f]or the purpose of certifying this class action, we need not assume from mere proof of the failure of some either that all V8-6-4 engines have failed or that those that have failed have done so for the same reason…. Even if the class members cannot prove a specific defect, their common complaints (*e.g.*, stalling, engine hesitation, failure, and surge) might sustain a class for breach of implied warranty if the complaints correspond to the anticipated engine 'characteristics' described in the Dealer Service Information Bulletin." *Id.* at 427-28.

Similarly, in *Terrill*, the Court granted class certification in a case alleging a common design defect in washing machines. *Terrill*, 295 F.R.D. at 690-91. The court held plaintiffs' implied warranty of merchantability claim suitable for class treatment, stating that "[c]ommon issues exist with respect to whether the Washing Machines had a design defect, whether that design defect rendered the Washing Machines unmerchantable, whether the alleged latent defect necessarily breached Defendant's implied warranty of merchantability during the warranty period, and whether the defect reduced the value of the Washing Machines." *Id.* As here,

"Plaintiffs assert that every Washing Machine was defectively designed and that the inherent defect rendered the machines unmerchantable…." *Id.* at 691.

Here, as discussed above, every Wheel is unduly susceptible to fail due to a uniform defect and is, therefore, unmerchantable. With respect to the radial cracking that Dr. Duquette and Mr. Russell describe, "[w]hen the crack length exceeds the width of the bead seat of the tire the crack is essentially a free path for air to escape from the interior of the tire/rim." (Duquette Report (Exh. 2) at 15). At that point, the Wheel becomes unusable (because the tire paired with that Wheel will no longer hold air).

### 5. Common Questions Of Law And Fact Predominate Plaintiffs' Claim Pursuant To The New Jersey Consumer Fraud Act ("NJCFA")

Common issues predominate over any individual issues that might exist in proving Plaintiffs' claims under the NJCFA, N.J.S.A. § 56:8-1, *et seq.*, which has been heralded as "one of the strongest consumer protection laws in the nation." *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 15 (1994) (internal quotations and citations omitted). It is to be "construed liberally in favor of consumers." *Cox,* 138 N.J. at 15. It is well-settled that where a NJCFA plaintiff establishes a knowing omission of material information common to the class, a presumption or inference of reliance and causation arises and can be invoked to satisfy the requisite proof of causation necessary to establish the NJCFA claim on a classwide basis. *See Varacallo v. Mass. Mut. Life Ins. Co.,* 332 N.J. Super. 31, 50 (App. Div. 2000) (finding presumption of causation applicable to NJCFA class action claim where defendant "concealed, suppressed or omitted a material fact knowingly and with intent that others rely on the omission");[15] *see also Strzakowlski v. General Motors Corp.,* 2005 WL 2001912, at *10 (D.N.J. Aug. 16, 2005) (denying dismissal of a putative

---

[15] While the *Varacallo* presumption of causation is rebuttable, "it is the burden of defendant to come forward with sufficient evidence to do so*." Varacallo,* 332 N.J. Super. at 50.

consumer class action, citing *Varacallo* and stating "[w]here there is nondisclosure of material fact, courts permit inferences or presumptions of inducement and reliance."). *Strzakowlski* squarely rejected defendant's causation arguments, holding that "if Plaintiff can establish for the factfinder that GM engaged in unlawful conduct under the CFA, she would be entitled to a presumption of causation as to the proposed class." *Id.* Here, the Certifications of the proposed Class Representatives[16] make clear the materiality of MBUSA's omissions, which fully justifies the invocation of the Varacallo presumption. Under the NJCFA, a practice can be unlawful even if the merchant acts in good faith and no one has "in fact been misled, deceived or damaged thereby." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607-08 (1997); *see also Cox*, 138 N.J. at 16. Thus, the NJCFA "does not require proof that a consumer has actually relied on a prohibited act in order to recover." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 391 (2007). The deception need not be the sole cause of the loss for relief to be granted. *Id*. at 48.[17]

Here, MBUSA's own documents, and the deposition testimony of its employees, will be used to establish that MBUSA knew but failed to disclose that its Wheels were overly susceptible to failure under ordinary driving conditions, and that when the Wheels failed due to that design defect, MBUSA would not cover the cost of replacing the Wheels under the

---

[16] *See* Certifications of Plaintiffs Luppino, Stern, and Spiegel (Exhs. 32-34).

