**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VINCENT LUPPINO, CLIFF STERN and NOEL J. SPIEGEL, individually and on behalf of all others similarly situated, | Civ. No. 09-cv-5582 (JLL-JAD) |
| Plaintiffs, | ***Document electronically filed.*** |
| v. | Return Date:  TBD (Per Dkt. 244) |
| MERCEDES-BENZ USA, LLC, | |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

---

**MERCEDES-BENZ USA, LLC'S OPPOSITION
TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**

---

Michael R. McDonald, Esq.
Jennifer Marino Thibodaux, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey  07102
Telephone:  (973) 596-4827
Facsimile:  (973) 639-6295

Troy M. Yoshino, Esq.
Eric J. Knapp, Esq.
**CARROLL, BURDICK &
MCDONOUGH LLP**
44 Montgomery Street, Suite 400
San Francisco, CA  94104-4606
Telephone:  (415) 989-5900
Facsimile:  (415) 989-0932

*Attorneys for Defendant
Mercedes-Benz USA, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

MBUSA'S COUNTER-STATEMENT OF FACTS ........................................... 3

    A.    PLAINTIFFS' OWN EXPERTS ADMIT THERE ARE SIGNIFICANT DIFFERENCES IN THE WHEELS AND "SYSTEMS" AT ISSUE HERE .......... 3

    B.    THERE IS NO EVIDENCE OF A DEFECT, MUCH LESS ONE COMMON TO THE INNUMERABLE, DIFFERENT "SYSTEMS" AT ISSUE ...................................................................................................... 3

    C.    CAUSATION AND OTHER INDIVIDUALIZED ISSUES RENDER CLASS TREATMENT IMPROPER........................................................... 5

    D.    PUTATIVE CLASS MEMBERS ARE WELL INFORMED ABOUT THE TRADE-OFFS THE WHEELS OFFER—PLAINTIFFS ADMIT AS MUCH ................................................................................................. 6

ARGUMENT........................................................................................................ 6

II.    "SERIOUS ASCERTAINABILITY ISSUES" EXIST HERE, AS THEY DID IN *MARCUS*............................................................................................................ 7

III.    PLAINTIFFS HAVE NOT PROVEN PREDOMINANCE OR COMMONALITY .......... 9

    A.    THE PUTATIVE CLASS CLAIMS DO NOT REST ON THE "SAME GROUNDS," AS THEY DO NOT INVOLVE WHEELS OR SYSTEMS WITH THE SAME CHARACTERISTICS.......................................... 11

        1.    THE METALLURGY ATTACKED BY PLAINTIFFS IS NOT COMMON TO ALL WHEELS ...................................................... 12

        2.    THE WHEELS ARE NOT "COMMON"; THERE ARE MORE THAN ▮ DIFFERENT DESIGNS WITH CRITICAL DIFFERENCES IN THE CHARACTERISTICS PLAINTIFFS ATTACK ........................................................................................ 12

        3.    PLAINTIFFS' EXPERTS ADMIT OTHER ASPECTS OF THE SYSTEMS ARE IMPORTANT (*E.G.*, SUSPENSIONS, VEHICLE WEIGHTS, WHEEL/TIRE COMBINATIONS), BUT THEY ALSO VARY, SO COMMONALITY AND PREDOMINANCE ARE NOT MET ......................................... 15

        4.    PLAINTIFFS' EXPERTS ADMIT THAT VARIABLE TIRES AND TIRE PRESSURE INFLUENCE PERFORMANCE IN WAYS THAT ARE NOT "COMMON" OR "PREDOMINANT" .......... 16

    B.    PLAINTIFFS HAVE NO PROOF OF A CLASSWIDE DEFECT EITHER ............................................................................................. 17

    C.    PLAINTIFFS CANNOT PROVE THEIR ALLEGED INJURY ON A COMMON, CLASSWIDE BASIS.......................................................... 19

i

# TABLE OF CONTENTS

**Page**

D.   THE WARRANTY CLAIMS IN THIS CASE CANNOT BE CERTIFIED ........22

    1.   CAUSATION ISSUES PRECLUDE CERTIFICATION AS THEY DID IN *MARCUS* ................................................................22

    2.   MANY OTHER INDIVIDUALIZED ISSUES ALSO PRECLUDE CERTIFICATION ........................................................................24

    3.   THE IMPLIED WARRANTY CLAIM CANNOT BE CERTIFIED BECAUSE MANY HAVE DRIVEN THEIR VEHICLES FOR THOUSANDS OF MILES WITHOUT INCIDENT ...............................................................................26

    4.   THE NEED TO APPLY THE WARRANTY LAWS OF EVERY STATE ALSO DEFEATS PREDOMINANCE, MANAGEABILITY, AND SUPERIORITY ............................26

E.   PLAINTIFF'S NJCFA CLAIM ALSO FAILS TO MEET PREDOMINANCE AND COMMONALITY .................................27

    1.   PLAINTIFFS CANNOT PROVE UNLAWFUL CONDUCT WITH COMMON PROOF ........................................................27

    2.   INDIVIDUAL CAUSATION ISSUES ALSO PRECLUDE CERTIFICATION ........................................................................29

        A.   PLAINTIFFS' ADMISSIONS AND OTHER EVIDENCE SHOW THAT THE ALLEGEDLY CONCEALED INFORMATION WAS "KNOWABLE" .....................................30

        B.   A PRESUMPTION OF CAUSATION ALSO IS IMPROPER UNDER *MARCUS* BECAUSE PUTATIVE CLASS MEMBERS DID *NOT* REACT UNIFORMLY TO INFORMATION ABOUT THE WHEELS' DURABILITY ........32

    3.   PLAINTIFFS' NJCFA CLAIM CANNOT BE CERTIFIED ON A NATIONWIDE BASIS ...........................................................34

IV.   INDIVIDUALIZED CAUSATION AND INJURY MAKE ISSUE CERTIFICATION IMPROPER ...................................................34

V.   PLAINTIFFS DO NOT MEET TYPICALITY OR ADEQUACY REQUIREMENTS ...........................................................................37

VI.   PLAINTIFFS FAIL TO PROVE MANAGEABILITY OR SUPERIORITY ..................39

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aberdeen v. Toyota Motor Sales, U.S.A., Inc.,*
    422 F. App'x 617 (9th Cir. 2011) ..................................................................39

*Abu Dhabi Comm. Bank v. Morgan Stanley,*
    269 F.R.D. 252 (S.D.N.Y. 2010) ..................................................................36

*Alban v. BMW of N. Am.,*
    2011 WL 900114 (D.N.J. Mar. 15, 2011) ....................................................28

*American Express Co. v. Italian Colors Restaurant,*
    133 S. Ct. 2304 (2013) ..................................................................................7

*Avritt v. Reliastar Life Ins. Co.,*
    615 F.3d 1023 (8th Cir. 2010) ......................................................................29

*Baker v. Microsoft Corp.,*
    2015 WL 4393964 (9th Cir. July 20, 2015) ................................................21

*Beck v. Maximus, Inc.,*
    457 F.3d 291 (3d Cir. 2006) ........................................................................37

*Bello v. Beam Global Spirits & Wine, Inc.,*
    2015 WL 3613723 (D.N.J. June 9, 2015) ....................................................8

*Berger v. Home Depot USA, Inc.,*
    741 F.3d 1061 (9th Cir. 2014) ......................................................................29

*Butler v. Sears, Roebuck & Co.,*
    702 F.3d 359 (7th Cir. 2012) ........................................................................36

*Byrd v. Aaron's Inc.,*
    787 F.3d 154 (3d Cir. 2015) ........................................................................8

*Califano v. Yamasaki,*
    442 U.S. 682 (1989) ....................................................................................11

*Cancino v. Yamaha,*
    2010 WL 2607251 (S.D. Ohio June 24, 2010) ............................................21

*Carrera v. Bayer Corp.,*
    727 F.3d 300 (3d Cir. 2013) ..........................................................7, 9, 18, 33

*CE Design Ltd. v. King Architectural Metals, Inc.,*
    637 F.3d 721 (7th Cir. 2011) ........................................................................38

i

# TABLE OF AUTHORITIES

**Page**

*Certified Eng'g Copier Sys. v. Nat'l City Comm. Capital Co.,*
    2009 WL 1324047 (D. Utah May 11, 2009)..................................................................14

*Chan v. Daimler AG,*
    2012 WL 5827448 (D.N.J. Nov. 9, 2012) ......................................................19, 20, 33, 35

*Chin v. Chrysler Corp.,*
    182 F.R.D. 448 (D.N.J. 1998) ........................................................................................17, 23

*Cholakyan v. MBUSA,*
    281 F.R.D. 534 (C.D. Cal. 2012)...........................................................................................16

*Chow v. Neutrogena Corp.,*
    2013 U.S. Dist. LEXIS 17670 (C.D. Cal. Jan. 22, 2013)...................................................34

*City of St. Petersburg v. Total Containment, Inc.,*
    265 F.R.D. 630 (S.D. Fla. 2010)...........................................................................10, 25, 35

*Colapinto v. Esquire Depo. Servs.,*
    2011 WL 913251 (C.D. Cal. Mar. 8, 2011) ........................................................................26

*Comcast v. Behrend,*
    133 S. Ct. 1426 (2013)...........................................................................................................7, 10

*Coyle v. Hornell Brewing Co.,*
    2011 WL 2147218 (D.N.J. May 26, 2011)..........................................................................38

*Daniel v. Ford Motor Co.,*
    2013 WL 3146810 (E.D. Cal. June 18, 2013)...................................................23, 25, 26

*Demmick v. Cellco P'ship,*
    2010 U.S. Dist. LEXIS 94041 (D.N.J. Sept. 8, 2010) .......................................................30

*Eisen v. Porsche Cars of N. Am., Inc.,*
    2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ......................................................................21

*Farmer v. DirectSat, LLC,*
    2013 WL 1195651 (N.D. Ill. Mar. 22, 2013).....................................................................14

*Feldman v. MBUSA,*
    2012 WL 6596830 (D.N.J. Dec. 18, 2012)........................................................................27

*Ford E-350 Van,*
    2012 U.S. Dist. LEXIS 13887 (D.N.J. Feb. 6, 2012).........................................................27

*Franco v. Conn. Gen. Life Ins. Co.,*
    289 F.R.D. 121 (D.N.J. 2013)...............................................................................................39

*Freid v. Nat'l Action Fin. Servs., Inc.,*
    2011 WL 1547257 (D.N.J. Apr. 20, 2011) ........................................................................37

# TABLE OF AUTHORITIES

**Page**

*Gartin v. S&M Nutec,*
   245 F.R.D. 429 (C.D. Cal. 2007) ..................................................................30

*Gates v. Rohm and Haas Co.,*
   655 F.3d 255 (3d Cir. 2011) ...............................................................34, 35, 36

*Glass v. BMW of N. Am.,*
   2011 WL 6887721 (D.N.J. Dec. 29, 2011) ...................................................18

*Gotthelf v. Toyota,*
   525 Fed. Appx. 94 (3d Cir. 2013) .................................................................35

*Grandalski v. Quest Diags., Inc.,*
   767 F.3d 175 (3d Cir. 2014) .........................................................10, 23, 34

*Gray v. Bayer Corp.,*
   2011 U.S. Dist. LEXIS 79498 (D.N.J. July 21, 2011) .................................34

*Green v. Green Mtn. Coffee Roasters, Inc.,*
   279 F.R.D. 275  (D.N.J. 2011) ...............................................................26, 38

*Heisler v. Maxtor Corp.,*
   2011 WL 1496114 (N.D. Cal. Apr. 20, 2011) ..............................................14

*Helmer v. Goodyear Tire & Rubber Co.,*
   2014 WL 1133299 (D. Colo. Mar. 21, 2014) ...............................................22

*Hemy v. Purdue Farms, Inc.,*
   2011 WL 6002463 (D.N.J. Nov. 30, 2011) .............................................20, 38

*Herskowitz v. Apple, Inc.,*
   2014 WL 3919900 (N.D. Cal. Aug. 7, 2014) ................................................33

*Hohider v. United Parcel Serv., Inc.,*
   574 F.3d 169 (3d Cir. 2009) ..........................................................................40

*In re Bridgestone/Firestone Prods. Liab. Litig.,*
   288 F.3d 1012 (7th Cir. 2002) ...............................................................16, 19, 21

*In re ConAgra Foods,*
   302 F.R.D. 537 (C.D. Cal. 2014) ..................................................................35

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.,*
   2010 WL 2813788 (D.N.J. July 9, 2010) ......................................................20

*In re Hitachi TV Optical Block Cases,*
   2011 WL 4499036 (S.D. Cal. 27, 2011) .......................................................16

*In re Hydrogen Peroxide Antitrust Litig.,*
   552 F.3d 305 (3d Cir. 2008) ......................................................................7, 39

iii

# TABLE OF AUTHORITIES

**Page**

*In re Mercedes-Benz Tele Aid Contract Litig.*,
  257 F.R.D. 46 (D.N.J. 2009) ...................................................................34

*In re Nissan Radiator/Transmission Cooler Litig.*,
  2013 WL 4080946 (S.D.N.Y. May 30, 2013).......................................21