[17] The NJCFA applies to claims of all Class members regardless of their state of residence, so differences in state consumer protection law will not defeat predominance. *See In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009), which certified a nationwide class of automobile purchasers. Rejecting MBUSA's argument that the consumer protection laws of each class members' home state would apply, the court found that under New Jersey's choice-of-law principles, which this Court sitting in diversity must apply (*see Pac. Emplrs. Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012)), the NJCFA would apply to all class members' claims, regardless of their state of residence, because New Jersey, as the state where MBUSA is headquartered and where MBUSA's misconduct primarily occurred, had the "most significant relationship" to all class members' claims. 257 F.R.D. at 64-69.

Warranty.  Moreover, each of the named Plaintiffs has stated that if he had known these facts, he either would not have bought or leased, or he would have insisted on paying less.  Because there is a presumption of reliance and causation, none of the elements of Class members' NJCFA claim will require the fact-finder to adjudicate individual questions with respect to liability.

To the extent MBUSA were to argue that this case involves misrepresentations rather than omissions, certification remains appropriate because liability under the NJCFA does not depend on proving reliance.[18]  Rather, a violation is complete if an unconscionable practice is proved; a deceptive or fraudulent act need not also be shown.  *State v. Hudson Furniture Co.*, 165 N.J. Super. 516, 520 (App. Div. 1979).[19]

Moreover, while the Court of Appeals has indicated that a presumption of causation respecting a claim under the NJCFA may be inapplicable if the fraud was known or knowable by class members, *Marcus*, 687 F.3d at 610, there is no such problem here.  As set forth in the report of Plaintiffs' consumer behavior expert, Dr. Jacob Jacoby,[20] purchasers of MBUSA vehicles are not likely to search for information concerning whether Mercedes wheels are defective.  As he explained, because the Mercedes brand has a reputation for quality, consumers interested in buying a Mercedes car would have little reason to conduct such a search.  (Jacoby report ¶¶ 12-20).  Furthermore, consumers of Mercedes cars tend to be affluent and less likely to

---

[18] *See, e.g., Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. at 248 (noting that "plaintiffs need not prove intent to defraud, or that the plaintiff detrimentally relied on the representations.); *Dal Ponte v. Am. Mortg. Exp. Corp.*, 2006 WL 2403982, at *8 (D.N.J. Aug. 17, 2006) (discussing the NJCFA and stating that the "one individual issue causing great problems for certification proponents in cases based upon misrepresentation is not present here – reliance.").

[19] "Unconscionable" is to be interpreted liberally in order to effectuate the public purpose of the Consumer Fraud Act.  *Assocs. Home Equity Servs. Inc. v. Troup*, 343 N.J. Super. 254, 278 (App. Div. 2001).  The standard of conduct contemplated by the unconscionability clause of the Consumer Fraud Act is the failure to observe "good faith, honesty in fact and observance of fair dealing."  *Id.* (internal quotations and citation omitted).

[20] The Jacoby report is Cecchi Dec. Exh. 35.

invest the time and effort to do exhaustive research concerning a car. (*Id.* ¶ 21). In addition, most consumers would never even imagine that wheels might be subject to cracking. In the absence of some indication that there might be a problem with the Mercedes wheels, it would never occur to them to search for information about potentially defective wheels. (*Id.* ¶ 22).

Even if consumers sought information about Mercedes cars, they likely would not have found anything disclosing potential defects in the rims. Dr. Jacoby observes that if they looked at information provided by Mercedes, they would not have been informed that the wheels were defective. (*Id.* ¶¶ 39-46). Indeed, since MBUSA denies that there is a design defect causing the wheels to be unduly susceptible to failure in normal driving conditions, how could any of MBUSA's disclosures to consumers have disclosed such a defect? Dr. Jacoby observes that the visits by MBUSA's marketing expert, Dr. Larry Chiagouris, to MBUSA showrooms did not demonstrate that consumers would have received information about a design defect from MBUSA salespeople. (*Id.* ¶¶ 41-42). Dr. Chiagouris admitted this at his deposition:

> Q. To your knowledge, did any of the Mercedes-Benz written materials provided to consumers say that the wheels on the Mercedes cars, that are involved in this case, suffer from a design defect making them unduly susceptible to damage in normal driving conditions?
>
> \*     \*     \*     \*
>
> A. I don't recall any literature from Mercedes-Benz indicating to consumers that their product suffers from a design defect.
>
> \*     \*     \*     \*
>
> Q. And is it fair to say that when you were discussing the wheels and the language in the sticker, that none of the salespersons said that the wheels suffer from a design defect making them susceptible to damage even if they don't hit road hazards or potholes?
>
> A. No salesperson told me that.
>
> \*     \*     \*     \*
>
> Q. As far as you know, did Mercedes-Benz make any disclosures to auto purchasers that the Mercedes wheels at issue in this case are unduly susceptible to failure in normal driving conditions without hitting any

> potholes, curbs, rough patches and the like?
>
> A.     No.

(Chiagouris Tr. (Exh. 36) at 58, 80, 109-10; *see also id*. at 64, 66-67, 71-72).

If some consumers looked at other sources, Dr. Jacoby explains that they would likely not have come across anything disclosing the design defect. Unless they had been somehow alerted to the possibility that the rims were defective, the normal searches consumers would perform would not have revealed anything about defective rims. (Jacoby Report ¶¶ 48-51).

## B.     A Class Action Is A Superior Method For Litigating Plaintiffs' Design Defect Claims Rather Than Individual Actions

Determining whether a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy" generally involves consideration of: "(1) the interest of individual members of the class in controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management difficulties likely to be encountered in pursuing the class action." *Danvers*, 543 F.3d at 149. These factors counsel in favor of class certification here.

### 1.     The Interest Of Individual Class Members In Controlling The Litigation

There is nothing to suggest Class members have a strong interest in controlling their own lawsuits relating to the Wheels. Such lawsuits are difficult and expensive, particularly since they involve extensive and expensive expert analysis. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) ("[I]ndividual consumer class members have little interest in 'individually controlling the prosecution or defense of separate actions,' because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit" (internal citations omitted)). Having numerous lawsuits concerning the same legal and factual issues is not the best use of judicial or the parties' resources, especially in light of the uniformity and commonality of

the key factual and legal issues.

**2.      The Extent Of Any Litigation Already Commenced By The Class**

Plaintiffs are not aware of any similar pending individual or class litigation, which indicates a lack of interest in individually prosecuting claims. *Warfarin*, 391 F.3d at 534.

**3.      The Desirability Of Concentrating The Litigation In A Single Forum**

As noted above, the key factual and legal issues are uniform and common to all Class members, and turn on a common nucleus of operative facts and common legal theories. Plaintiffs and some Class members reside in New Jersey, and MBUSA advertised, distributed, warranted, and sold the automobiles equipped with defective wheels here. New Jersey is the central locus of facts giving rise to the claims of all Class members, and it is thus beneficial to concentrate the litigation in this Court. *See id*. (concentrating litigation where defendant has principal place of business is appropriate and supports superiority finding). Furthermore, this Court has the expertise necessary to resolve the claims and can be presumed to be more familiar with the controlling law, the law of the state of New Jersey, than a court in another jurisdiction.

**4.      The Proposed Class Is Manageable**

The factual and legal issues arise from a common nucleus of operative facts and common legal theories, such that proof as to one is proof as to all. The central issue at trial will be the existence of the uniform defect of the Wheels identified by Dr. Duquette and Mr. Russell. Additionally, if the jury determines that the Wheels are uniformly defective, it would then need to determine whether MBUSA breached its express or implied warranties to the Class members, and/or violated the NJCFA. All of these issues could be tried simultaneously, as much of the evidence relevant to each of these issues is likely to overlap. If the jury finds in favor of the Class, individual damages could be determined through a claims administration process relying on information from MBUSA's sales and leasing records, as well as information on vehicle

registration maintained by each state's motor vehicle department. Because proof of membership in the Class can be determined from MBUSA's computerized records and automobile registration information, all claims focus on Defendant's conduct, and there are no individualized claims that could create conflicts, the case is manageable. *See Dal Ponte,* 2006 WL 2403982, at *9 (finding no undue manageability difficulties where claims were based on common allegations and all class members would be identifiable from the defendant's records).

### 5. The Proposed Class Is Readily Ascertainable

The Class definition and whether the Class is ascertainable are closely related issues under Rule 23(c)(1)(B). On April 16, 2015, the Third Circuit issued its decision in *Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015), providing a comprehensive analysis of the parameters of the ascertainability requirement. The opinion provides powerful support for Plaintiffs' position that the ascertainability requirement is satisfied here.