*In re OnStar Contract Litig.*,
  278 F.R.D. (E.D. Mich. 2011) .............................................................25

*In re Paulsboro Derailment Cases*,
  2014 WL 4162790 (D.N.J. Aug. 20, 2014).........................................36

*In re Sch. Asbestos Litig.*,
  789 F.2d 996 (3d Cir. 1986) .................................................................27

*In re Toyota Hybrid Brake Mktg., Sales Prac. & Prod. Liab. Litig.*,
  288 F.R.D. 445 (C.D. Cal. 2013)...........................................................21

*In re Whirlpool*,
  722 F.3d 838 (6th Cir. 2013) ...............................................................37

*Johnson v. Harley-Davidson Motor Co.*,
  285 F.R.D. 573 (E.D. Cal. 2012) .........................................................16

*Kelecseny v. Chevron U.S.A., Inc.*,
  262 F.R.D. 660 (S.D. Fla. 2009).....................................................30, 37

*Landen v. Electrolux*,
  2014 WL 2980977 (C.D. Cal. July 1, 2014) ......................................15

*Lieberson v. Johnson & Johnson*,
  865 F. Supp. 2d 529 (D.N.J. 2011).......................................................38

*Lindsey v. Normet*,
  405 U.S. 56 (1972)...............................................................................39

*Mahtani v. Wyeth*,
  2011 WL 2609857 (D.N.J. June 30, 2011) ....................................29, 35

*Maloney v. Microsoft Corp.*,
  2012 WL 715856 (D.N.J. Mar. 5, 2012)........................................17, 24, 27

*Maniscalco v. Brother Int'l Corp.*,
  709 F.3d 202 (3d Cir. 2013).................................................................34

*Marcus v. BMW of N. Am.*,
  687 F.3d 583 (3d Cir. 2012) ..........................................................passim

*Martin v. Ford Motor Co.*,
  292 F.R.D. 252 (E.D. Pa. 2013)...............................................23, 25, 26, 35

# TABLE OF AUTHORITIES

**Page**

*McGuire v. BMW,*
  2014 WL 2566132 (D.N.J. June 6, 2014) .......................................................27

*McNair v. Synapse Group, Inc.,*
  2009 WL 1873582 (D.N.J. June 29, 2009) ..............................................29, 30

*Mwantembe v. TD Bank, N.A.,*
  268 F.R.D. 548 (E.D. Pa. 2010).....................................................................40

*Neale v. Volvo,*
  2015 WL 4466919 (3d Cir. July 22, 2015) ...............................................passim

*Newton v. Merrill Lynch, Pierce, Fenner & Smith,*
  259 F.3d 154 (3d Cir. 2001) ...........................................................................36

*Oscar v. BMW of N. Am.,*
  274 F.R.D. 498 (S.D.N.Y. 2011) ........................................................22, 24, 32

*Payne v. FujiFilm,*
  2010 WL 2342388 (D.N.J. May 28, 2010) ...............................................17, 27

*Piemonte v. Viking Range, LLC,*
  2015 WL 519144 (D.N.J. Feb. 9, 2015) .........................................................22

*QVC Inc. v. Your Vitamins Inc.,*
  439 Fed. Appx. 165 (3d Cir. 2011)..................................................................27

*Raymond Motor Transp., Inc. v. Rice,*
  434 U.S. 429 (1978) ........................................................................................19

*Sanchez v. Wal-Mart,*
  2009 WL 1514435 (E.D. Cal. May 28, 2009)...........................................33, 38

*Sanders v. Apple,*
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ...........................................................33

*Sanneman v. Chrysler Corp.,*
  191 F.R.D. 441 (E.D. Pa. 2000)...................................................9, 23, 24, 28

*Savino v. Computer Credit, Inc,*
  164 F.3d 81 (2d Cir. 1998) ............................................................................38

*Schwartz v. Avis Rent a Car Sys., LLC,*
  2014 U.S. Dist. LEXIS 121322 (D.N.J. Aug. 28, 2014) ..................................31

*Sheris v. Nissan N. Am., Inc.,*
  2008 WL 2354908 (D.N.J. June 2, 2008) .......................................................26

*Stephenson v. Bell Atl. Corp.,*
  177 F.R.D. 279 (D.N.J. 1997)..........................................................................29

v

# TABLE OF AUTHORITIES

**Page**

*Stewart v. Beam Global Spirits & Wine, Inc.,*
2014 WL 2920806 (D.N.J. June 26, 2014) ................................................................9

*Stoneback v. ArtsQuest,*
2013 U.S. Dist. LEXIS 86457 (E.D. Pa. June 19, 2013)....................................32, 33

*Strzakowlski v. GM,*
2005 WL 2001912 (D.N.J. Aug. 16, 2005) .............................................................31

*Suddreth v. MBUSA,*
2011 WL 5240965 (D.N.J. Oct. 31, 2011)..............................................................25

*Sullivan v. DB Investments, Inc.,*
667 F.3d 283 (3d Cir. 2011) ....................................................................................11

*Szabo v. Bridgeport Machs., Inc.,*
249 F.3d 672 (7th Cir. 2001) ............................................................................24, 25

*Thiedemann v. MBUSA,*
183 N.J. 234 (2005).......................................................................................20, 35, 36

*Varacallo v. Massachusetts Mut. Life Ins.,*
332 N.J. Super. 31 (2000) ........................................................................................30

*Wal-Mart v. Dukes,*
131 S. Ct. 2541 (2011)......................................................................................passim

*Welch v. Atlas Roofing Corp.,*
2007 WL 3245444 (E.D. La. Nov. 2, 2007)............................................................17

*Werdebaugh v. Blue Diamond Growers,*
2014 WL 7148923 (N.D. Cal. Dec. 15, 2014)........................................................36

*Wiener v. Dannon Co.,*
255 F.R.D. 658 (C.D. Cal. Jan. 30, 2009)...............................................................38

*Zinser v. Accufix Research Inst., Inc.,*
253 F.3d 1180 (9th Cir. 2001).................................................................................39

**INTRODUCTION**

The sprawling putative class covers over ▮ different wheel designs ("Wheels"), made over

nearly a decade to different specifications and dimensions, by different manufacturers, using

different formulas.  Plaintiffs cannot offer necessary classwide proof, as they have not seen the vast

majority of the ▮▮▮▮▮▮▮▮▮▮▮, and their experts only analyzed "probably six to eight"

discarded Wheels with **no** information about the "systems" plaintiffs now allege to be defective.

The only thing the Wheels have in common is that they have performed very well.  Though

the first Wheels were made nearly a decade ago, very few (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)

have been replaced for **any** reason, including those having nothing to do with a defect (*e.g.*,

upgrades, accidents).  ▮▮▮▮▮▮▮ of the "defective" designs are unlikely to **ever** have failed.

This Court requires plaintiffs to show failures in a "vast majority" of Wheels to establish a

predominating defect.  Plaintiffs cannot meet this burden, and ignore the real-world data.

Plaintiffs do not have a consistent theory, much less a classwide one.  Initially, they said the

"uniform defect [is that] the alloy used . . . A356-T6—is incapable of handling the type of load

placed on the Wheels."   But plaintiffs' experts disagreed, admitting the alloys are "perfectly good."

So plaintiffs flip-flopped: "Plaintiffs are not claiming a defect in the metallurgy of the Wheels; rather,

the defect is in the Wheels' design."  But there is no common design; there are ▮▮▮▮▮ of them.

Further individualizing issues, plaintiffs' experts now admit: "The wheel by itself is fine."

The new claim is about a "system design" issue in "the way the wheel was used," which allegedly

could result in "radial cracks" in the rim flange.  But plaintiffs' experts are not qualified to offer an

opinion on "system design," and certainly offer no proof of a classwide "system" defect.  That is

because plaintiffs' experts concede that the "system" theory implicates limitless permutations of

wheel-tire combinations and putative class vehicles ("PCVs") with many different weights and

variable suspensions, used in infinitely variable driving conditions.

Plaintiffs present no proof to show that radial cracks in all █ designs will occur under "normal driving conditions." After a decade of use, over █ of the Wheels have *never* have been replaced for any reason, much less the alleged defect. Instead of the decade-long, real-world experience, plaintiffs' experts only looked at a few discarded wheels *without* knowing the conditions or "system" in which they were used; one conceded: "I cannot speak to the wheels that are in-service." By comparison, MBUSA's experts conducted extensive real-world testing and finite element analysis to show each of the █ designs and innumerable "systems" would need to be evaluated individually. All experts agree that determining the cause for any Wheel replacement requires individual inquiry. Plaintiffs' expert admitted: "I would need to find somebody who was there at the time of the event" to determine "what happened to any particular wheel."

Courts in this Circuit have repeatedly rejected certification in cases such as this. In *Marcus v. BMW of N. Am.*—a case with analogous facts (alleged defect causing failure of tires)—the Third Circuit recognized class certification was improper because of ascertainability and individualized causation and injury issues. And this Court and others have held "liability" is not suitable for issue certification in a case like this. Typicality and adequacy cannot be met in this case either. For starters, all plaintiffs continued to purchase wheels they claim are "defective" even *after* alleging all they claim in the complaint. Yet only one Wheel (of the dozens plaintiffs have owned) had a radial crack—and the only plaintiffs' experts ever to look at that Wheel said it was *not* defective. Plaintiffs fail to prove superiority and manageability as well; they proffer no workable trial plan and controlling precedent holds that they cannot certify a nationwide class in a case like this one.

Plaintiffs fail to prove any of Rule 23's requirements by a preponderance of the evidence, much less prove all of them. For numerous reasons, plaintiffs' motion should be denied.

## MBUSA'S COUNTER-STATEMENT OF FACTS

A.   **Plaintiffs' Own Experts Admit There Are Significant Differences in the Wheels and "Systems" at Issue Here**

There are more than ▮ different designs for the Wheels.  NYD ¶ 17.[1]  Contrary to plaintiffs' unsupported claims, their experts admit critical differences in design and manufacturing of the Wheels.  *Id.*; *see also* JCD Ex. 39 at 5-6 (plaintiffs' expert flagging, in a sample of 797 damaged wheels, *e.g.*, 51 different manufacturers, 17 different countries, 75 different "types of damage," instead of only radial cracks plaintiffs say are symptomatic of their "defect").  The Wheels also are used in innumerable different "systems" with different PCVs, suspensions, tires, in different conditions.  NYD ¶¶ 16, 18.  Plaintiffs' experts concede the Wheels can only be evaluated as part of such "systems."  *See, e.g.*, MMD Ex. A at 127: 17-128:10; 146:24-25; RRD at 10.

B.   **There Is No Evidence of a Defect, Much Less One Common to the Innumerable, Different "Systems" at Issue**



▮.  And plaintiffs have driven their many PCVs for thousands of miles, unaffected by a radial crack; only one of their Wheels (out of several dozen, because each plaintiff has had multiple

---

[1]     "NYD" is the Noah Yanowitz Declaration, Ex. A to the Jennifer Marino Thibodaux Declaration ("JTD").  "KAR," "KSR," "LCR," "LMR," "MFR," and "RGR," refer to the Reports of Kenneth Archibald, Kenneth Serwin, Larry Chiagouris, Laurentius Marais, Mark Fleming, and Rick Gundlach, respectively, Exs. B, C, D, E, F, and G to the JTD.  "MMD" is the Michael McDonald Declaration.  "DDD," "JCD," "JLD," "RRD," and "JJD" refer to the declarations of David Duquette, James Cecchi, James Lucas, Robert Russell, and Jacob Jacoby filed by plaintiffs.

PCVs) had a radial crack.   All of this is true, even though the first Wheels were made nearly a decade ago.   Plaintiffs cannot contradict the real-world data and do not show that any type of Wheel—much less all of the ███ different types—experienced radial cracking in the "vast majority" of Wheels, as the law requires.   *See* Part III.B.

Plaintiffs rely on a bulletin they claim "address[es] the defective Wheels," Mot. at 4, but in truth it only informs that radial cracks are "attributable to events such as driving over an obstacle, [tire] punctures, etc." and "not a material fault[.]" JCD Ex. 12 at 3.   Plaintiffs' expert agrees. MMD Ex. B at 166:24-167:23.   He also admitted that a significant impact was needed for a radial crack to occur.   *Id.* at 129:15-130:10; 233:24-234:4.   Thus, it is undisputed that the radial cracks plaintiffs focus on are caused by impact, *not* a defect.[2]   This is confirmed by research and extensive testing and finite element analysis by MBUSA's experts, using accepted SAE methods. KAR ¶¶ 63, 65-71; MFR ¶¶ 5, 40-42; RGR ¶ 34-38; NYD ¶¶ 52-53.