As the Court of Appeals explained in *Byrd*, a class must be "defined with reference to objective criteria" and there must be "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* at 163. "The ascertainability requirement consists of nothing more than these two inquiries. And it does not mean that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that "class members *can* be identified." *Id.* (emphasis in original).

The ascertainability requirement serves the dual purpose of identifying class members after certification and helping prepare the District Court to direct notice to the Class. *Byrd*, 784 F.3d at 165. "The ascertainability inquiry is narrow. If defendants intend to challenge ascertainability, they must be exacting in their analysis and not infuse the ascertainability inquiry with other class-certification requirements. As we said in *Carrera,* 'ascertainability only requires the plaintiff to show that class members can be identified.' " *Id.*

26

As discussed above, everyone who purchased or leased a new Mercedes-Benz passenger vehicle, or purchased a used vehicle, from model year 2006 through the present, is a Class member. *Byrd* made clear that "there is no records requirement," *i.e.*, the plaintiff need not point to specific records identifying class members. *Id*. at 164. Nevertheless, information about each Class Member's vehicles can be determined through MBUSA's vehicle sales records[21], as well as each state's motor vehicle registration data. Courts routinely find that ascertainability is satisfied in class actions involving automobiles. *See*, *e.g.*, *Brandon Banks v. Nissan North Am., Inc.*, 2013 WL 6700299, at *7 (N.D. Cal. Dec. 19, 2013); *Keegan*, 284 F.R.D. at 551-52; *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Prac. & Prod Liab. Litig.*, 2012 WL 7802852, at *1 n.4 (C.D. Cal. Dec. 28, 2012).

## III.   ISSUE CERTIFICATION IS APPROPRIATE UNDER RULE 23(c)(4)

Fed. R. Civ. P. 23(c)(4) provides that "[w]hen appropriate, an action may be brought or

---

21 ████████████████████████████████████████

Luppino leased a 2007 CLS63. ████████████████ The brochure for each model and year contains specifications for the wheels that were standard on that vehicle. A 2007 CLS63, like Luppino's, came standard with 19" wheels. (Exh. 38 at 00000147). Thus, MBUSA's own documents can be used to show the type of wheel that each Vehicle in the class would have as standard equipment. The vast majority of vehicles were sold with the wheels that came on them from the factory. Further, unlike *Marcus*, where the run-flat tires on BMWs came from a variety of manufacturers, *see Marcus*, 687 F.3d at 595, there is only one brand of wheels involved here, Mercedes-Benz wheels. MBUSA's scenarios raising the possibility for vehicles to be sold with different wheels is no more substantive than worrying about boogie men under the bed. It is not an "exacting analysis" required by *Byrd*, since MBUSA knows or could find out from its dealers what percentage of vehicles are sold with wheels other than those that came from the manufacturer. Furthermore, even if there might be people within the class definition who do not have a claim against MBUSA, *Byrd* held that overbreadth is not part of the ascertainability analysis. 784 F.3d at 168; *see also Neale v. Volvo Cars of N. Am., LLC,* 2015 WL 4466919, at *10 (3d Cir. July 22, 2105) ("'[A] class will often include persons who have not been injured by the defendant's conduct'") (quoting *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)).

maintained as a class action with respect to particular issues." Both *Butler* and *Whirlpool* were issue certification classes as to liability, *i.e.*, whether the washing machines in question were defective. *See Butler*, 727 F.3d at 800; *Whirlpool*, 722 F.3d at 860. Here, it would be appropriate to certify, pursuant to Rule 23(c)(4), that this action may be maintained as a class action with respect to the issue of MBUSA's liability arising out of, and caused by, the Wheels.