Plaintiffs cannot offer any classwide proof of a predominating defect.   No one looked at all of the ██ different designs, or even their specifications.   *See* Part III.A.2.   They conducted no testing to prove that radial cracks occur under "normal driving conditions" in any Wheel, even though it would have been "laudable."   MMD Ex. B at 230:2-231:18; *id.* at 231:23-232:1 ("Q: You didn't do any modeling or analysis to show whether a radial fatigue crack could occur without impact? A: That is correct.").   Instead, plaintiffs' experts admit they cannot offer any opinions about Wheels that are "in service"—which is nearly all of the Wheels.   *Id.* at 144:21-145:1; *see also id.* at 229:18-19 ("I really can't speak to all the wheels I cannot see.").   Plaintiffs thus

---

[2]     That radial cracks sometimes are called "fatigue cracks" does not prove a defect.   All metals fatigue, especially when severely impacted; the question is whether the hundreds of different Wheel types experience excessive fatigue on a classwide basis.   The answer is *no*.   If there were a defect, as the Judges of this District have said, there would be failures in the "vast majority" of Wheels.   *See* Part III.B (very few Wheels have been replaced for any reason after years of use).

4

misrepresent a few emails, claiming MBUSA saw a "defect" in some of its wheels.  Mot. at 2, 4-5.
But as the real-world data verifies, there is no defect.  In truth, these emails concern after-market or
counterfeit wheels—*not* Mercedes-Benz Wheels—or a discrete issue with one manufacturer, and
something unrelated to plaintiffs' "defect" theory.  NYD ¶¶ 52-57.  None of the emails relate to all
PCVs and, in any event, plaintiffs' "evidence" only verifies that "radial cracks" are not caused by a
defect, but are instead one type of damage (out of many) that can occur when wheels of any kind
have severe impacts with road hazards.  NYD ¶¶ 52-55; KAR ¶¶ 6, 32-34, 39-40, 63.

    The category of different alloys plaintiffs impugn (A356-T6) has been used for decades in
hundreds of millions of wheels for cars made by many different manufacturers.  KAR ¶¶ 6, 24-25,
79; MMD Ex. A at 40:17-41:1.   Plaintiffs' experts therefore disavowed any attack on A356 at
deposition.  *See* Part III.A.  One of plaintiffs' experts (Duquette) recommends the use of a different
alloy, A357.  He never tested his recommendation or ever worked with A357, and did not know
this alloy is not used for wheels because it is *more* susceptible than A356 to radial cracking.  *Id.* at
192:24-193:1; RGR ¶¶ 43-44.  He recommends forged wheels but they are available for virtually
all PCVs, so many PCVs have wheels that plaintiffs concede are *not* "defective."   NYD ¶ 13, 17.

### C.    Causation and Other Individualized Issues Render Class Treatment Improper

    As in *Marcus v. BMW of N. Am.*, it is undisputed that Wheel damage can be caused by
many different things besides the alleged "defect," *e.g.*, accidents; flat or blown-out tires; hitting
road hazards.  NYD ¶¶ 28-38; KAR ¶ 6, 4 32-40; MMD Ex. B at 143:18-144:3 (Russell).
Plaintiffs' expert observed damage "from *various possible causes*" with "a *large number* of
clearly catastrophic breakage and gross deformation associated with accident events."  RRD at 6
(emphases added).  Determining the cause of damage requires individualized inspections and
possibly testing of each wheel.  NYD ¶ 28; KAR ¶¶ 32-40.  Plaintiffs' expert agrees and, as he put
it, this "testing" is a "very long and arduous task."  MMD Ex. B at 113:23-114:6.

5

Indeed, there are even more grounds here than in *Marcus* to deny certification. Here, the Wheels vary in undisputed, critical ways. For example, there are many ██████████ ████—the focus of plaintiffs' "radial crack" theory—██████████████. KAR ¶ 30; NYD ¶ 17. Plaintiffs' experts admit the different dimensions make the durability of different Wheels variable. RRD at 67; MMD Ex. A at 180:12-15. In addition, they admit the constituents comprising "A356-T6 alloy" vary, which can influence "the impact strength and resistance to fatigue." RGR ¶ 30; MMD Ex. B at 142:5-13. Other reasons are explained below.

### D. Putative Class Members Are Well Informed About the Trade-Offs the Wheels Offer—Plaintiffs Admit as Much

The Wheels are sometimes paired with higher-performance tires that offer a sportier look and feel, among other advantages. NYD ¶¶ 18, 51. MBUSA informs consumers that while these packages "are designed for high performance driving," they are "more susceptible to road hazards and consequential damage." *Id.* ¶¶ 45-49; LCR ¶¶ 42-45. Plaintiffs' counsel admits "people did become aware of the [alleged] defect . . . ." MMD Ex. D at 18:20-23.

The truth, however, is that the durability characteristics of the Wheels are not a "defect," but instead are one of the many "trade-offs" consumers make when purchasing cars (e.g., trading off handling, performance, and styling). NYD ¶ 51; LCR ¶¶ 66-82; *see also* RRD at 12 (admitting such trade-offs exist). As *Marcus* recognizes, purchase decisions in a trade-off situation are individualized, precluding certification. LCR ¶¶ 83-98. The alleged "defect" was not material to the named plaintiffs, each of whom acquired ***additional*** cars with Wheels ***after*** filing the lawsuit, acknowledging the trade-offs they were making. *See* Dkt. No. 345-1 (MBUSA's MSJ).

## ARGUMENT

After *Wal-Mart v. Dukes*, Rule 23 "does not set forth a mere pleading standard" (131 S. Ct. 2541, 2551 (2011)), so a court ***cannot*** accept plaintiffs' allegations as true when addressing class

certification. *See, e.g.*, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 n.15 (3d Cir. 2008)). Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2310 (2013). Thus, "assurances that a party intends or plans to meet the requirements are insufficient to satisfy Rule 23." *Carrera v. Bayer Corp.*, 727 F.3d 300, 311 (3d Cir. 2013).

Plaintiffs must establish each element of Rule 23 by a preponderance of the evidence. *Marcus*, 687 F.3d at 591. They are required, in their opening brief, to "prove that there [is] in fact" compliance with Rule 23(a) and also "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013). And a court must conduct a "rigorous analysis" to test whether each requirement of Rule 23 has been met, even where such analysis "overlap[s] with the merits of the . . . underlying claim." *Id.*

## II.  "SERIOUS ASCERTAINABILITY ISSUES" EXIST HERE, AS THEY DID IN *MARCUS*

Plaintiffs fail to prove ascertainability, an "essential prerequisite" subject to the same "rigorous analysis of . . . evidence" as other Rule 23 requirements. *Carrera*, 727 F.3d at 306. Plaintiffs must prove, among other things, that "the method of determining whether someone is in the class" is "administratively feasible," *i.e.*, "a manageable process that does not require much, if any, individual factual inquiry." *Id.* at 306-08. The question is "whether the defendant's records can ascertain class members, and if not whether there is a reliable, administratively feasible alternative." *Marcus*, 687 F.3d at 594. "A plaintiff may not merely propose a method of ascertaining a class without evidentiary support that the method will be successful." *Carrera*, 727 F.3d at 306.[3]

---

[3]  Plaintiffs do not prove their claim that "the vast majority" of vehicles were sold with their factory-equipped wheels. Mot. at 27 n.21. They similarly fail to prove their claim that class membership may be determined through "each state's motor vehicle registration data." *Id.* at 27. Such records do ***not*** show the type or size of wheel, much less the alloy it is made of or whether it is a non-OEM wheel. *See* MMD Ex. C.

In *Marcus*, the Third Circuit found "serious ascertainability issues" as to a class of cars "equipped with Bridgestone RFTs," a type of tire. 687 F.3d at 588, 594. Although BMW had records showing equipment when cars were sold to dealers, "not every car that [came] onto a dealership lot with Bridgestone RFTs necessarily [left] the lot with the same tire" because "dealers might change the tires . . . ." *Id.* at 593-94. The same is true here because dealerships, re-sellers and consumers change wheels. NYD ¶¶ 8-12; KAR ¶¶ 10, 23. That records may show what "standard" equipment was once on a vehicle is irrelevant—contrary to plaintiffs' assertions— because they say nothing about whether the vehicle "left the lot" with those wheels. *See Marcus*, 687 F.3d at 593-94; Mot. at 27 n.21. *Byrd v. Aaron's Inc.* does not change the result here; indeed, *Byrd re*-confirms "serious ascertainability issues" making class treatment improper where "plaintiffs could not identify cars with the allegedly defective" part. 787 F.3d 154, 163 (3d Cir. 2015) (confirming *Marcus*'s meaning); *see, e.g., Bello v. Beam Global Spirits & Wine, Inc.*, 2015 WL 3613723 (D.N.J. June 9, 2015) (post-*Byrd* rejection of *Luppino* plaintiffs' arguments).

Plaintiffs wrongly claim that the class is ascertainable as "everyone who purchased or leased a . . . Mercedes-Benz passenger vehicle . . . from model year 2006 through the present[] is a Class member." Mot. at 27. This is false: only PCVs "*with 17, 18, or 19-inch aluminum, cast-alloy [Mercedes-Benz] Wheels*" are included. *Id.* at 1 (emphasis added). As in *Marcus*, not all PCVs have these Wheels and MBUSA's records do *not* identify which ones do, much less the people who had them. NYD ¶¶ 5-14. Cars are often sold to consumers without MBUSA having a record of the sale or the type of wheels they had, and there are many reasons MBUSA would not know whether a PCV had the required Wheels, even if sold new. For example:

- **Forged wheels** – Most PCVs can be equipped with wheels made of forged, rather than cast, alloys. NYD ¶¶ 13, 17; KAR ¶ 22; RGR ¶ 31. Forged wheels are *not* within the putative class and are *not* alleged to be defective. *See* DDD at 25-26; RRD at 67. Dealerships, re-sellers, and customers change wheels without notifying MBUSA, so MBUSA's records cannot ascertain PCVs sold with cast alloy Wheels. NYD ¶¶ 13-14.

8

- **16- and 20-inch wheels** – Many PCVs can be equipped with 16- or 20-inch Mercedes-Benz wheels and, thus, fall outside the putative class. NYD ¶¶ 7-8, 14. Even where PCVs come factory-equipped with 17- to 19-inch Wheels, they can be replaced on many vehicles with 16- or 20-inch wheels by the dealership, an independent reseller, or the consumer. *Id.* MBUSA's records do not show if such a change has been made. *Id.*

- **Non-OEM wheels** – Wheels from non-Original Equipment Manufacturers ("non-OEMs") are common, and re-sellers and consumers often use them. *Id.* ¶¶ 9-12, MBUSA is not notified when such a change is made, so it cannot determine which PCVs might have such wheels, much less who owned or leased such vehicles. *Id.*

Plaintiffs cannot avoid *Marcus* by claiming "there is only one brand of wheels" at issue here.

Mot at 27 n.21. The point, as in *Marcus*, is that the PCVs use innumerable, different non-class

wheels—so it is not "administratively feasible" to determine who has/had Wheels at issue, and

who does not. In addition, former owners who no longer have their wheels generally cannot prove

class membership. *See, e.g., Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 452 (E.D. Pa. 2000)

(denying certification for similar reasons). The class cannot be ascertained by claimants' "say so."

There would be "serious due process implications" if MBUSA were "[f]orc[ed] . . . to accept as

true absent persons' declarations that they are members of the class" without cross-examination.

*Marcus*, 687 F.3d at 594; *see, e.g., Stewart v. Beam Global Spirits & Wine, Inc.*, 2014 WL

2920806, at *12 (D.N.J. June 26, 2014). MBUSA has a "due process right to challenge the proof

used to demonstrate class membership . . . ." *See, e.g., Carrera*, 727 F.3d at 307.[4]

## III. PLAINTIFFS HAVE NOT PROVEN PREDOMINANCE OR COMMONALITY

The Supreme Court rejects plaintiffs' contention that they only need to identify "'common

questions,' rather than the answers to those questions." *Cf.* Mot. at 11, 13-15. "What matters to

---

[4]     That MBUSA has shown the three named plaintiffs acquired PCVs with Wheels after filing this lawsuit, *see* Supp. MMD ¶¶ 1-14, does not show it is feasible to ascertain all class members. Plaintiffs responded to significant discovery, which led to individual inquiries for records of third-party, independent dealers. *Id.* It is not "feasible" to perform the same inquiries millions of times. *See, e.g., Carrera*, 727 F.3d at 307 (feasibility "means . . . a manageable process that does not require much, if any, individual factual inquiry"). First, similar records do not exist for many sales, *e.g.*, non-dealer used car sales, separate wheel purchases. Second, others are not obligated to give MBUSA records, even where they do exist. Third, plaintiffs do not prove an administratively feasible way of reviewing millions of records manually, as *Carrera* requires. 727 F.3d 306.

class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551 (emphasis added).  In this Rule 23(b)(3) case, plaintiffs also must prove common issues predominate.  *See, e.g.*, *Comcast*, 133 S. Ct. at 1432.

Plaintiffs only allege four "common questions."  Mot. at 9, 12-13.  None meet Rule 23, as plaintiffs fail to prove any of them "generat[e] . . . common answers" using common proof, and "resolve an issue that is central to the validity of each one of the claims in one stroke," much less that they "predominate."  *Dukes*, 131 S. Ct. at 2551.  Plaintiffs do not provide "generalized evidence that proves or disproves the element[s of their claims] on a simultaneous, class-wide basis."  *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 637 (S.D. Fla. 2010); *Grandalski v. Quest Diags., Inc.*, 767 F.3d 175, 185 (3d Cir. 2014).  Nor do plaintiffs account for individualized defenses, even though *Dukes* requires them to do so.  *See* 131 S. Ct. at 2551-52.