*Gates v. Rohm & Haas Co.*, 655 F.3d 255, 272 (3d Cir. 2011), set forth various factors a court should consider when deciding whether to certify an issue class:

> [T]he type of claim(s) and issue(s) in question; the overall complexity of the case; the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives; the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy; the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues; the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

These factors weigh heavily in favor of certification with respect to liability in this case. Resolution of the issue of whether the Wheels were defective would materially advance the litigation, since common proof can resolve that issue "in one stroke" for all Class members. *See Dukes*, 131 S. Ct. at 2551. If the jury finds that the Wheels were defective, then issues as to an appropriate remedy can be resolved either by settlement, or by way of a special master process, or otherwise as the Court would direct.[22] *Butler*, 727 F.3d at 801 ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily

---

[22] Of course, if the Wheels are not defective, that is the end of the case.

determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification."); *see also Whirlpool,* 722 F.3d at 861; *Allapattah Servs., Inc. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1324-26 (S.D. Fla. 2001) (appointing special master to administer $1 billion damage award).   That remedy could be reimbursement for out-of-pocket costs involved in replacing Wheels for Class members whose Wheels have failed, and warranty coverage on a going-forward basis for all Class members, including those who have, thus far, had no problems with their Wheels.   With respect to both, the Court could appoint a Magistrate Judge or Special Master to preside over individual damages proceedings.   *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (listing a number of ways to proceed following a finding of liability in favor of a 23(c)(4) liability class, including "appointing a magistrate judge or special master to preside over individual damages proceedings"), *quoted in Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).   Because individualized damages proceedings would only take place following a finding of liability in the Class's favor, they could be quickly adjudicated, and would involve limited evidence in the form of Wheel purchase records maintained by MBUSA, its authorized dealers, or third-party wheel vendors.   With a liability issue-only class, it would be unnecessary to develop a class-wide damages theory under *Comcast v. Behrend,* 133 S. Ct. 1426 (2013), because damages would not be decided on a class-wide basis.   *See Butler*, 727 F.3d at 799-802; *Whirlpool*, 722 F.3d at 859-861.   Similarly, if the Court grants the Class equitable relief requiring MBUSA to honor Warranty claims for failed Wheels, a Special Master could be appointed to oversee appropriate individualized claims proceedings.   *See Pella Corp. v. Saltzman*, 606 F.3d 391, 392 (7th Cir. 2010) ("any [warranty]

29

coverage disputes [could be] adjudicated by a Special Master").[23]

## IV.    PROPOSED CLASS COUNSEL SATISFY RULE 23(g)

Rule 23(g) requires a court to appoint class counsel when it certifies a class. Class counsel must "fairly and adequately represent the interests of the class." Factors to be considered include "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); *Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 175-76 (D.N.J. 2008). A court may appoint several firms to act as co-lead counsel. *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig*, 240 F.R.D. 56, 58-59 (E.D.N.Y. 2006); *Nowak v. Ford Motor Co*., 240 F.R.D. 355 (E.D. Mich. 2006); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 2007 WL 4150666, at *22-23 (M.D. Pa. Nov. 19, 2007).

As set forth in their firm resumes (Exhs. 28-31), Proposed Class Counsel – Carella, Byrne, Cecchi, Olstein, Brody & Angello; Grant & Eisenhofer P.A.; Gardy & Notis, LLP; and Faruqi & Faruqi, LLP – have extensive experience in prosecuting class actions involving complex product defects and consumer fraud claims such as those at issue in this case. Proposed Class Counsel's proven track record demonstrates their ability to prosecute this class action with vigor. *See New Directions Treatment Serv. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007). Accordingly, the Court should appoint Proposed Class Counsel as co-lead class counsel.

---

[23] Ultimately in *Pella*, the District Court approved a settlement, but the Seventh Circuit reversed on grounds not relevant here. *See Eubank v. Pella Corp*., 753 F.3d 718 (7th Cir. 2014).

Dated: July 30, 2015

Respectfully submitted,

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO**

By: ___*/s/ James E. Cecchi*___
James E. Cecchi
Lindsey H. Taylor
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

James J. Sabella
Adam Levitt
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, New York  10017
(646) 722-8500

Mark C. Gardy
James S. Notis
James H. Gianninoto
**GARDY & NOTIS, LLP**
560 Sylvan Avenue
Englewood Cliffs, New Jersey  07632
(201) 567-7377

Antonio Vozzolo
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Floor
New York, New York  10016
(212) 983-9330

Douglas R. Hirsch
**SADIS & GOLDBERG LLP**
551 Fifth Avenue, 21st Floor
New York, New York  10176
(212) 573-6660

Steven N. Berk
**BERK LAW PLLC**
1225 15th Street, NW
Washington, D.C.  20005
(202) 232-7550

*Attorneys for Plaintiffs*

31