For example, plaintiffs ask "whether [MBUSA] breached the applicable express . . . warrant[y]."  Mot. at 9; *id.* at 12-13.  But that inquiry cannot be resolved "in one stroke" as to all putative class members, *Dukes*, 131 S. Ct. at 2551, because in this Circuit, the answer depends in each case on, *e.g.*, individualized proof as to whether the alleged defect manifested; whether manifestation occurred within the scope of warranty coverage; if so, whether such breach caused injury; whether proper notice was given; and other considerations.  *Marcus*, 687 F.3d at 603-05.  Because of their individual circumstances, plaintiffs Stern and Casiero's warranty claims were dismissed; this confirms that the result is different for different class members.  *See* Dkt. 66 at 5-6.

Worse, plaintiffs do not show the Wheels—much less the tires, vehicles, and other parts of the "systems"—are the same in critical ways, because they are not.  They offer no proof that any, much less all, Wheels have failed at a rate establishing a common defect.  ████████████████

10

██████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████. *See* LMR ¶¶ 4-8, 17-20.

Plaintiffs misstate their burden of proof by incorrectly continuing to rely on *Sullivan v. DB Investments, Inc.*, 667 F.3d 283 (3d Cir. 2011). *Cf.* Mot. at 14-15. *Sullivan* is inapposite to this case, as confirmed by the Third Circuit's recent decision in *Neale v. Volvo*, 2015 WL 4466919, at *15 n.9 (3d Cir. July 22, 2015). First, *Sullivan* involved a settlement class. *Id.* (distinguishing *Sullivan* on this ground). Second, *Sullivan* involved antitrust claims. 667 F.3d at 300. Liability hinged entirely on the defendant's conduct because the market effect was undisputed and "resulted in a common injury as to all class members—inflated diamond prices." *Id.* The same is *not* true here, where the vast majority of persons have not experienced the alleged defect and all elements are disputed. Finally, the Third Circuit distinguished *Sullivan* because it did not involve a NJCFA claim; both *Neale* and *Marcus* require consideration of each claimant's reaction—not merely the defendant's conduct—in a NJCFA case like this one. *Neale*, 2015 WL 4466919, at *14-*15.

## A. The Putative Class Claims Do Not Rest on the "Same Grounds," As They Do Not Involve Wheels or Systems with the Same Characteristics

Plaintiffs must show "[i]t is unlikely that differences in the factual background of each [person's] claim will affect the outcome of the legal issue." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1989). Plaintiffs tried to impugn A356-T6 itself, but this is not a singular metal used in all Wheels, and their experts now admit there is no "indication that this A356 had any problems with it"; the alloy is "perfectly good." MMD Ex. A at 39:17-43:8, 93:18-23, 96:19-20.

In plaintiffs' experts own words: "if you simply read [plaintiffs' certification motion] . . . it implies that 356 [alloy] could not be used, and that's *not true*." *Id.* at 197:16-19 (emphasis added); KAR ¶¶ 6,24-25 and RGR ¶¶ 19-21, 30, 34-40 (both confirming that A356-T6 category of alloys is

11

the most widely used in the world for wheels and finding no defects in the Wheels); *see also* Part III.B. (plaintiffs' former experts finding no metallurgical defects in plaintiffs' wheels). The clear admission by plaintiffs' expert is: "The wheel by itself is fine." MMD Ex. A at 146:25.

Plaintiffs now try to impugn "the design of the system," but their experts admit individual issues under this new theory because of varying Wheels, tires, vehicles, suspensions, driving styles and conditions, and other items. MMD Ex. B at 111:17-118:19 (tire pressure, speed, angle of impact, suspension, and a lot of "[s]tuff [Russell] do[es]n't know" are part of "a system" and affect whether a radial crack can occur), 127:18-128:10, 197:20-198:20. Contrary to plaintiffs' claims (Mot. at 14), there is not one "design." The "system" theory injects a huge number of possible combinations, with many significant differences—making proof of commonality or predominance impossible.

### 1.    The Metallurgy Attacked by Plaintiffs Is Not Common to All Wheels

The Wheels are *not* all made using the same metallurgy. *Cf.* Mot. at 1, 2, 7 (failing to prove assertions to the contrary). ██████████████████████████████

████████████████████████████████████████████████

████████████████████. MMD Ex. B at 142:5-8; RGR ¶ 30. Because Wheels are made using different metals, plaintiffs cannot show with common proof that the Wheels are all defective. *See also* JCD Ex. 39 at 5-6 (51 different manufacturers, many facilities in 17 different countries in a limited pool of 797 wheels collected over a small fraction of the class period).

### 2.    The Wheels Are Not "Common"; There are More Than ██ Different Designs with Critical Differences in the Characteristics Plaintiffs Attack

Plaintiffs are wrong in their (unsupported) claim that the Wheels are all "manufactured to identical specifications." *Cf., e.g.*, Mot. at 1, 7, 8 (repeatedly citing no evidence on this point). ██

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

███████████). Contrary to plaintiffs' claims at the *Daubert* argument, their expert Russell did ***not*** see—much less analyze—all specifications. MMD Ex. B at 102:14-20 ("Did you see all specifications? [objection to form] A: I've seen the design document for all 50 of the wheels that were actually measured"—not the hundreds of specifications at issue).[5]

The varying details set forth in the hundreds of different specifications are critical to the ability of a Wheel to resist damage. MMD Ex. B at 211:4-8 (Russell later conceding specifications are different); NYD ¶ 19; KAR ¶¶ 26-30 (both confirming material differences). For example, plaintiffs' experts ***admit*** thicker flanges can "eliminate crack initiation." RRD at 67; MMD Ex. A at 180:12-15 (Duquette admitting the thicker the rim flange is, "the more resistance it will have to permanent deformation and cracking"); *cf. Marcus*, 687 F.3d at 602-03 (design in that case was "universal").[6] Because the specifications at issue—including the thickness and shape of the rim flange—significantly vary amongst Wheels, plaintiffs cannot establish a common course of conduct, much less a common part. NYD ¶¶ 17, 19; KAR ¶ 30.

Previously, plaintiffs admitted: "there are differences amongst the models in terms of their wheel failure rates." MMD Ex. E at 11:1-2. Yet, their experts have not seen—much less tested or analyzed—the vast majority of the ███████ different types of Wheels, so they have no basis to

---

5    Thus, Russell could not answer questions about material differences shown in the specifications. *See, e.g., id.* at 103:4-9 ("Don't the specifications specify tires of other sizes as well, not just the ones you've picked out . . . [objection to form] A: I cannot be certain of that, sir."). As Russell verifies, he reviewed drawings ***not*** the specifications. *See, e.g.,* JCD Ex. 22 at 34-35; *cf.* KAR ¶¶ 26-31 & Exs. 11-14 (specifications show critical differences among Wheels).

6    It also is ***not*** true that the PCVs in this case "cannot be converted for use of conventional tires." *Cf. Marcus*, 687 F.3d at 599, 603. Here, if a consumer wanted tires with less stiffness, higher sidewall heights, or wheels with thicker flanges or other characteristics, they are available. *See, e.g.,* NYD ¶¶ 17-18. Customers have many choices here.

extrapolate their theories to all Wheels, let alone all "systems." For example, Dr. Duquette

testified that he never even looked at all of the discarded Wheels discussed above and, instead,

examined just *six* wheels with a certain type of impact damage "interesting" to him.

Moreover, the Wheels seen by plaintiffs' experts were from a non-random sampling of

damaged and discarded Wheels. LMR ¶¶ 4-8, 17-20 (there is "no statistically or scientifically

valid basis for extrapolating . . . to the entire population of Class Wheels"); MMD Ex. F at 142:10-

19 (plaintiffs' statistical expert admitting that the wheels plaintiffs' experts used were "definitely

*not* [from] a random sample of the whole universe [of Wheels]") (emphasis added).

Where experts do "not inspect a scientifically random sample of the [products at issue, this]

. . . makes any extrapolation of the condition of the [products], as a whole, from the condition of a

small sample, unreliable" and the extrapolations are invalid. *Certified Eng'g Copier Sys. v. Nat'l

City Comm. Capital Co.*, 2009 WL 1324047, at *5 (D. Utah May 11, 2009) (citing Circuit cases);

*Farmer v. DirectSat, LLC*, 2013 WL 1195651 (N.D. Ill. Mar. 22, 2013); *Heisler v. Maxtor Corp.*,

2011 WL 1496114, at *8-*9 (N.D. Cal. Apr. 20, 2011) (class treatment improper, where expert

"did not perform a tear-down of each model," but opined products "are virtually identical").[7]

Also, where—as here—plaintiffs' evidence relates to only a small segment of the putative

class, certification must be denied. *See, e.g.*, *Dukes*, 131 S. Ct. at 2556 (no certification where

---

[7]    Plaintiffs cannot prove their expert did "industrial sampling" in this case, or that sampling was scientifically random. *Cf.* Dkt. 369-1 (no assertion on either front). As Lucas says, industrial sampling "pertains to sampling in the manufacturing context." *Id.* ¶ 3. Thus, it might identify manufacturing defects, *i.e.*, whether products "have minimal, or almost no variation." *Id.* ¶ 4. But plaintiffs have abandoned any manufacturing defect claim: "If there is no design defect, the case is over." Mot. at 13 ). Moreover, plaintiffs do not prove "no variation" in specifications as required for valid industrial sampling. In truth, there are hundreds of different specifications and over ▮▮▮ different designs. *See* NYD ¶ 17; KAR ¶¶ 17, 18, 26-30. As discussed above (Part III.A.2.), the designs of the Wheels certainly are not the same (in Lucas's words, a "stable process"), so plaintiffs do not have classwide proof. They never tested "a sample off the production line," as required for industrial sampling. Their experts only looked at used, already-damaged Wheels. They never tested any "system" they impugn as defective, much less a random sampling of them.

evidence related "to only some 235 out of Wal-Mart's 3,400 stores").  Here, there is no evidence about any other part of the "system" plaintiffs now try to impugn; the few Wheels they reviewed had no tires, were not connected to any vehicles or suspensions, and had no information as to their use (*e.g.*, whether they were involved in accidents, subject to misuse, etc.).  *See, e.g.*, MMD Ex. A at 88:1-18 (Duquette admitting as much); *id*. Ex. B at 72:23; 80:4-15 (Russell: "I know nothing about any particular wheel," nor anything "about any tire attached to any of th[e] wheels.").

At a minimum, there is a dispute as to how material the differences in the ██ Wheel designs and innumerable different systems really are—which itself makes class treatment improper: "given the conflicting evidence, Plaintiff would presumably have to prove at trial that the differences in each model were immaterial, which suggests that class treatment is inappropriate." *Landen v. Electrolux*, 2014 WL 2980977, at *1 (C.D. Cal. July 1, 2014).  "[I]t is Plaintiff's burden to show that common issues in the case predominate, not Defendant's to show that they do not." *Id*.

> ### 3.   Plaintiffs' Experts Admit Other Aspects of the Systems Are Important (*e.g.*, Suspensions, Vehicle Weights, Wheel/Tire Combinations), But They Also Vary, So Commonality and Predominance Are Not Met

████████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████.  NYD ¶ 16.  Plaintiffs' experts concede these all affect the amount of load a wheel will bear during operation, and thus affect the alleged possibilities that any given wheel might fail.  MMD Ex. B at 112:17-113:9; *id*. Ex. A at 198:13-22; NYD ¶¶ 19-20.  Because the Wheels, tires, and PCVs at issue each come in hundreds of materially different types, there are a huge number of different permutations.  Commonality cannot exist because plaintiffs' experts opine that each of these different combinations must be analyzed as "systems" in determining whether the Wheels are defective:

It's a systems analysis problem, it's not a – it's not just whether the wheel is

defective or not. . . . So when you say the wheels are defective . . . it's just for the system, which is the vehicle, the wheel, and the tire that's put on the wheel, the design is not adequate to prevent fatigue cracking.

MMD Ex. A at 127: 17-128:10; *id.* at 146:24-25 ("[I]t's a systems problem. ***The wheel by itself is fine.***") (emphasis added); RRD at 10 ("It is a flaw of the . . . system not the individual components."); MMD Ex. B at 21:2-3. As there are a huge number of "systems" with critical differences, commonality and predominance are not met. NYD ¶¶ 16-19; *see, e.g., Cholakyan v. MBUSA*, 281 F.R.D. 534, 552 (C.D. Cal. 2012) (class treatment denied where defect theory implicated "system" that was "in fact an amalgamation of many different vehicle parts").

Where, as here, "there are differences in the product design, or differences in the product parts that make up the design," class treatment is improper. *See, e.g., In re Hitachi TV Optical Block Cases*, 2011 WL 4499036, at *5 (S.D. Cal. 27, 2011) (citing numerous examples); *In re Bridgestone/Firestone Prods. Liab. Litig.*, 288 F.3d 1012, 1019 (7th Cir. 2002) (with 67 different tire types with "multiple diameters, widths, and tread designs . . . it would not be possible to make a once-and-for-all decision about whether all 60 million tires were defective"); *Johnson v. Harley-Davidson Motor Co.*, 285 F.R.D. 573, 579 (E.D. Cal. 2012) ("[T]here is no common method of proof to show whether there is a design defect" in products with 130 configurations).

### 4. Plaintiffs' Experts Admit That Variable Tires and Tire Pressure Influence Performance in Ways That Are Not "Common" or "Predominant"

The ability of Wheels to resist damage from impact—and, among other things, critical causation questions (*see infra*, Parts III.D.1. & E.2.)—cannot be determined without individually analyzing the tires and tire pressures used. NYD ¶¶ 18-20; KAR ¶¶ 16, 51, 54, 59. The hundreds of different specifications for the Wheels show there are thousands of different types of tires from different brands with different characteristics (e.g., seasonal, run-flat, performance), in dozens of approved sizes (with many more that are not approved, but which people regularly use)—all

16

operating at variable tire pressures, under different circumstances.  NYD ¶ 18.  Plaintiffs' experts admit these critical facts.  *See, e.g.*, MMD Ex. A at 75:19-76:14; *id.* Ex. B at 112:17-23.

As *Marcus* recognizes, consumers select different tires to put on their Wheels—through dealerships, used car lots, or third-parties—and MBUSA has no records showing what type or size of tires are on PCVs.  687 F.3d at 593-94; NYD ¶ 18.  Plaintiffs' expert conceded he did not know what tire was on any of the Wheels he examined, MMD Ex. B at 97:25-98:1, so plaintiffs have no classwide proof for any road-to-rim clearance "defect" theory.  Most significantly, it is undisputed that individual inspections would be required to determine the cause of a radial crack on any Wheel, including whether a certain tire may have contributed to it.  *See, e.g.*, Section III.D.

**B.    Plaintiffs Have No Proof of a Classwide Defect Either**

"Where plaintiffs' claims are all based on an alleged common defect, courts in this District have recognized that even the basic issue of whether the common defect exists may defeat predominance and render the class action unmanageable."  *Payne v. FujiFilm*, 2010 WL 2342388, at *4 (D.N.J. May 28, 2010) (citing multiple cases).  Plaintiffs agree: "class cert law clearly says you need to prove a common defect" as a *pre*requisite to certification.  MMD Ex. G at 10:23, 65:11-23.  The Court cannot infer the "existence and severity of the defects" without classwide proof because, if it did, the defendant "may [be] substantially prejudice[d], as the [finding] would not be accompanied by the traditional rules and procedures applicable to civil trials."  *Welch v. Atlas Roofing Corp.*, 2007 WL 3245444, at *6 (E.D. La. Nov. 2, 2007).

Courts in this District hold that a "lack of evidence that a majority of [putative class members] experienced common problems from a common defect . . . would be fatal to a showing of predominance."  *Payne*, 2010 WL 2342388, at *5; *see, e.g.*, *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 455 (D.N.J. 1998); *Maloney v. Microsoft Corp.*, 2012 WL 715856, at *7 (D.N.J. Mar. 5, 2012).  Earlier, plaintiffs promised they could make the required showing, *e.g.*: "we will be able to prove

that, when [the Wheels are] paired with low profile tires and placed on vehicles, it's *__inevitable__* that they fail." MMD Ex. G at 26:14-16 (emphasis added). In this Circuit, "assurances that a party intends or plans to meet the requirements are insufficient to satisfy Rule 23." *Carrera*, 727 F.3d at 311. Because plaintiffs fail to deliver on their promise, their motion should be denied.

Far from being "inevitable," the real-world data shows the Wheels do *__not__* fail at anything close to establishing a common defect. ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████. *Id.* ¶ 41. For over ███ types of Wheels, there were *__no__* aftermarket sales in New Jersey for any reason—much less a "defect." *Id.* All of this is true, even though the first Wheels were made nearly a decade ago.

Previously, plaintiffs recognized "the number of failures" was critical evidence. MMD Ex. E at 9:9-10. The law requires MBUSA to "know *__with certainty__*" that all of the ███ different types of Wheels at issue will fail; there is no liability for "failing to inform its consumers of the possibility of failure." *Glass v. BMW of N. Am.*, 2011 WL 6887721, at *8-*10 (D.N.J. Dec. 29, 2011). Now, plaintiffs' experts admit they *__cannot__* establish certainty that all Wheels will fail; and only make assumptions—contrary to the real-world data—or base opinions on hearsay found on the internet. MMD Ex. A at 84:20-85:20, 108:9-109:10; *id.* Ex. B at 92:1-22, 93:23-94:2.

There is other evidence verifying the lack of a common defect as well. For example, Ken Archibald, Mark Fleming, Rick Gundlach, and Noah Yanowitz all prove there is no defect in the Wheels, much less any defect occurring commonly across all of the "systems" at issue. *See, e.g.*, KAR ¶¶ 6, 61-71; MFR ¶¶ 5, 40-42; RGR ¶¶ 19-21, 34-40; NYD ¶¶ 16-19,40-44. No testing was done on plaintiffs' Wheels by their current experts, but plaintiffs did have three others look at some

18

of their Wheels—and none found any defect; the chemical composition and microstructure were **not** defective in any way. *See* MMD Ex. H at 27:4-9, 32:22-33:1, 41:4-19. One of these experts "saw nothing out of the ordinary that would throw up any red flags." *See* MMD Ex. I at 11:4-9, 58:6-23, 61:21-24. Another did not perceive any "damage or flaw of any nature whatsoever" in the wheel. MMD Ex. J at 81:18-82:23. After "having done everything you need to do to make a preliminary analysis in terms of the defective nature of the wheels from a materials standpoint," plaintiffs' expert did not believe there was any defect. *Id.* at 104:1-8. The findings by these original plaintiffs' experts confirm that defects do **not** exist in all Wheels; plaintiffs' current experts cannot dispute this—because they **never tested** the Wheels (or any plaintiffs' Wheel) that plaintiffs' original experts concluded were not defective.

Separately, by tying their "defect" to failure under only "normal driving conditions," Mot. at 9, plaintiffs further individualize critical issues. There is no uniform set of "normal driving conditions" as the quality of roads varies greatly. *See, e.g.*, *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 444 n.18 (1978); *Bridgestone/Firestone*, 288 F.3d at 1019 (class treatment denied where failure of allegedly defective tires could vary by geography); NYD ¶¶ 21-22; LCR ¶¶ 56-62. Plaintiffs and their experts admit as much. *See, e.g.*, MMD Ex. E at 48:8-11; MMD Ex. B at 11:17-21 ("certainly, geography plays a role in how well roads are maintained"). Under plaintiffs' theory, whether the failure of a Wheel was caused by a "defect" or some other reason, including "abnormal" driving conditions would necessarily vary—depending on the undefined "normal" standard that MBUSA would have the right to litigate in any given jurisdiction.

### C.   Plaintiffs Cannot Prove Their Alleged Injury on a Common, Classwide Basis

Plaintiffs cannot establish that all putative class members experienced a radial crack in a Wheel because of plaintiffs' alleged defect, much less within warranty. *See, e.g.*, *Chan v. Daimler AG*, 2012 WL 5827448, at *6 (D.N.J. Nov. 9, 2012) (Linares, J.) (collecting cases establishing that

19

no cognizable injury, either in warranty or fraud, exists in such circumstances).[8]  Nor do plaintiffs show they have classwide proof of their "common injury" allegation, *i.e.*, that the alleged defect renders all PCVs "less valuable than they would have been absent the defect." Mot. at 16.

Even if plaintiffs could show all Wheels have a common "defect" (they cannot), and even if damages issues are set aside, the essential liability prerequisite for ***injury*** is individualized and precludes issue certification as to liability.  *See, e.g., Marcus*, 687 F.3d at 605-06.  The "assertion of a diminution in value or loss of a benefit-of-the-bargain [is] insufficient to support a quantifiable loss; rather, the plaintiff must produce ***specific proofs***." *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2010 WL 2813788, at *28-*29 (D.N.J. July 9, 2010) (emphasis added); *Thiedemann v. MBUSA*, 183 N.J. 234, 252 (2005); *Chan*, 2012 WL 5827448, at *9.  Certification is improper as (among other things), plaintiffs fail to provide common, "specific proof" of ascertainable loss caused by the alleged "defect."  *See* KSD ¶¶ 25-34 (explaining why such proof is not possible).

First, plaintiffs do not proffer classwide, "specific information concerning the [the true market value] of the product or the price of any comparable products." *Hemy v. Purdue Farms, Inc.*, 2011 WL 6002463, at *18 (D.N.J. Nov. 30, 2011) ("absent [such evidence claims] . . . are nothing more than unsupported conclusory statements that are insufficient").  Second, plaintiffs offer no expert opinion showing classwide economic loss.  *See Thiedemann*, 183 N.J. at 252 (claim improper in absence of expert evidence "that the resale market for the specific vehicle had been skewed by the 'defect'").  Third, there is no common proof showing that all putative class members sold PCVs at a reduced value.  *Id.* (noting "the lack of any attempt to sell the vehicle" at

---

[8]    Plaintiffs argue that "reimbursement" for replacement wheels or "warranty coverage" are possible remedies (Mot. at 29), but it is indisputable that very few putative class members experienced ***injuries*** allowing for these remedies.  For example, as discussed above (Part III.B.), very few have paid for replacement wheels, and many PCVs are out of warranty coverage now.

reduced value). Fourth, as discussed below, causation of any alleged diminution injury also would be individualized for numerous reasons. *See* Parts III.D.1. & E.2.

"Common injury" cannot be established through claims like plaintiffs'.[9] Even in a case with extreme publicity (Ford Explorer/ Firestone Tires), diminution was not a common injury because some cars will receive free repairs and "some will never be resold." *In re Bridgestone/ Firestone*, 288 F.3d at 1019. Other decisions similarly refuse class treatment on claims like plaintiffs'. *See, e.g., In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *14 (S.D.N.Y. May 30, 2013); *Eisen v. Porsche Cars of N. Am., Inc.*, 2014 WL 439006, at *8 (C.D. Cal. Jan. 30, 2014); *Cancino v. Yamaha*, 2010 WL 2607251, at *11-*12 (S.D. Ohio June 24, 2010) ("diminution in value" claims "can only be resolved on an individualized basis"); *In re Toyota Hybrid Brake Mktg., Sales Prac. & Prod. Liab. Litig.*, 288 F.R.D. 445, 449-50 (C.D. Cal. 2013); *see also* KSD ¶¶ 25-34 (explaining why these issues are individualized).

The Third Circuit recognizes another reason the alleged injury in this case is not common:

> If a consumer did know about the "defects" but, despite that knowledge, still decided to purchase or lease a BMW at the same price anyway—because, for example, he or she decided that the other safety and convenience benefits . . . outweigh the costs of the[ ] defects—then the consumer would not have received something less than expected.

*Marcus*, 687 F.3d at 607-08. As plaintiffs admit, many "became aware" of the information at issue but purchased PCVs at the same price anyway. *See* Part III.D.1.; LCR ¶¶ 80-82. Indeed, as shown in MBUSA's Motion for Summary Judgment (Dkt. 345-1), plaintiffs all acquired additional PCVs, even after alleging fraud and other claims.

---

[9]    Plaintiffs' reliance on *Baker v. Microsoft Corp.*, 2015 WL 4393964 (9th Cir. July 20, 2015), is misplaced. *Cf.* Mot. at 13-14. First, the Ninth Circuit expressed "no opinion on whether the specific common issues identified in this case are amenable to adjudication by way of a class action" (*id.* at *7)—so *Baker* does not support class certification. Second, the California causes of action in *Baker* have different elements than the New Jersey claims here; the Third Circuit has so held. *See Marcus*, 687 F.3d at 604-07; *Neale*, 2015 WL 4466919 at *13 (predominance analysis "begins . . . with the elements of the underlying cause of action").

**D.   The Warranty Claims in This Case Cannot Be Certified**

**1.   Causation Issues Preclude Certification As They Did in *Marcus***

Plaintiffs rely on *Marcus* because, in the distinct circumstances of that case, the Third

Circuit believed it was possible to show a "common, class-wide defect" (Mot. at 13)—but

plaintiffs hide the Third Circuit's holding that, even *if* proof of a common defect is possible,

causation issues preclude certification of claims like plaintiffs' in ***this*** Circuit. *See Marcus*, 687

F.3d at 603-05; *Piemonte v. Viking Range, LLC*, 2015 WL 519144, at *4 (D.N.J. Feb. 9, 2015); *cf.*

Mot. at 15 (relying only on inapposite, out-of-Circuit authority).[10]

The causation issues in *Marcus* are closely analogous to this case; plaintiff claimed that

run-flat tires had a uniform defect making them susceptible to going flat. *Id.* at 588.  The Third

Circuit found that causation issues precluded class treatment of plaintiffs' claims, including for

breach of express and implied warranties. *Id.* at 604.  Even if a class-wide defect existed, it would

only "beg the question of what caused class members' tires to go flat and need replacement." *Id.*

> [T]he District Court should have addressed an undisputed, fundamental point: any
> tire can "go flat" for myriad reasons.  Even "defective" tires can go flat for reasons
> completely unrelated to their defects.  Critically, to determine why a particular class
> member's Bridgestone RFT has "gone flat and been replaced" requires an
> individual examination of that class member's tire.  These individual inquiries are
> incompatible with Rule 23(b)(3)'s predominance requirement.

*Id.*; *see, e.g.*, *Neale*, 2015 WL 4466919 (Third Circuit reaffirming holding); *Oscar v. BMW of N.*

*Am.*, 274 F.R.D. 498, 511 (S.D.N.Y. 2011) (certification denied because "plaintiff would have to

demonstrate in each individual case that the tire punctured for reasons related to the defect," as

opposed to another cause); *Dukes*, 131 S. Ct. at 2555-56.

---

[10]   Plaintiffs mischaracterize their lead authority, *Helmer v. Goodyear Tire & Rubber Co.*,
2014 WL 1133299 (D. Colo. Mar. 21, 2014).  That case involved only a claim of "strict liability
for design defect" under inapposite Colorado law. *Id.* at *2.  As *Helmer* did not concern itself
with the fact "that some members used the product improperly and thereby caused injury" (*id.* at
*5), it is contrary to *Marcus* and the other Third Circuit authorities cited above. *Whirlpool* is
inapposite for similar reasons and also as discussed in Part IV, *infra*.

*Marcus* also observed that "[o]ther federal courts have also recognized that suits alleging defects 'involving motor vehicles often involve complicated issues of individual causation that predominate over common questions regarding the existence of a defect." 687 F.3d at 604; *see, e.g., Chin*, 182 F.R.D. at 455-56 (refusing class treatment because, "[e]ven where the alleged defect has manifested itself, individual issues of actual cause must be adjudicated"); *Daniel v. Ford Motor Co.*, 2013 WL 3146810 (E.D. Cal. June 18, 2013); *Sanneman*, 191 F.R.D. at 449; *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 274 (E.D. Pa. 2013). The Third Circuit recently confirmed that causation issues preclude certification where—as here—the "allegedly defective" product can develop the symptom at issue "for myriad reasons." *Grandalski*, 767 F.3d at 185.

It is undisputed that the Wheels—like the tires in *Marcus*—can require replacement for many reasons other than a defect, including damage from road hazards, accidents, and many other causes. NYD ¶¶ 28-38; KAR ¶¶ 31-45; *see also* Ex. K (plaintiffs admitting Wheels can be replaced "due to a defect, damage from an accident, or normal wear and tear over time"); RRD at 6 (plaintiffs' expert admitting that "the population of dealership wheels [he looked at] included examples from various possible causes" including "accident events.").[11] Thus, determining whether the alleged defect—rather than some other factor—caused a Wheel to fail requires individual inspections and expert analysis. NYD ¶ 28; MMD Ex. L at 54:1-10 (plaintiffs admitting expert testing is needed); *id.* Ex. B at 113:23-114:6 (Russell admitting that determining cause "is a very long and arduous task"). Such individual inspections are impossible for those

---

[11]     Plaintiffs cannot distinguish *Marcus* with their argument that consumers do not expect Wheels to fail. *Cf.* JJD ¶ 23. "Expectations" have nothing to do with the ***causation*** inquiries that preclude certification in this case, *i.e.*, the salient point is that both the tires in *Marcus* and the Wheels here can fail for reasons other than the alleged defect. In any event, a purported expectation of a fail-proof Wheel is both contrary to law and the weight of the evidence, as both plaintiffs and their experts admit that wheels can fail for reasons other than a defect. MMD Ex. K; RRD at 6; MMD Ex. L at 54:1-10; *id.* Ex B at 113:23-114:6.

who have not retained the Wheels they replaced, and impracticable for a putative nationwide class that plaintiffs allege will involve more than 6.4 million Wheels. *See Sanneman*, 191 F.R.D. at 452 (denying certification on this basis, among other reasons). As plaintiffs' expert Russell concedes, to determine cause he "would need to find somebody who was there at the time of the event." MMD Ex. B at 120:18-121:1. This also is infeasible for all of the Wheels at issue in this putative nationwide class action.

As another Judge of this Court held based on *Dukes* and other cases, "[e]ven if [internal] communications did create an inference that all . . . cracks were the result of a design defect, the Defendant still must be permitted to rebut this inference by showing owner misuse or abuse on a case-by-case basis," so class certification is improper. *Maloney*, 2012 WL 715856, at *8. "[D]etermining whether each [wheel] failed as a result of the allegedly concealed defect or as a result of unrelated issues, *e.g.*, potholes or reckless driving habits, will devolve into numerous mini-trials." *Oscar*, 274 F.R.D. at 513 (denying class certification on this basis, among others).

The complexity of the required adjudication is crystallized by *Petersen v. MBUSA*, a case impugning only one of the innumerable "systems" at issue. There, after two weeks of trial, a jury found the "system" ***not*** to be defective; the Wheels failed for a reason not attributable to MBUSA. *See* MMD Ex. M. Here, similarly complex and lengthy findings would need to be made in every individual case, as to each of the many different "systems," making class treatment improper. *See, e.g.*, *Marcus*, 687 F.3d at 604; *Oscar*, 274 F.R.D. at 511; *see also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) (detailing examples of these inquiries).

### 2.    Many Other Individualized Issues Also Preclude Certification

Beyond causation, plaintiffs' claims raise many other individualized issues precluding class treatment. For example, plaintiffs' warranty claims also require individualized proof that every putative class member "presented his vehicle to Mercedes-Benz for repair." Dkt. 30 at 10

24

(presentment "ultimately must be demonstrated to prevail on a claim for express warranty");
*Marcus*, 687 F.3d at 600 n.8 (implied warranty claims require "notice to the seller of injury").

Plaintiffs do not prove this requirement can be met on a classwide basis with common
proof. In truth, it cannot: "Whether proper notice was given is a highly individualized factual
determination and depends on differing facts and circumstances." *Total*, 265 F.R.D. at 655 n.3;
*Martin*, 292 F.R.D. at 272. Plaintiffs' own experiences are telling: Stern's and Casiero's express
warranty claims were dismissed when they admitted that, unlike Luppino and Spiegel, they did
not present their vehicles for repair. Dkt. 66 at 5-6 ("At no time has any court in this district or
in the state of New Jersey found that a buyer is not required to provide a direct seller with pre-
suit notice in an action for express breach of warranty."). Individualized inquiries are also
necessary to determine whether each putative class member gave MBUSA the requisite written
notice of breach. *See, e.g.*, MMD Ex. N at 52 (claimants must "first provide [MBUSA] with
direct written notification of any alleged unrepaired defect or malfunction . . . so that [MBUSA]
ha[s] the opportunity to cure the problem").

In addition, third-party dealers make decisions about warranty coverage—not MBUSA.
NYD ¶ 39. MBUSA is rarely informed about denied claims, *id.*, so individual investigations and
mini-trials are required to determine if the situation should have been covered under warranty, or if
it fell outside of the scope of coverage. These circumstances also preclude class treatment. *See,
e.g., Daniel*, 2013 WL 3146810, at *5; *Szabo*, 249 F.3d at 674; *In re OnStar Contract Litig.*, 278
F.R.D. at 386 (E.D. Mich. 2011); *Suddreth v. MBUSA*, 2011 WL 5240965 (D.N.J. Oct. 31, 2011)
(no warranty- or fraud-based claims possible under New Jersey law after warranty expires).

Separately, in many cases, claimants receive goodwill or do not seek warranty coverage
because there are third-party plans that provide coverage for wheel damage—even if it is caused by

driver abuse.  NYD ¶ 29; LCR ¶ 53-54; MMD Ex. D at 18:21-22 (plaintiffs' counsel admitting that

many "bought the wheel and tire insurance").  If claims were otherwise covered, there are no valid

claims by the putative class member against MBUSA.  *See, e.g., Colapinto v. Esquire Depo.*

*Servs.*, 2011 WL 913251, at *4 (C.D. Cal. Mar. 8, 2011).  For these reasons as well, there is no

classwide proof of breach.

### 3. The Implied Warranty Claim Cannot Be Certified Because Many Have Driven Their Vehicles for Thousands of Miles Without Incident

Individualized inquiries also preclude certification of the implied warranty claims because

the "breach analysis" varies.  "For an automobile, the implied warranty of merchantability is

breached only when a defect 'renders the vehicle unfit for its ordinary purpose of providing

transportation for its owner.'"  *Sheris v. Nissan N. Am., Inc.*, 2008 WL 2354908, at *6 (D.N.J.

June 2, 2008) (citation omitted).  Courts regularly deny certification of implied warranty claims

because individualized adjudications are required:

> Is a nine-year old Windstar "fit for the ordinary purposes" for which a Windstar is
> used when its rear axle cracks after approximately 80,000 miles?  What if a Class
> member drove his 1998 Windstar for twelve years before experiencing a fracture?
> Three additional years of problem-free driving should be taken into consideration
> by the trier-of-fact when determining fitness for ordinary purposes. . . . These
> questions cannot be answered by the trier-of-fact without examining individual
> circumstances.  Thus, it is evident that common questions of fact do not
> predominate as required by Rule 23(b)(3).

*Martin*, 292 F.R.D. at 277; *Daniel*, 2013 WL 3146810, at *4.  Here, even assuming there is a

uniform defect in all Wheels (there is not), class treatment is still improper because "the Court will

have to make individual inquiries" to determine if the defect manifested; if so, when; and the

extent it affected the PCV's ability to provide transportation.  *See, e.g., Green v. Green Mtn.*

*Coffee Roasters, Inc.*, 279 F.R.D. 275, 284 (D.N.J. 2011).

### 4. The Need to Apply the Warranty Laws of Every State Also Defeats Predominance, Manageability, and Superiority

Plaintiffs' warranty claims cannot be certified on a nationwide basis.  This Court and others

hold that "warranty claims should be governed by the law of each consumers' home state." *Feldman v. MBUSA*, 2012 WL 6596830, at *8 (D.N.J. Dec. 18, 2012) (collecting cases); *see, e.g.,* *McGuire v. BMW*, 2014 WL 2566132, at *6 (D.N.J. June 6, 2014) (Linares, J.); *Maloney*, 2011 WL 5864064, at *7 (D.N.J. Nov. 21, 2011) (same for MMWA claims). Where, as here, "all 50 states' laws apply to a class-action claim, the moving party must provide an 'extensive analysis' of state law variances showing 'that class certification does not present insuperable obstacles.'" *Id.* at *8 (quoting *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986)).

Plaintiffs have not met their burden and instead provide *no* analysis of how their claims can manageably be tried under the laws of all 50 states. The laws governing express and implied warranty claims vary considerably on key issues. *See* MMD Ex. O at 175-270. Thus, plaintiffs' request for nationwide certification is improper. *See, e.g., Maloney*, 2011 WL 5864064, at *10; *Payne*, 2010 WL 2342388, at *10-*11.

### E.   Plaintiff's NJCFA Claim Also Fails to Meet Predominance and Commonality

Many of the predominance and commonality grounds discussed above showing why the warranty claims cannot be certified—*e.g.*, plaintiffs cannot prove "common" parts, defect, or injury—also apply to their NJCFA claims. *See* Parts III.A.-C. In addition:

#### 1.   Plaintiffs Cannot Prove Unlawful Conduct with Common Proof

Plaintiffs have no classwide proof that MBUSA knowingly "misrepresented and/or failed to disclose the true quality of the Wheels." Mot. at 9, 12. First, plaintiffs have not identified any uniform misrepresentation beyond non-actionable puffery. *See* Mot. at 5-6; *QVC Inc. v. Your Vitamins Inc.*, 439 Fed. Appx. 165, 167 (3d Cir. 2011) (puffery not actionable under NJCFA). Even if they had, individualized inquiries are required to determine whether each person relied on the claimed misrepresentation. *Ford E-350 Van*, 2012 U.S. Dist. LEXIS 13887, at *53-*54 (D.N.J. Feb. 6, 2012). Plaintiffs, for example, admit they never saw any such statements. *See* Dkt.

345-1 at 7 (MBUSA's MSJ).  Second, plaintiffs cannot prove an unlawful act with common proof. The truth of a representation or alleged omission must be evaluated in light of the factors discussed above because the class encompasses many different systems, with critical differences in designs (*e.g.*, rim flange thickness), metals, tire pairings, and other variations.  *See* Part III.A.

Third, plaintiffs fail to prove MBUSA had knowledge of a "common defect" sufficient to give rise to the same duty of disclosure throughout the class period, for all "systems" at issue.  *See, e.g.*, *Alban v. BMW of N. Am.*, 2011 WL 900114, at *11 (D.N.J. Mar. 15, 2011) (failure of such proof is fatal to NJCFA claims); *Sanneman*, 191 F.R.D. at 453 (variable knowledge makes class treatment improper).  As discussed above (Part III.B.), there was no common defect, so MBUSA did not have the required knowledge, especially on a classwide basis.  The so-called "evidence" of "knowledge" cited by plaintiffs is comprised of a few, mischaracterized emails that do not concern the alleged defect or relate to all PCVs.  *See* Counter-Statement of Facts § B.

Fourth, MBUSA *made* varying disclosures over time.  NYD ¶¶ 45-50; LCR ¶ 42-45. Plaintiffs admit "as the class period progressed, people did become aware of" what plaintiffs call "the defect."  MMD Ex. D at 18:20-23.  Some disclosures said: "Serious wheel and tire damage may occur if the vehicle is operated on rough or damaged road surfaces or upon encountering road debris or obstacles . . . ." NYD Ex. 23 at n.4.  Others said: "Wheels, tires and suspension parts [on this vehicle] are more susceptible to road hazards and consequential damage." *Id.* Exs. 29-31.  Still others (including Luppino) signed disclaimers acknowledging that the poor quality roads in and around New Jersey could increase the possibility of wheel and tire damage.  *See* MMD Ex. P; *see also* LCR ¶¶ 40-65 (discussing various other ways putative class members were informed of trade-offs).  Where the "level of disclosure . . . varied between" putative class members, class certification is improper.  *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1036 (8th Cir. 2010); *see,*

28

*e.g.*, *Stephenson v. Bell Atl. Corp.*, 177 F.R.D. 279, 292 (D.N.J. 1997) (certification denied where plaintiffs "d[id] not demonstrate . . . the same core of written misrepresentations or omissions to all, or most, of the putative class members"); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014) (class treatment requires "that each individual was exposed to the same misrepresentations or deceptions").

### 2.   Individual Causation Issues Also Preclude Certification

Even if plaintiffs had proof of a common "system," defect, and injury (they do not, *see* Parts III.A.-C.), individualized causation issues still preclude class treatment. *See, e.g.*, *Marcus*, 687 F.3d at 606-08; *Mahtani v. Wyeth*, 2011 WL 2609857, at \*20, \*25 (D.N.J. June 30, 2011) (issue certification inappropriate in such circumstances); *see also* Part III.D.1.

Following *Marcus*, plaintiffs admitted: "The remaining question—and perhaps the ultimate question—is the ***cause*** of the wheels' failure." ECF No. 247 at 4. Yet, plaintiffs originally set forth no proof justifying a "presumption of causation," so their motion should be denied.[12]  In any event, this Court and the Third Circuit have rejected the presumption plaintiffs seek because, even if their late evidence is considered (*i.e.*, Jacoby), plaintiffs still do not prove putative class members' conduct is uniform. *McNair v. Synapse Group, Inc.*, 2009 WL 1873582, at \*10 (D.N.J. June 29, 2009) (Linares, J.); *Marcus*, 687 F.3d at 607, 610; *cf.* Mot. at 13, 16, 22 (making same argument rejected in these cases).

Where, as here, persons could have known of the alleged defect and purchased PCVs anyway, the presumption of causation does ***not*** apply. *Marcus*, 687 F.3d at 607, 610. Stated

---

[12]   In their original motion—where plaintiffs were required to provide classwide proof of their prima facie case—plaintiffs argued only that "the Certifications of the proposed Class Representatives . . . justi[fy] the invocation of the Varacallo presumption." Dkt. 422 at 22. But the presumption depends on evidence relating to ***putative class members***, not plaintiffs. Because their original motion failed to set forth the required proof, class certification should be denied.

another way, "if the truth behind alleged defects is knowable and if evidence suggests that class members did not react to information about the product . . . in a sufficiently similar manner such that common issues of fact would predominate, then certification is improper." *Id.* at 610 (citing *Demmick v. Cellco P'ship*, 2010 U.S. Dist. LEXIS 94041, at *48 (D.N.J. Sept. 8, 2010) (Linares, J.)); *see, e.g.*, *McNair*, 2009 WL 1873582, at *10. Plaintiffs here cannot satisfy either of the requirements for a presumption of causation under *Marcus*, making certification improper.

### a.   Plaintiffs' Admissions and Other Evidence Show That the Allegedly Concealed Information Was "Knowable"

Plaintiffs admit: "as the class period progressed, ***people did become aware*** of the [alleged] defect[.]"[13] MMD Ex. D at 18:20-23 (emphasis added); SAC ¶¶ 21-23 (admitting plaintiffs "learn[ed] that the Rims were [allegedly] defective" when experiencing rim failures); NYD ¶¶ 45-50; LCR ¶¶ 17, 102. Variations in knowledge across the class period and between claimants itself makes class treatment improper. *See, e.g.*, *Kelecseny v. Chevron U.S.A., Inc.*, 262 F.R.D. 660, 674 (S.D. Fla. 2009); *Gartin v. S&M Nutec*, 245 F.R.D. 429, 438 (C.D. Cal. 2007).

In addition to personal experience, the evidence shows many disclosures proving "knowability," such as those made on window stickers and in sales brochure; through MBUSA's website, dealership personnel, wheel and tire protection plan brochures; as well as media publications. LCR ¶¶ 40-65. Plaintiffs do not deny these dispositive facts; instead, they rely on an opinion from Dr. Jacob Jacoby that, despite the availability of information, "consumers are not likely to ask about or search for information regarding potentially defective wheel rims" absent any reason to suspect an issue. JJD ¶ 22. Plaintiffs' argument is unavailing for several reasons.

---

[13]   The cases plaintiffs rely on are inapposite, as they do not involve an ***admission*** like plaintiffs' that many knew of the alleged defect, and other evidence that shows "knowability." *See, e.g.*, *Marcus*, 687 F.3d at 611 (on this basis, distinguishing *Varacallo v. Massachusetts Mut. Life Ins.*, 332 N.J. Super. 31 (2000)); *Strzakowlski v. GM*, 2005 WL 2001912 (D.N.J. Aug. 16,

First, plaintiffs misapply *Marcus*. Information is knowable if "more than very few class members **could have** known" of the information. *Marcus*, 687 F.3d at 612 (emphasis added). Plaintiffs offer no evidence on this question; Jacoby expressly disavows it. JJD ¶ 11 ("In my opinion, the relevant inquiry is *not* 'Is X . . . knowable?'") (emphasis added). Instead, Jacoby wrongly claims MBUSA can be held liable because some consumers might not **seek out** the available information. JJD ¶¶ 12-23. This is not correct; liability requires an unlawful act by the defendant, such as concealment or suppression (hence, the "could have known" test). If a consumer chooses not to read what is "knowable" to him or her, the consumer's unilateral action is not a basis for liability. Here, MBUSA and others made the information readily available; consumers "could have known" it precisely because it was not concealed or suppressed.

Second, there is no support for Jacoby's assertion that the information was only "knowable" to consumers who suspected a "potential problem" with the Wheels. JJD ¶ 16. To the contrary, information about the Wheels' durability was disclosed in sources that "more than very few" consumers consulted, even if not searching for potential issues with Wheels. For example, as plaintiffs admitted, information was disclosed in materials about wheel protection plans and "people did become aware" of the alleged defect because of the availability of coverage by such plans. MMD Ex. D at 18:20-23. MBUSA's sales brochures and website also contained disclosures in the vicinity of other information relating to Wheels. LCR ¶¶ 42, 44. This language was also prominently displayed on vehicles' window stickers alongside other information—such as price, options, etc.—that consumers look for while shopping for a vehicle. *Id.* ¶ 43; *id.* ¶¶ 40-41, 46-65 (discussing other disclosures as well). This undisputed availability of the relevant information is a far cry from the situation in *Schwartz v. Avis Rent a Car Sys., LLC*, where a rental

---

2005); *Neale v. Volvo*, 2013 WL 1223354 (D.N.J. Mar. 26, 2013), *rev'd*, 2015 WL 4466919.

car surcharge was only buried in links "'far from webpages where Avis list[ed] other rental-car-cost information.'" 2014 U.S. Dist. LEXIS 121322, *27 (D.N.J. Aug. 28, 2014).

Finally, there is no merit to plaintiffs' claim that MBUSA's disclosures could not have made the alleged defect knowable, since MBUSA believes the Wheels are not defective.  The test under *Marcus* is whether "the truth ***behind*** [the] alleged defects" was "knowable," not whether the product was explicitly labeled as "defective."  *See* 687 F.3d at 610 (emphasis added).  Here, the potential increased susceptibility of certain wheel/tire packages to impact damage was disclosed and knowable through many sources.  MBUSA did what *Marcus* requires.

### b.   A Presumption of Causation Also Is Improper Under *Marcus* Because Putative Class Members Did *Not* React Uniformly to Information About the Wheels' Durability

Plaintiffs' own conduct proves MBUSA's point: even ***after*** alleging everything they do in this litigation, ***every*** plaintiff purchased or leased additional PCVs, often paying ***extra*** for packages with Wheels.  *See* Supp. MMD ¶¶ 1-14; NYD ¶ 49 (MBUSA disclosures about Wheels to plaintiffs); *Oscar*, 274 F.R.D. at 513 (certification denied in similar circumstances).  Plaintiffs concede that "attractiveness," rather than durability, was the trade-off they made when choosing their cars.  *See, e.g.*, MMD Ex. Q at 58:20-24 ("I liked the way it looked."); *id.* Ex. R at 116:24-117:1; *id.* Ex. S at 7; LCR ¶¶ 77-81.  That plaintiffs found attractive features of the Wheels to outweigh the trade-off posed by their ***own*** allegations proves that—as in *Marcus*—causation in this case must be adjudicated individually; no uniform reaction can be presumed.  *Id.* ¶¶ 77-81, 103-04; *Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. June 19, 2013) ("a presumption of reliance . . . would not be logical" where plaintiff continued purchasing product even after learning information that is basis of lawsuit).

Other evidence also proves that what plaintiffs claim is a "defect" are, in truth, physical realities of a *Marcus*-type trade-off for features such as sportier performance, enhanced "road feel,"

better cornering abilities, room for bigger brakes, and enhanced aesthetic appeal.  NYD ¶ 51; *see also, e.g.*, NYD ¶¶ 45-50; LCR ¶¶ 65-82.  Just as in *Marcus*, many—including plaintiffs and their counsel—bought Wheels because they wanted these trade-off benefits, so decision-making is variable and class treatment is improper.  NYD ¶ 51; LCR ¶ 77 ("[K]nowledge of the propensity of wheels to become damaged may play no role whatsoever in [customers'] vehicle purchases or leases—because styling was a primary consideration[.]"); MMD Ex. B at 106:4-8; *id.* at 174:11-12 ("they're cosmetically quite attractive").  As plaintiffs' own expert admits, the "skinny tire look has . . . become cosmetically desirable," even though it requires "important trade-offs" as well.  RRD at 8.

Claims that people "would not have acted as [they] did if [they] had known of the concealed . . . fact," cannot be certified because, particularly here with trade-offs in play, the claims require "inquir[y] into the specific facts surrounding each buyer's transaction."  *Sanders v. Apple*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009); *see, e.g.*, *Chan*, No. 11-5391 (JLL), ECF 63 (D.N.J. Aug. 15, 2012) (this Court recognizing that the Third Circuit requires such inquiries).  Moreover, even with a presumption, class treatment still would be improper here, as MBUSA "is entitled to challenge its liability as to every individual class member."  *Herskowitz v. Apple, Inc.*, 2014 WL 3919900, at *9 (N.D. Cal. Aug. 7, 2014); *Dukes*, 131 S. Ct. at 2551-52 (commonality requires review of both "claims *and defenses* to determine that the issues can be resolved and the evidence can be presented on a class-wide basis") (emphasis added); *Carrera*, 727 F.3d at 307 ("a class cannot be certified on the premise that [defendant] will not be entitled to litigate its statutory defenses to individual claims").  Plaintiffs admit MBUSA has a right of rebuttal.  *See* Mot. at 22 n.16.

Plaintiffs cannot show that every class member acted as they did because "[t]here are innumerable variations" in the way "consumers react to . . . the disclosure of" information.  *Sanchez v. Wal-Mart*, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009); *see, e.g.*, *Stoneback*,

33

2013 U.S. Dist. LEXIS 86457, at *44-*45 (where—as here, *see* Supp. MMD ¶¶ 1-14—plaintiff continued to purchase even after learning of alleged misrepresentations, causation could not be presumed for others; class certification denied); *Chow v. Neutrogena Corp.*, 2013 U.S. Dist. LEXIS 17670 (C.D. Cal. Jan. 22, 2013) (same).

### 3.   Plaintiffs' NJCFA Claim Cannot Be Certified on a Nationwide Basis

As discussed above, the Third Circuit has held that, where (as here) plaintiffs propose a nationwide class, plaintiffs have the burden of conducting an "extensive analysis" of state law variances and prove that the issues presented are common, predominant, and manageable. *See* Part III.D.4. Plaintiffs offered no analysis or proof at all, so their motion should be denied. The Third Circuit recently confirmed that plaintiffs cannot rely on "their own *ipse dixit* [or] citation to a similar case" to meet their burden. *Grandalski*, 767 F.3d at 184.

The Third Circuit disapproved plaintiffs' sole authority for applying NJCFA to the claims of non-New Jersey residents. *See Maniscalco v. Brother Int'l Corp.*, 709 F.3d 202, 210 (3d Cir. 2013) (disapproving *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009)). The NJCFA cannot apply to non-New Jersey residents in circumstances like those here. *See, e.g.*, *Grandalski*, 767 F.3d at 180-84; *Maniscalco*, 709 F.3d at 208-09; *Gray v. Bayer Corp.*, 2011 U.S. Dist. LEXIS 79498, at *19-*21 (D.N.J. July 21, 2011) (Linares, J.). Plaintiffs also cannot apply the laws of all 50 states, as the Court "would be required to apply distinct standards of, *inter alia*, intent, causation, reliance, and damages," precluding certification. *Id.* at *24; *see also* MMD Ex. O at 130-174.

## IV.   INDIVIDUALIZED CAUSATION AND INJURY MAKE ISSUE CERTIFICATION IMPROPER

Issue certification is improper here because the issue plaintiffs seek to certify—MBUSA's liability—requires adjudication of individualized causation, injury, and other issues. *See, e.g.*, *Gates v. Rohm and Haas Co.*, 655 F.3d 255, 272-74 (3d Cir. 2011). In *Gates*, issue certification

was rejected because "trial on whether the defendants discharged [chemicals] is unlikely to substantially aid resolution of the substantial issues on liability and causation." *Id.* at 274.

The same is true here.  Even assuming plaintiffs could prove, *e.g.*, a "common defect"—they cannot, *see* Part III.B.—certifying that issue would not meaningfully advance class adjudication, as many other individualized liability questions still remain.  The Third Circuit's recent decision in *Neale* verifies the lessons of *Marcus*: causation and injury preclude certification in a case like this one; *Sullivan II* has not changed that holding in a litigated case.  2015 WL 4466919, at *14-*15 & n.9.  Plaintiffs cannot circumvent *Marcus* via issue certification.  *See, e.g., Mahtani*, 2011 WL 2609857, at *20, *25 (D.N.J. recognizing claims like the ones here require individual resolution of causation and injury issues; liability does not attach even if a common defect exists).

As *Marcus* explains, plaintiffs' NJCFA claim requires individualized proof of causation and ascertainable loss.  *See* Part III.E.2.; KSR ¶ 8; *Gotthelf v. Toyota*, 525 Fed. Appx. 94, 103-04 (3d Cir. 2013); *Marcus*, 687 F.3d at 605-06.  "The mere fact that an automobile defect arises does not establish, in and of itself, an actual and ascertainable loss to the vehicle purchaser." *Thiedemann*, 183 N.J. at 251.  And plaintiffs' warranty claims still require each class member to prove the defect manifested within the warranty period, and that the vehicle was presented for repair in warranty. *See* Part III.D.1.; *Chan*, 2012 WL 5827448, at *6-7 (Linares, J.).  The duration of "problem-free" performance also makes implied warranty claims individualized.  *Martin*, 292 F.R.D. at 277.

Because resolution of the "defect" issue still would leave "significant and complex questions unanswered," issue certification is improper.  *Gates*, 655 F.3d at 273; *see, e.g., Total*, 265 F.R.D. at 645-46 (issue certification as to "defect" improper as there remains a "need to try causation and damages on an individual basis"); *In re ConAgra Foods*, 302 F.R.D. 537, 581 (C.D. Cal. 2014) (issue of "deception" not certified because "trying this issue would not necessarily determine even

35

the question of [defendant's] liability," as people still must "prove individualized reliance and causation"); *Abu Dhabi Comm. Bank v. Morgan Stanley*, 269 F.R.D. 252, 266 (S.D.N.Y. 2010).

The Third Circuit confirmed in *Neale* that what Rule 23 requires "depend[s] on the nature of the claims and evidence presented by the plaintiffs." *Neale*, 2015 WL 4466919, at *16. Here, liability itself depends on—among other things—individualized "defect," causation, and other issues (as discussed above) and plaintiffs' loss-in-value claims. *See, e.g.*, Part III.C.; *Thiedemann*, 183 N.J. at 238 (as a prerequisite to liability itself, the NJCFA requires ascertainable loss, and evidence of loss "must be presented with some certainty demonstrating that it is capable of calculation" before liability attaches). Where proof of loss "is essential to liability, the need for 'individualized proof of economic loss' . . . can defeat predominance." *In re Paulsboro Derailment Cases*, 2014 WL 4162790, at *12 (D.N.J. Aug. 20, 2014) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 188 (3d Cir. 2001)).[14]

Plaintiffs' reliance on *Butler* and *Whirlpool* is misplaced. Mot. at 27-29. Neither case follows the law of the Third Circuit; the test in *Gates* is different. Moreover, *Butler* and *Whirlpool* both involved only non-New Jersey warranty claims based on mold growth in washing machines. Unlike here, under the applicable laws in those cases "liability for breach of warranty [was] strict." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 363 (7th Cir. 2012). Also, unlike here, the alleged defect was the only possible source of mold and defendant's "engineers knew the mold problem

---

[14]  Plaintiffs claim they need not comply with *Comcast* "because damages would not be decided on a class-wide basis," Mot. at 29, but MBUSA is not relying on "the need for individualized damages calculations." *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *14 & n.9 (N.D. Cal. Dec. 15, 2014) (denying issue certification based on argument MBUSA makes here). The point, as in *Werdebaugh*, is that plaintiffs cannot prove predominance as to **liability** prerequisites, like causation and injury. This is because, *e.g.*, loss can be caused by an accident or another non-alleged "defect" cause, or a person bought Wheels knowing of trade-offs, and chose handling, style, or performance instead of durability. *See* KSR ¶ 24 & Table 1,¶ 34 & Table 2 (explaining why analysis of "Replacement Injury" and economic loss injury is individualized).

occurred despite variations in consumer laundry habits." *In re Whirlpool*, 722 F.3d 838, 854 (6th Cir. 2013); *Butler*, 727 F.3d 796, 800 (7th Cir. 2013) ("there is no possibility in this case" that injury could be caused by anything other than the alleged defect). Here, by contrast, there is no strict liability and the evidence shows that causation and customer usage are individual issues, as wheels can and do suffer damage for many different reasons *un*related to the alleged defect; *Marcus* verifies that the law of the Third Circuit requires a different result in a case like this one. Thus, unlike in *Butler* and *Whirlpool*, the issue of "defect" will not resolve "liability," as complex and individualized causation, injury, and other liability issues remain. *See, e.g.*, Parts III.D. & E.

## V.   PLAINTIFFS DO NOT MEET TYPICALITY OR ADEQUACY REQUIREMENTS

Plaintiffs are "neither typical nor adequate" because they are "subject to [ ] unique defense[s] that [are] likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006). Among other things, plaintiffs repeatedly purchased Wheels ***after*** making their "defect" claims here. Dkt. No. 345-1 (MSJ); *see, e.g.*, *Freid v. Nat'l Action Fin. Servs., Inc.*, 2011 WL 1547257, at *6 (D.N.J. Apr. 20, 2011). Plaintiffs also are atypical because they received varying disclosures about the Wheels. *See, e.g.*, *Kelecseny*, 262 F.R.D. at 672 (typicality not met in such circumstances). Also, as discussed above, the lone testing of plaintiffs' ***own*** Wheels found no defect—so if they are right about other Wheels, they necessarily will be atypical of the putative class. *See* Section III.B. Because these and other things will be central to MBUSA's defense, plaintiffs are atypical and inadequate representatives.

Separately, all three plaintiffs filed sworn statements declaring that, if they had known of the alleged defect, they would not have purchased their vehicles. JCD Exs. 32, 33, 34 (identical statements in ¶ 8). Yet the undisputed evidence shows those statements are untrue; plaintiffs ***did*** purchase vehicles with Wheels—repeatedly—after the alleged "defect" was known to them. Dkt. 345-1 & 2 (establishing same). Plaintiffs failed to reveal many of these repeated, subsequent

purchases in discovery, making them inadequate representatives. *See, e.g., Coyle v. Hornell Brewing Co.*, 2011 WL 2147218, at *5 (D.N.J. May 26, 2011) (certification denied where plaintiff submitted declaration contradicting allegations in complaint and sworn testimony, making plaintiff inadequate representative); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011); *Savino v. Computer Credit, Inc*, 164 F.3d 81, 87 (2d Cir. 1998).

Plaintiffs are also atypical and inadequate representatives as they own only a small fraction of the many "systems" at issue (*i.e.*, permutations of wheels, tires, vehicles, suspensions, and other things). *See, e.g., Lieberson v. Johnson & Johnson*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011); *Green*, 279 F.R.D at 280; *Hemy*, 2011 WL 6002463, at *32-*33. Unlike some other cases, the lack of ownership is fatal here because there is no uniformity across the many different "systems" at issue and there are no uniform misrepresentations or omissions. *See, e.g., Wiener v. Dannon Co.*, 255 F.R.D. 658, 666–67 (C.D. Cal. Jan. 30, 2009).

Plaintiffs' unsupported claim of "uniformity" is ***not*** true. *Cf.* Mot. at 10 n.12 (admitting uniformity is required to allow plaintiffs to represent other products). *E.g.*, in this case, there are different disclosures and plaintiffs ***admit*** there were different levels of knowledge across the class period (and, thus, across different products). *See* Part III.E.1. Moreover, plaintiffs ***admit*** there are different failure rates and their experts ***admit*** that the alleged susceptibility to damage is different depending on the "system." *See* Part III.A. The data shows that over ▮ (out of more than ▮) types of Wheels have never been sold as replacements in New Jersey, so no possible alleged "deception" occurred for many of the products covered by the putative class. *See* Part III.B. The differences also are established by plaintiffs' own (prior) experts—the only ones to see any of plaintiffs' Wheels—who confirmed there were no defects in those Wheels. *Id.*

Plaintiffs cannot hide the variations through a class action, because "[d]ue process requires

that there be an opportunity to present every available defense." *Sanchez*, 2009 WL 1514435, at

*4 (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)). In an individual case, a plaintiff like

Luppino—who bought Wheels ***after*** alleging they were defective, and signed a disclaimer—could

not hide from his knowledge of the alleged "deception" and the disclosures made to him. Rule 23

cannot be used to "enlarge or modify any substantive right." *Dukes*, 131 S. Ct. at 2561.

Certainly, plaintiffs do not prove they are immune to unique defenses. *See, e.g., Aberdeen*

*v. Toyota Motor Sales, U.S.A., Inc.*, 422 F. App'x 617, 618 (9th Cir. 2011) (class certification

improper without such proof). For example, plaintiffs Luppino and Spiegel have no proof that

any of their Wheels experienced a radial crack in the inner flange. In other words, they cannot

show they experienced the symptom of the alleged "defect" they assert on behalf of the class.

## VI.   PLAINTIFFS FAIL TO PROVE MANAGEABILITY OR SUPERIORITY

There is a "critical need [ ] to determine how the case will be tried," and courts must conduct

"a rigorous evaluation of the likely shape of a trial on the issues." *Hydrogen Peroxide*, 552 F.3d at

319. Thus, "courts require a party requesting class certification to present a 'trial plan' that describes

the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof."

*Id.* Establishing superiority and manageability requires more than *ipse dixit*. *Id.*; *see, e.g., Zinser v.*

*Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (a "court cannot rely merely on

assurances of counsel that any problems with predominance or superiority can be overcome").

Plaintiffs do not comply with the Third Circuit's requirement, and only conclusorily assert:

"whether MBUSA breached its express or implied warranties . . . and/or violated the NJCFA . . .

could be tried simultaneously, as much of the evidence relevant to these issues is likely to overlap."

Mot at 25. But such unfounded assurances, which say nothing about how the trial would proceed

or explain how the (unidentified) evidence will establish "class-wide proof" of their claims, are

insufficient to meet plaintiffs' burden. *See, e.g., Franco v. Conn. Gen. Life Ins. Co.*, 289 F.R.D.

39

121, 140-41 (D.N.J. 2013) (burden not met by submitting "conclusor[y]" trial plan).

Nor does plaintiffs' "issue certification" proposal demonstrate manageability.  Again, plaintiffs offer only conclusory assurances that such a trial "would materially advance the litigation."  Mot. at 28.  But as explained in Part IV, a trial on the "defect issue" would not resolve plaintiffs' claims, as essential liability questions (*e.g.*, causation, injury, and breach) would remain unanswered.  In any event, plaintiffs offer no ***proof*** to show how their proposed "issue only" trial would proceed or that resolution of the many remaining questions is feasible.  *See, e.g., Mwantembe v. TD Bank, N.A.*, 268 F.R.D. 548, 563 (E.D. Pa. 2010) (superiority not met where "plaintiffs have not submitted a proposed trial plan addressing [similar] problems").

Plaintiffs also fail to satisfy their burden to prove manageability as to remedial issues; they make only a bald assertion that "issues as to an appropriate remedy can be resolved either by settlement, or by way of a special master process, or otherwise as the Court would direct."  Mot. at 28.  Plaintiffs cannot meet their burden with such unsupported claims; they must show "how that [monetary] relief would be managed, specifying, for example, the methodology by which calculations and awards of relief would be made with respect to individual class members."  *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 202 (3d Cir. 2009).  Because plaintiffs failed to offer the required proof, their motion must be denied.  *Id.*

Dated:        August 25, 2015                      Respectfully submitted,

                                                    GIBBONS P.C.


                              By:   s/ Michael R. McDonald
                                    Michael R. McDonald, Esq.

                                    *Attorneys for Defendant*
                                    *Mercedes-Benz USA, LLC*